U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

DEC 0 9 2016

JAMES W. McCORMACK, CLERK
By: _____
                    DEP CLERK

Swartz Swidler, LLC
Richard S. Swartz, Esq. (NJ #026801997)
Justin L. Swidler, Esq. (NJ #039312007)
Joshua S. Boyette, Esq. (NJ #043862010)
Travis Martindale-Jarvis, Esq. (NJ #122862014)
1101 Kings Hwy N., Suite 402
Cherry Hill, NJ  08034
Phone: (856) 685-7420

---

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF ARKANSAS

| | |
|---|---|
| **DAVID BROWNE, ANTONIO CALDWELL, and LUCRETIA HALL,** *on behalf of themselves and all those similarly situated,* <br><br> **Plaintiffs,** <br><br> **vs.** <br><br> **P.A.M. TRANSPORT, INC.** <br> 297 West Henri de Tonti Blvd. <br> Tontitown, AR 72770 <br><br> **and** <br><br> **DANIEL CUSHMAN** <br> c/o P.A.M. TRANSPORT, INC. <br> 297 West Henri de Tonti Blvd. <br> Tontitown, AR 72770 <br><br> **and** <br><br> **JOHN DOES 1-10** <br> c/o P.A.M. TRANSPORT, INC. <br> 297 West Henri de Tonti Blvd. <br> Tontitown, AR 72770 <br><br> **Defendants.** | 4:16 cv 888 - BRW <br><br> **COLLECTIVE AND CLASS ACTION COMPLAINT** <br><br> **JURY DEMAND** <br><br> This case assigned to District Judge Wilson <br> and to Magistrate Judge Volpe |

---

### FIRST AMENDED COLLECTIVE ACTION COMPLAINT

1.      Plaintiffs David Browne ("Named Plaintiff Browne"), Antonio Caldwell ("Named

Plaintiff Caldwell") and Lucretia Hall ("Named Plaintiff Hall") (collectively referred to as

"Named Plaintiffs") on behalf of themselves and those similarly situated ("Collective Action Plaintiffs" under the FLSA; "Class Plaintiffs" under state law), by and through undersigned counsel, hereby complain as follows against Defendants P.A.M. Transport, Inc. ("Defendant PAM"), Daniel Cushman ("Defendant Cushman") and John Does 1-10 (collectively referred to as "Defendants").

## INTRODUCTION

2.      Named Plaintiffs initiate the instant action to redress violations by Defendants of the Fair Labor Standards Act ("FLSA") and the Ark. Code Ann. § 11-4-209(a) (the "Arkansas Minimum Wage Law").  Defendants intentionally failed to compensate Named Plaintiffs, Collective Action Plaintiffs, and Class Plaintiffs (hereinafter all three are collectively referred to as "Plaintiffs") at least minimum wage for all hours worked each workweek while in the employ of Defendants, Defendants utilized a system to pay Plaintiffs that unlawfully charged Plaintiffs to access their wages and Defendants implemented unlawful deduction policies.  As a result of Defendants' unlawful actions, Plaintiffs have been harmed.

## JURISDICTION AND VENUE

3.      This Court, in accordance with 28 U.S.C. § 1331, has jurisdiction over Plaintiffs' federal claims because this civil action arises under a law of the United States and seeks redress for violations of a federal law, 29 U.S.C. § 201 *et seq*.  This Court has supplemental jurisdiction over related state law claims because such claims arise out of the same circumstance and are based upon a common nucleus of operative fact.

4.      This Court may properly maintain personal jurisdiction over Defendants because Defendants' contacts with this state and this judicial district are sufficient for the exercise of

jurisdiction over Defendants to comply with traditional notions of fair play and substantial justice.

5.      Pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), venue is properly laid in this judicial district because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district and Defendants are deemed to reside where it is subject to personal jurisdiction, rendering Defendants residents of this judicial district.

## PARTIES

6.      The foregoing paragraphs are incorporated herein as if set forth in full.

7.      Named Plaintiff Browne is an adult individual residing at 2729 Aspen Wood Ave. Henderson, Nevada 89074.

8.      Named Plaintiff Caldwell is an adult individual residing at 1010 Lehr Street, West Memphis, Arkansas 72301.

9.      Named Plaintiff Hall is an adult individual residing at 2729 Aspen Wood Ave. Henderson, Nevada 89074.

10.     Defendant PAM is an Arkansas Corporation that maintains a business address as set forth in the caption.

11.     Defendant Cushman is the President, the Chief Executive Officer and a Director of Defendant PAM and at all times relevant herein, directed, aided, abetted, and/or assisted with creating and/or executing the policies and practices of Defendant PAM which resulted in Defendant PAM failing to pay Plaintiffs proper compensation pursuant to the FLSA and the Arkansas Minimum Wage Law.

12.     Defendants John Doe 1 through John Doe 5 are presently unknown persons who, directly or indirectly, directed, aided, abetted, and/or assisted with creating and/or executing the

policies and practices of Defendant PAM which resulted in Defendant PAM failing to pay Plaintiffs proper compensation pursuant to the FLSA and the Arkansas Minimum Wage Law.

13.     Defendants John Doe 6 through John Doe 10 are presently unknown persons who had control over processing payroll regarding Plaintiffs.

14.     At all times relevant herein, Defendants acted by and through their agents, servants, and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendant PAM.

## COLLECTIVE ACTION ALLEGATIONS

15.     The foregoing paragraphs are incorporated herein as if set forth in their entirety.

16.     Named Plaintiffs bring this action for violations of the FLSA as a collective action pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b), on behalf of Collective Action Plaintiffs.

17.     Specifically, Named Plaintiffs seek to represent a company-wide class of all persons who worked or work for Defendant PAM as over-the-road truck drivers and who were/are subject to Defendant PAM's unlawful pay practices and policies described herein at any point from December 6, 2013 to the present (members of this putative class are referred to herein as "Collective Action Plaintiffs").

18.     Named Plaintiffs' claims are typical of the claims of Collective Action Plaintiffs, because Named Plaintiffs, like all Collective Action Plaintiffs, were employees of Defendant PAM whom Defendant PAM failed to pay minimum wage as required by the FLSA from December 6, 2013 to the present.

19.     Named Plaintiffs will fairly and adequately protect the interests of Collective Action Plaintiffs, because Named Plaintiffs' interests are coincident with, and not antagonistic

4

to, those of the class.  Named Plaintiffs have retained counsel with substantial experience in the prosecution of claims involving employee wage disputes.

20.     No difficulties are likely to be encountered in the management of this collective action that would preclude its maintenance as a collective action.   The class will be easily identifiable from Defendant PAM's records.

21.     Similarly situated employees are known to Defendant PAM, are readily identifiable by Defendant PAM, and can be located through Defendant PAM's records. Named Plaintiffs do not know the exact size of the potential class, as such information is in the exclusive control of Defendant PAM; however, on information and belief, the number of potential class members is estimated to be in the thousands.

22.     Questions of law and fact that are common to the members of the class predominate over questions that affect only individual members of the class.  Among the questions of law and fact that are common to the class is whether Defendant PAM: (1) failed to compensate its newly hired drivers at least the federal minimum wage for all compensable time worked during its initial orientation program; (2) failed to compensate its drivers at least the federal minimum wage for all compensable time worked while driving over-the-road alone as "Solo-Drivers" for Defendant PAM; (3) failed to compensate its drivers at least the federal minimum wage for all compensable time worked while driving over-the-road with a teammate as "Team-Drivers" for Defendant PAM; (4) failed to compensate its drivers at least the federal minimum wage for all compensable time worked when on assignment for more than 24 hours; (5) failed to compensate its drivers at least the federal minimum hourly wage for travel time that occurred during normal business hours; (6) failed to compensate its drivers at least the federal minimum wage for all compensable time, due to unlawful deductions made via the use of the Comdata system; and (7)

failed to compensate its drivers at least the federal minimum wage for all compensable time, due to unlawful deductions made pursuant to Defendant PAM's deductions policies;

23.     Collective Action Plaintiffs should be broken into 6 subclasses consisting of the following; most class members will be members of multiple subclasses and many will be members of all subclasses:

a.     Initial Orientation Plaintiffs: Members of this subclass are similarly situated because all Initial Orientation Plaintiffs were subject to the violations detailed under Cause of Action 1 of this Complaint at some point within the time period of December 6, 2013 to the present, in violation of the FLSA. Named Plaintiff Caldwell is the representative plaintiff for this subclass.

b.     Team-Driver Plaintiffs: Members of this subclass are similarly situated because all Team-Driver Plaintiffs were subject to the violations detailed under Cause of Action 2 of this Complaint at some point within the time period of December 6, 2013 to the present, in violation of the FLSA.  Named Plaintiffs Browne and Hall are the representative plaintiffs for this subclass.

c.     Solo-Driver Plaintiffs:  Members of this subclass are similarly situated because all Solo-Driver Plaintiffs were subject to the violations detailed under Cause of Action 3 of this Complaint at some point within the time period of December 6, 2013 to the present, in violation of the FLSA. Named Plaintiff Caldwell is the representative plaintiff for this subclass.

d.     Travel-Time Plaintiffs: Members of this subclass are similarly situated because all Travel-Time Plaintiffs were subject to the violations detailed under Cause of Action 4 of this Complaint within the last three years, in violation of the FLSA. Named Plaintiff Caldwell is the representative plaintiff for this subclass.

e.     Comdata Plaintiffs:  Members of this subclass are similarly situated because

6

all Comdata Plaintiffs were subject to the violations detailed under Cause of Action 5 of this Complaint at some point within the time period of December 6, 2013 to the present, in violation of the FLSA.  Named Plaintiffs Browne, Caldwell and Hall are the representative plaintiffs for this subclass.

    f. Deductions Plaintiffs:  Members of this subclass are similarly situated because all Escrow Deductions Plaintiffs were subject to the violations detailed under Cause of Action 6 of this Complaint at some point within the time period of December 6, 2013 to the present, in violation of the FLSA.  Named Plaintiff Caldwell is the representative plaintiff for this subclass.

   24. Therefore, Named Plaintiff should be permitted to bring this action as a collective action for and on behalf of himself and those employees similarly situated, pursuant to the "opt-in" provisions of the FLSA, 29 U.S.C. § 216(b).

**CLASS ACTION ALLEGATIONS**

   25. The foregoing paragraphs are incorporated herein as if set forth in their entirety.

   26. Pursuant to Rule 23 of the Federal Rules of Civil Procedure and the Class Action Fairness Act of 2005, Named Plaintiffs bring their claims for relief on behalf of themselves and those similarly situated.

   27. Specifically, Named Plaintiffs seek to represent a class of all persons who worked or work for Defendants as over-the-road truck drivers at some point within the time period of December 6, 2013 to the present.

   28. The class is so numerous that the joinder of all class members is impracticable. Named Plaintiffs do not know the exact size of the class, as such information is in the exclusive control of Defendants; however, on information and belief, the number of potential class members is estimated to be in the thousands.

29.     Named Plaintiffs' claims are typical of the claims of the putative class members, because Named Plaintiffs, like all Class Plaintiffs, were employees of Defendants in Arkansas who were denied minimum wage for certain compensable hours worked.

30.     Named Plaintiffs will fairly and adequately protect the interests of the putative class because Named Plaintiffs' interests are coincident with, and not antagonistic to, those of the class. Named Plaintiffs have retained counsel with substantial experience in the prosecution of claims involving employee wage disputes.

31.     No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action.  The class will be easily identifiable from Defendants' records.

32.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Such treatment will allow all similarly situated individuals to prosecute their common claims in a single forum simultaneously.  Prosecution of separate actions by individual members of the putative class would create the risk of inconsistent or varying adjudications with respect to individual members of the class that would establish incompatible standards of conduct for Defendants.  Furthermore, the amount at stake for individual putative class members may not be great enough to enable all of the individual putative class members to maintain separate actions against Defendants.

33.     Questions of law and fact that are common to the members of the class predominate over questions that affect only individual members of the class.  Among the questions of law and fact that are common to the class is whether Defendant PAM: (1) failed to compensate its newly hired drivers at least the Arkansas minimum wage for all compensable time worked during its initial orientation program; (2) failed to compensate its drivers at least the Arkansas

minimum wage for all compensable time worked while driving over-the-road alone as "Solo-Drivers" for Defendant PAM; (3) failed to compensate its driver trainers at least the Arkansas minimum wage for all compensable time worked while driving over-the-road with a teammate as "Team-Drivers" for Defendant PAM; (4) failed to compensate its drivers at least the Arkansas minimum wage for all compensable time worked when on assignment for more than 24 hours; (5) failed to compensate its drivers at least the Arkansas minimum hourly wage for travel time that occurred during normal business hours; (6) failed to compensate its drivers at least the Arkansas minimum wage for all compensable time, due to unlawful deductions made via the use of the Comdata system; and (7) failed to compensate its drivers at least the Arkansas minimum wage for all compensable time, due to unlawful deductions made pursuant to Defendant PAM's deductions policies.

34.     Class Action Plaintiffs should be broken into 7 subclasses consisting of the following; most class members will be members of multiple subclasses and many will be members of all subclasses:

a.     <u>Initial Orientation Plaintiffs</u>: Members of this subclass are similarly situated because all Initial Orientation Plaintiffs were subject to the violations detailed under Cause of Action 1 of this Complaint at some point within the time period of December 6, 2013 to the present, in violation of the Arkansas Minimum Wage Law. Named Plaintiff Caldwell is the representative plaintiff for this subclass.

b.     <u>Team-Driver Plaintiffs</u>: Members of this subclass are similarly situated because all Trainer Plaintiffs were subject to the violations detailed under Cause of Action 2 of this Complaint at some point within the time period of December 6, 2013 to the present, in violation of the Arkansas Minimum Wage Law.   Named Plaintiffs Browne and Hall are the representative

9

plaintiff for this subclass.

      c.   Solo-Driver Plaintiffs:  Members of this subclass are similarly situated because all Trainee Plaintiffs were subject to the violations detailed under Cause of Action 3 of this Complaint at some point within the time period of December 6, 2013 to the present, in violation of the Arkansas Minimum Wage Law. Named Plaintiff Caldwell is the representative plaintiff for this subclass.

      d.   Travel-Time Plaintiffs: Members of this subclass are similarly situated because all Travel-Time Plaintiffs were subject to the violations detailed under Cause of Action 4 of this Complaint at some point within the time period of December 6, 2013 to the present, in violation of the Arkansas Minimum Wage Law. Named Plaintiff Caldwell is the representative plaintiff for this subclass.

      e.   Comdata Plaintiffs:  Members of this subclass are similarly situated because all Comdata Plaintiffs were subject to the violations detailed under Cause of Action 5 of this Complaint at some point within the time period of December 6, 2013 to the present, in violation of the Arkansas Minimum Wage Law. Named Plaintiffs Browne, Caldwell and Hall are the representative plaintiffs for this subclass.

      f.   Deduction Plaintiffs:  Members of this subclass are similarly situated because all Deduction Plaintiffs were subject to the violations detailed under Cause of Action 6 of this Complaint at some point within the time period of December 6, 2013 to the present, in violation of the Arkansas Minimum Wage Law. Named Plaintiff Caldwell is the representative plaintiff for this subclass.

      g.   Escrow Plaintiffs:  Members of this subclass are similarly situated because all Escrow Plaintiffs were subject to the violations detailed under Cause of Action 7 of this Complaint

at some point within the time period of December 6, 2013 to the present, in violation of the common law of Arkansas. Named Plaintiffs Browne, Caldwell and Hall are the representative plaintiffs for this subclass.

35.    Therefore, Named Plaintiffs should be should be permitted to bring this action as a class action for and on behalf of themselves and those employees similarly situated, pursuant to Federal Rule of Civil Procedure 23.

## FACTUAL BACKGROUND

36.    The foregoing paragraphs are incorporated herein as if set forth in full.

37.    Upon information and belief, Defendants have maintained the unlawful pay system described herein since at least December 6, 2013.

38.    Plaintiffs were subjected to an unlawful compensation system to which Defendants subjected all of their over-the-road drivers as described herein.

39.    All over-the-road truck drivers employed by Defendants are deemed to be employed in Arkansas because all such drivers: (1) had their employment application processed in Arkansas; (2) reported to management located in Arkansas; (3) reported their hours worked via Defendants' Qualcomm system to Defendants' headquarters in Arkansas; (4) had their pay calculated by Defendants' headquarters in Arkansas; and (5) received their pay from Defendants' accounts in Arkansas. Moreover, all decisions regarding the drivers' employment, including hiring, driving assignments, and termination, were made in Arkansas.

40.    Plaintiffs were all over-the-road truck drivers employed by Defendant PAM and were all subjected to the policies discussed herein at some point within the time period of December 6, 2013 to the present.

41.     Named Plaintiff Browne was hired by Defendant PAM in or around 2005 and was subjected to the conduct asserted herein as noted; his employment with Defendant PAM ended in or around December of 2015.

42.     Named Plaintiff Caldwell was hired by Defendant PAM in or around August of 2015 and was subjected to the conduct asserted herein as noted; his employment with Defendant PAM ended in or around February of 2016.

43.     Named Plaintiff Hall was hired by Defendant PAM in or around 2005 and was subjected to the conduct asserted herein as noted; her employment with Defendant PAM ended in or around November of 2015.

## CAUSE OF ACTION NO. 1
## **FAILURE TO PAY MINIMUM WAGE FOR INITIAL ORIENTATION**

44.     The foregoing paragraphs are incorporated herein as if set forth in full.

45.     Defendant PAM required its newly hired drivers to attend a multi-day orientation program.

46.     During this initial orientation program, Defendant PAM required Named Plaintiff Caldwell and Initial Orientation Plaintiffs to attend classes that concerned, in large part, the rules and procedures of Defendant PAM.  The classes lasted approximately 10 hours per day.

47.     Named Plaintiff Caldwell and Initial Orientation Plaintiffs were further required to engage in other compensable work during this period, including the review of orientation materials and the completion of paperwork after class.

48.     Defendant PAM's newly hired drivers were employees of Defendant PAM during the entire multi-day orientation.

49.     Defendant PAM informed Named Plaintiff Caldwell and Initial Orientation Plaintiffs that, upon successful completion of the orientation program, they would continue as employees of Defendant PAM, either by beginning its over-the-road training program ("Defendant PAM's Training Program"), or, in the case of experienced drivers such as Named Plaintiff Caldwell, by driving over-the-road or on a directed route for Defendant PAM.

50.     Upon successful completion of the multi-day orientation program, Defendant PAM informed Named Plaintiff Caldwell and Initial Orientation Plaintiffs that they would begin Defendant PAM's Training Program or begin driving over-the-road or on a directed route for Defendant PAM.

51.     Defendant PAM did not pay Named Plaintiff Caldwell and Initial Orientation Plaintiffs at least minimum wage for all of the hours they worked during the initial orientation program.

52.     Consistent with Defendant PAM's policies, upon his initial hiring by Defendant PAM, Named Plaintiff Caldwell was required to attend a multi-day orientation program in Arkansas. During this orientation program, Named Plaintiff Caldwell attended orientation classes which lasted approximately 10 hours per day. Named Plaintiff Caldwell was further required to engage in other compensable work during this period, including completing homework outside of class. Named Plaintiff Caldwell was not paid at least minimum wage for all of the hours he worked during the initial orientation program.

## CAUSE OF ACTION NO. 2
## FAILURE TO PAY MINIMUM WAGE TO TEAM-DRIVERS AFTER INITIAL ORIENTATION

53.     The foregoing paragraphs are incorporated herein as if set forth in full.

54.     Following the completion of Defendant PAM's Initial Orientation, Named Plaintiffs Browne and Hall and Team-Driver Plaintiffs were provided a truck and a driving partner by Defendant PAM and were paid either a flat salary for all work performed or a per-mileage rate for each mile driven.

55.     Following Defendant PAM's Initial Orientation Program, Named Plaintiffs Browne and Hall and Team-Driver Plaintiffs reported their status to Defendant PAM via the Qualcomm computer in the truck.

56.     Upon information and belief, the Qualcomm messages were received by Defendant PAM in a single centralized location in Arkansas.

57.     As Team-Drivers, Named Plaintiffs Browne and Hall and Team-Driver Plaintiffs were required to remain over-the-road in or in the general proximity of their assigned truck for more than 24 consecutive hours.

58.     Following Defendant PAM's Training Program, Named Plaintiffs Browne and Hall and Team-Driver Plaintiffs were "on duty" (per United States Department of Labor ("DOL") Regulations and Administrative Regulations of the Labor Standards Division of the Arkansas Department of Labor ("AR DOL")) continually for days and weeks on end.

59.     PER 29 C.F.R. § 785.22 and AR DOL Rule No. 010.14-108(d)(3), the maximum amount of time an employer may dock an employee who is on duty for more than 24 hours for time spent in a sleeper berth is 8 hours per day.  The remaining amount of time (16 hours per day) is work time and must be paid, less bona fide meal periods.

60.     While driving over-the-road as Team-Drivers for Defendant PAM, Named Plaintiffs Browne and Hall and Team-Driver Plaintiffs regularly worked more than 16 hours per day because they were required to, among other things: (1) drive the truck; (2) remain in the truck

while the truck was moving so that they could assist in transporting the cargo; (3) wait for cargo to be loaded or unloaded while in the truck or its immediate vicinity; (4) fuel up the truck and perform routine maintenance to same; (5) remain in the vicinity of the truck to help protect Defendant PAM and its customers' property; and (6) remain inside the truck when stopped to log time in the sleeper berth and to help protect Defendant PAM and its customer's property.

61.     Additionally, the wages Defendant PAM paid to Named Plaintiffs Browne and Hall and Team-Driver Plaintiffs each workweek failed, on at least one occasion, to equal at least the federal minimum wage, because the time Named Plaintiffs Browne and Hall and Solo-Driver Plaintiffs logged each workweek on lines "3" and "4" of the Qualcomm system (corresponding to "On-Duty Driving" and "On-Duty, Not Driving" as defined by the DOT), when multiplied by $7.25, exceeded the wages paid to them based on the per-mileage rate.

62.     Per 29 C.F.R. § 785.22, Defendant PAM was required to compensate Named Plaintiffs Browne and Hall and Team-Driver Plaintiffs at least $116 per day ($.7.25 x 16 hours) for each day spent over-the-road, minus bona fide meal periods.

63.     Furthermore, the wages Defendant PAM paid to Named Plaintiffs Browne and Hall and Team-Driver Plaintiffs each workweek failed, on at least one occasion, to equal at least the Arkansas minimum wage, because the time Named Plaintiffs Browne and Hall and Team-Driver Plaintiffs logged each workweek on lines "3" and "4" of the Qualcomm system (corresponding to "On-Duty Driving" and "On-Duty, Not Driving" as defined by the DOT), when multiplied by $6.25, exceeded the wages paid to them based on the per-mileage rate.

64.     Per AR DOL Rule No. 010.14-108(d)(3), prior to January 1, 2015, Defendant PAM was required to compensate Named Plaintiffs Browne and Hall and Team-Driver Plaintiffs at least $100 per day ($6.25 x 16 hours) for each day spent over-the-road, minus bona fide meal periods.

65.     Per AR DOL Rule No. 010.14-108(d)(3), from January 1, 2015 through December 31, 2015, Defendant PAM was required to compensate Named Plaintiffs Browne and Hall and Solo-Driver Plaintiffs at least $120 per day ($7.50 x 16 hours) for each day spent over-the-road, minus bona fide meal periods.

66.     Per AR DOL Rule No. 010.14-108(d)(3), from January 1, 2016 through the present, Defendant PAM was required to compensate Team-Driver Plaintiffs at least $128 per day ($8.00 x 16 hours) for each day spent over-the-road, minus bona fide meal periods.

67.     While over-the-road as Team-Drivers, Named Plaintiffs Browne and Hall and Team-Driver Plaintiffs were responsible for their assigned trucks for more than 24 consecutive hours.

68.     While over-the-road as Team-Drivers, Named Plaintiffs Browne and Hall and Team-Driver Plaintiffs were responsible for the cargo being transported in their assigned trucks for more than 24 consecutive hours.

69.     While over-the-road as Team-Drivers, Named Plaintiffs Browne and Hall and Team-Driver Plaintiffs were confined to the general vicinity of their assigned truck for more than 24 hours.

70.     Named Plaintiffs Browne and Hall spent at least 6 days over-the-road each workweek during the time they worked as Team-Drivers for Defendant PAM.

71.     Team-Driver Plaintiffs spent at least 5, and generally 7, days over-the-road each workweek during the time they worked as Team-Drivers for Defendant PAM.

72.     Defendant PAM failed to implement a proper fail-safe compensation system to ensure that Named Plaintiffs Browne and Hall and Team-Driver Plaintiffs were paid at least the

minimum wage during workweeks where, for various reasons, they were over-the-road but did not drive enough miles to receive minimum wage by virtue of their mileage rate.

73.     Because of this failure of Defendant PAM, Defendant PAM regularly paid Named Plaintiffs Browne and Hall and Team-Driver Plaintiffs below the federal and state minimum wage.

**CAUSE OF ACTION NO. 3**
**FAILURE TO PAY MINIMUM WAGE TO SOLO-DRIVERS AFTER INITIAL ORIENTATION**

74.     The foregoing paragraphs are incorporated herein as if set forth in full.

75.     Following the completion of Defendant PAM's Initial Orientation, Named Plaintiff Caldwell and Solo-Driver Plaintiffs were provided a truck by Defendant PAM and were paid a per-mileage rate for each mile driven.

76.     Following Defendant PAM's Initial Orientation Program, Named Plaintiff Caldwell and Solo-Driver Plaintiffs reported their status to Defendant PAM via the Qualcomm computer in the truck.

77.     Upon information and belief, the Qualcomm messages were received by Defendant PAM in a single centralized location in Arkansas.

78.     During this time, Named Plaintiff Caldwell and Solo-Driver Plaintiffs were required to remain over-the-road in or in the general proximity of their assigned truck for more than 24 consecutive hours.

79.     Following Defendant PAM's Training Program, Named Plaintiff Caldwell and Solo-Driver Plaintiffs were "on duty" (per United States Department of Labor ("DOL") Regulations and Administrative Regulations of the Labor Standards Division of the Arkansas Department of Labor ("AR DOL")) continually for days and weeks on end.

80.     PER 29 C.F.R. § 785.22 and AR DOL Rule No. 010.14-108(d)(3), the maximum amount of time an employer may dock an employee who is on duty for more than 24 hours for time spent in a sleeper berth is 8 hours per day.  The remaining amount of time (16 hours per day) is work time and must be paid, less bona fide meal periods.

81.     While over-the-road as Solo-Drivers for Defendant PAM, Named Plaintiff Caldwell and Solo-Driver Plaintiffs were responsible for their assigned trucks for more than 24 consecutive hours.

82.     While over-the-road as Solo-Drivers for Defendant PAM, Named Plaintiff Caldwell and Solo-Driver Plaintiffs were responsible for the cargo being transported in their assigned trucks for more than 24 consecutive hours.

83.     While over-the-road as Solo-Drivers for Defendant PAM, named Plaintiff Caldwell and Solo-Driver Plaintiffs were confined to the general vicinity of their assigned trucks for more than 24 consecutive hours.

84.     Named Plaintiff Caldwell spent at least 6 days over-the-road each workweek during the time he worked as a Solo-Driver for Defendant PAM.

85.     Solo-Driver Plaintiffs spent at least 5, and generally 7, days over-the-road each workweek during the time they worked as Solo-Drivers for Defendant PAM.

86.     While driving over-the-road as Solo-Drivers for Defendant PAM, Named Plaintiff Caldwell and Solo-Driver Plaintiffs regularly worked more than 16 hours per day because they were required to, among other things: (1) drive the truck; (2) remain in the truck while the truck was moving so that they could assist in transporting the cargo; (3) wait for cargo to be loaded or unloaded while in the truck or its immediate vicinity; (4) fuel up the truck and perform routine maintenance to same; (5) remain in the vicinity of the truck to help protect Defendant PAM's and

its customers' property; and (6) remain inside the truck when stopped to log time in the sleeper berth and to help protect Defendant PAM's and its customer's property.

87.    Per 29 C.F.R. § 785.22, Defendant PAM was required to compensate Named Plaintiff Caldwell and Solo-Driver Plaintiffs at least $116 per day ($.7.25 x 16 hours) for each day spent over-the-road, minus bona fide meal periods.

88.    Per AR DOL Rule No. 010.14-108(d)(3), prior to January 1, 2015, Defendant PAM was required to compensate Named Plaintiff Caldwell and Solo-Driver Plaintiffs at least $100 per day ($6.25 x 16 hours) for each day spent over-the-road, minus bona fide meal periods.

89.    Per AR DOL Rule No. 010.14-108(d)(3), from January 1, 2015 through December 31, 2015, Defendant PAM was required to compensate Named Plaintiff Caldwell and Solo-Driver Plaintiffs at least $120 per day ($7.50 x 16 hours) for each day spent over-the-road, minus bona fide meal periods.

90.    Per AR DOL Rule No. 010.14-108(d)(3), from January 1, 2016 through the present, Defendant PAM was required to compensate Named Plaintiff Caldwell and Solo-Driver Plaintiffs at least $128 per day ($8.00 x 16 hours) for each day spent over-the-road, minus bona fide meal periods.

91.    Additionally, the wages Defendant PAM paid to Named Plaintiff Caldwell and Solo-Driver Plaintiffs each workweek failed, on at least one occasion, to equal at least the federal minimum wage, because the time Named Plaintiff Caldwell and Solo-Driver Plaintiffs logged each workweek on lines "3" and "4" of the Qualcomm system (corresponding to "On-Duty Driving" and "On-Duty, Not Driving" as defined by the DOT), when multiplied by $7.25, exceeded the wages paid to them based on the per-mileage rate.

92.     Furthermore, the wages Defendant PAM paid to Named Plaintiff Caldwell and Solo-Driver Plaintiffs each workweek failed, on at least one occasion, to equal at least the Arkansas minimum wage, because the time Named Plaintiff Caldwell and Solo-Driver Plaintiffs logged each workweek on lines "3" and "4" of the Qualcomm system (corresponding to "On-Duty Driving" and "On-Duty, Not Driving" as defined by the DOT), when multiplied by $6.25, $7.50 or $8.00 exceeded the wages paid to them based on the per-mileage rate.

93.     Defendant PAM failed to implement a proper fail-safe compensation system to ensure that Named Plaintiff Caldwell and Solo-Driver Plaintiffs were paid at least the minimum wage during workweeks where, for various reasons, they were over-the-road but did not drive enough miles to receive minimum wage by virtue of their mileage rate.

94.     Because of this failure of Defendant PAM, Defendant PAM regularly paid Named Plaintiff Caldwell and Solo-Driver Plaintiffs below the federal and state minimum wage.

## CAUSE OF ACTION NO. 4
## FAILURE TO PAY FOR COMPENSABLE TRAVEL TIME

95.     The foregoing paragraphs are incorporated herein as if set forth in full.

96.     Named Plaintiff Caldwell and Travel-Time Plaintiffs were required to engage in significant amounts of travel during regular business hours that kept them away from home overnight.

97.     Named Plaintiff Caldwell and Travel-Time Plaintiffs were regularly required to travel to locations that required that they stay overnight and away from home.

98.     Named Plaintiff Caldwell and Travel-Time Plaintiffs completed this travel during regular business hours.

99.     Defendant PAM failed to pay Named Plaintiff Caldwell and Travel-Time Plaintiffs any compensation for such travel time.

100.    Per 29 CFR §785.39 and AR DOL Rule No. 010.14-108(f)(5), travel that keeps an employee away from home overnight which is completed during regular working hours is work time and must be paid.

101.    Consistent with Defendant PAM's failure to pay for compensable travel time, Defendant PAM failed to pay Named Plaintiff Caldwell for compensable travel time he worked while he traveled away from home overnight during regular business hours to Defendant PAM's terminal location to receive training in Defendant's Training Program.

102.    As a result of Defendants' unlawful conduct, Named Plaintiff Caldwell and Travel-Time Plaintiffs have been harmed.

**CAUSE OF ACTION NO. 5**
**COMDATA CARD FEES**

103.    The foregoing paragraphs are incorporated herein as if set forth in full.

104.    Defendant PAM required its drivers to receive the wages Defendant PAM determined were due to them via a Comdata Card that Defendant PAM provided to each driver.

105.    Defendant PAM retained in its own accounts the money that was "paid" to the drivers as wages, until the drivers actually used the Comdata Card for a purchase, transfer, or other transactions.

106.    Upon information and belief, Defendant PAM received interest on the money left in its accounts until the drivers actually used the Comdata Card for a purchase, transfer, or other transactions.

107.   Defendant PAM required its drivers to sign a "COMDATA CARD CONSENT FORM," which set forth, among other things, that the drivers would be charged a fee:

    a.   To check their balance on the Comdata Card at an ATM (this fee was in addition to any fee that the ATM network charged).

    b.   To access their earnings (whether via an ATM withdrawal or a "Comchek Draft") (this fee was in addition to any fee that the ATM network charged).

    c.   To transfer their earnings to a bank account.

108.   As a result of these deductions, Defendants failed to pay all wages earned to Named Plaintiffs and Comdata Plaintiffs and failed to pay minimum wage for all hours worked.

## CAUSE OF ACTION NO. 6
## UNLAWFUL DEDUCTIONS

109.   The foregoing paragraphs are incorporated herein as if set forth in full.

110.   Defendant PAM deducted $25 per week from Named Plaintiff Caldwell and Deduction Plaintiffs' pay until $500 was accumulated in an "escrow account."

111.   Furthermore, after approximately 6 weeks of employment, Defendant PAM began deducting $45 per week from Named Plaintiff Caldwell and Deduction Plaintiffs' wages, ostensibly to pay for an approximate 2 week CDL school the drivers attended before beginning Defendant PAM's orientation program.

112.   Said $25 and $45 deductions, on at least one occasion, caused Named Plaintiff Caldwell and Deduction Plaintiffs to receive compensation for the workweek that was less than minimum wage.

113.   As a result of these deductions, Defendants failed to pay all wages earned and minimum wage for all hours worked to Named Plaintiff Caldwell and Deduction Plaintiffs.

## CAUSE OF ACTION NO. 7
## __BREACH OF CONTRACT__

114.    The foregoing paragraphs are incorporated herein as if set forth in full.

115.    Defendant PAM deducted $25 per week from Named Plaintiffs' and Escrow Plaintiffs' pay until $500 was accumulated in an "escrow account."

116.    Once $500 was accumulated in an escrow account for Named Plaintiffs and Escrow Plaintiffs, Defendant PAM agreed to pay Named Plaintiffs and Escrow Plaintiffs interest on the $500 on a quarterly basis at the rate of 8% per annum.

117.    Defendant PAM failed to pay its drivers interest on the $500 on a quarterly basis at the rate of 8% per annum.

118.    Defendant PAM required Named Plaintiffs and Escrow Plaintiffs to agree that the "money in the escrow account may be deducted by P.A.M. Transport, Inc., after [his or her] termination in the event:  1. P.A.M. fails to receive all of [the driver's] trip envelopes and bills of ladings[;] . . . 3. That P.A.M. incurs any expenses as a result of [the driver's] termination including, but not limited to, out of route miles, towing, truck chasing for abandoned vehicle[;]  4.  There is damage to the vehicle or cargo[;]  5. [The driver] fail[s] to meet [his or her] contract of employment commitment of one year.  **(if applicable)**[;]  6.  Any other reasonable expense incurred by P.A.M. as a result of [the diver's] employment or termination."

119.    Defendant PAM agreed that "[f]inal disbursement of the escrow balance, less any deductions, will be made 90 days after termination."

120.    Defendant failed to tender to its drivers "[f]inal disbursement of the escrow balance, less any deductions, [within] . . . 90 days after termination."

121.    As a result of Defendant PAM's failure to pay Named Plaintiff and Escrow Plaintiffs interest on the $500 on a quarterly basis at the rate of 8% per annum, and Defendant PAM's failure to tender to Named Plaintiffs and Escrow Plaintiffs final disbursement of the escrow balance 90 days after termination, Named Plaintiffs and Escrow Plaintiffs have suffered damages.

**COUNT I**
**Violations of the Fair Labor Standards Act**
**(Named Plaintiffs and Collective Action Plaintiffs v. Defendants)**
**(Minimum Wage)**

122.    The foregoing paragraphs are incorporated herein as if set forth in full.

123.    At all times relevant herein, Defendant PAM was and continues to be an "employer" within the meaning of the FLSA.

124.    At all times relevant herein, Named Plaintiffs and Collective Action Plaintiffs were/are "employees" within the meaning of the FLSA.

125.    The FLSA requires employers, such as Defendant PAM, to minimally compensate employees, such as Named Plaintiffs and Collective Action Plaintiffs, at the federal minimum wage rate for each hour worked.

126.    As a result of Defendant PAM's company-wide practices and policies of paying its employees below the minimum wage for all hours worked each workweek, Named Plaintiffs and Collective Action Plaintiffs have been harmed.

127.    As a result of Defendant PAM's company-wide practice and policy of requiring its employees to receive their wages through a Comdata Card (which causes fees to be charged to the employees to access their wages, electronically transfer their wages, or even make a balance inquiry, etc.), which charges caused the wages to fall below the minimum wage for all hours worked in certain workweeks, Named Plaintiffs and Collective Action Plaintiffs have been harmed.

128.    As a result of Defendant PAM's company-wide practices and policies of making deductions from its employees' wages that caused the wages to fall below the minimum wage for all hours worked each workweek, Named Plaintiffs and Collective Action Plaintiffs have been harmed.

129.    Defendant Cushman and John Does 1-5 are jointly and individually liable for Defendant PAM's failure to compensate Named Plaintiffs and Collective Action Plaintiffs at least the federal minimum wage for all hours worked because they directly or indirectly, directed, aided, abetted, and/or assisted with creating and/or executing the policies and practices which violated the FLSA.

130.    John Does 6-10 are jointly and individually liable for Defendant PAM's failure to compensate Named Plaintiffs and Collective Action Plaintiffs at least the federal minimum wage for all hours worked because they had control over processing payroll for Named Plaintiffs and Collective Action Plaintiffs.

131.    Defendant PAM willfully failed to compensate Named Plaintiffs and Collective Action Plaintiffs the federal minimum wage.

132.    As a result of Defendant PAM's failure to compensate Named Plaintiffs and Collective Action Plaintiffs at the federal minimum wage rate, Defendant PAM has violated and continues to violate the FLSA.

**COUNT II**
**Violations of the Arkansas Minimum Wage Law**
**(Named Plaintiffs and Class Plaintiffs v. Defendants)**
**(Minimum Wage)**

133.    The foregoing paragraphs are incorporated herein as if set forth in full.

134.    At all times relevant herein, Defendant PAM was and continues to be an "employer" within the meaning of the Arkansas Minimum Wage Law.

25

135.    At all times relevant herein, Named Plaintiffs and Class Plaintiffs were/are "employees" within the meaning of the Arkansas Minimum Wage Law.

136.    The Arkansas Minimum Wage Law requires employers, such as Defendant PAM, to minimally compensate employees, such as Named Plaintiffs and Class Plaintiffs, at the state minimum wage rate for each hour worked.

137.    As a result of Defendant PAM's company-wide practices and policies of paying its employees below the minimum wage for all hours worked each workweek, Named Plaintiffs and Class Plaintiffs have been harmed.

138.    As a result of Defendant PAM's company-wide practice and policy of requiring its employees to receive their wages through a Comdata Card (which causes fees to be charged to the employees to access their wages, electronically transfer their wages, or even make a balance inquiry, etc.), which charges caused the wages to fall below the minimum wage for all hours worked in certain workweeks, Named Plaintiffs and Class Plaintiffs have been harmed.

139.    As a result of Defendant PAM's company-wide practices and policies of making deductions from its employees' wages that caused the wages to fall below the minimum wage for all hours worked each workweek, Named Plaintiffs and Collective Action Plaintiffs have been harmed.

140.    Defendant Cushman and John Does 1-5 are jointly and individually liable for Defendant PAM's failure to compensate Named Plaintiffs and Class Plaintiffs at least the minimum wage for all hours worked because they directly or indirectly, directed, aided, abetted, and/or assisted with creating and/or executing the policies and practices which violated the Arkansas Minimum Wage Law.

141.    John Does 6-10 are jointly and individually liable for Defendant PAM's failure to compensate Named Plaintiffs and Collective Action Plaintiffs at least the minimum wage for all hours worked because they had control over processing payroll for Named Plaintiffs and Class Plaintiffs.

142.    Defendant PAM willfully failed to compensate Named Plaintiffs and Class Plaintiffs the state minimum wage.

143.    As a result of Defendant PAM's failure to compensate Named Plaintiffs and Class Plaintiffs at the state minimum wage rate, Defendant PAM has violated and continues to violate the Arkansas Minimum Wage Law.

**COUNT III**
**Violations of the Arkansas Wage Payment Law**
**(Named Plaintiffs and Comdata Plaintiffs v. Defendant PAM)**
**(Failure to Pay in Currency)**

144.    The foregoing paragraphs are incorporated herein as if set forth in full.

145.    At all times relevant herein, Defendant PAM was and continues to be an "employer" within the meaning of the Arkansas Wage Payment Law, Ar. Code § 11-4-402.

146.    At all times relevant herein, Named Plaintiffs and Comdata Plaintiffs were/are "employees" within the meaning of the Arkansas Wage Payment Law, Ar. Code § 11-4-402.

147.    The Arkansas Wage Payment Law, Ar. Code § 11-4-402, requires employers, such as Defendant PAM, to pay employees either through currency, check, or electronic direct deposit into the employees' accounts.

148.    Defendant PAM did not pay Named Plaintiffs and Comdata Plaintiffs either through currency, check, or electronic direct deposit into the employees' accounts.

149.    Instead, Defendant PAM paid Named Plaintiffs and Comdata Plaintiffs via Comdata Cards.

150.    Comdata Cards are neither currency, check, nor an electronic direct deposit into an employee's account.

151.    Defendant PAM mandated the use of Comdata Cards as the wage payment device for Named Plaintiffs and Comdata Plaintiffs.

152.    Defendant PAM mandated the use of Comdata Cards for Named Plaintiffs and Comdata Plaintiffs that charged fees in order to access their wages.

153.    Defendant PAM caused Named Plaintiffs and Comdata Plaintiffs to incur Comdata Card fees to obtain their wages.

154.    Defendant PAM prevented Named Plaintiffs and Comdata Plaintiffs from transferring their wages to their own accounts without incurring fees through the use of the mandated Comdata Card.

155.    Defendant PAM paid Named Plaintiff and Comdata Plaintiffs via Comdata Cards for the benefit of Defendant PAM, insofar as Defendant PAM was able to retain the amount paid as wages in Defendant PAM's own accounts and earn interest until Named Plaintiffs and Comdata Plaintiffs spent, transferred, or withdrew the money.

156.    Named Plaintiffs and Class Plaintiffs suffered damages as a result of being paid via Comdata Cards.

## COUNT IV
### Violations of the Arkansas Wage Payment Law
### (Named Plaintiffs and Class Plaintiffs v. Defendants)
### (Failure to Pay Full Wages on Discharge)

157.    The foregoing paragraphs are incorporated herein as if set forth in full.

158.    At all times relevant herein, Defendant PAM was and continues to be an "employer" within the meaning of the Arkansas Wage Payment Law, Ar. Code § 11-4-405(a)(1) & 405(b).

28

159.   At all times relevant herein, Named Plaintiffs and Class Plaintiffs were/are "employees" within the meaning of the Arkansas Wage Payment Law, Ar. Code § 11-4-405(a)(1) & 405(b).

160.   Arkansas Wage Payment Law, Ar. Code § 11-4-405(a)(1) & 405(b) requires that all wages be paid upon discharge without deductions.

161.   Defendant PAM deducts money from Named Plaintiffs and Class Plaintiffs wages upon the discharge of an employee for the following reasons:

a.   "PAM fails to receive all of [the driver's] trip envelopes and bills of ladings[;]

b.   PAM incurs any expenses as a result of [the driver's] termination including, but not limited to, out of route miles, towing, truck chasing for abandoned vehicle[;]

c.   There is damage to the vehicle or cargo[;]

d.   [The driver] fail[s] to meet [his or her] contract of employment commitment of one year.

e.   Any other reasonable expense incurred by PAM as a result of [the diver's] employment or termination."

162.   None of the above deductions are permitted to be taken from wages at time of discharge under Ar. Code § 11-4-405(b).

163.   Defendant PAM deducted money throughout the course of Named Plaintiffs' and Class Plaintiffs' employment and held this money in an escrow account for Named Plaintiffs and Class Plaintiffs.

164.    Upon the termination of Named Plaintiffs and Class Plaintiffs, Defendant PAM does (or has at least agreed to) pay the amount in the escrow account back to Named Plaintiffs and Class Plaintiffs, minus the above-mentioned deductions.

165.    By making such deductions, Defendant PAM has and continues to violate Ar. Code § 11-4-405(b), which requires the payment of all wages upon discharge without any deductions being made.

166.    Named Plaintiffs and Class Plaintiffs have suffered harm as a result of Defendant PAM's unlawful deductions policy.

**COUNT V**
**<u>Violations of the Arkansas Common Law</u>**
**(Named Plaintiff Caldwell and Deduction Plaintiffs v. Defendant PAM)**
**(Unjust Enrichment)**

167.    The foregoing paragraphs are incorporated herein as if set forth in full.

168.    Defendant PAM made deductions from Named Plaintiff Caldwell and Deduction Plaintiffs' wages throughout the course of their employment and alleged that these deductions were being placed in an escrow account to cover final pay deductions at time of discharge.

169.    Defendant PAM was not entitled to make the final pay deductions at time of discharge under Ar. Code § 11-4-405(b).

170.    Accordingly, Defendant PAM increased its profits to the detriment of Named Plaintiff Caldwell and Deduction Plaintiffs by making the final pay deductions at time of discharge.

171.    Named Plaintiff Caldwell and Deduction Plaintiffs were harmed as a result of Defendant's actions.

**COUNT VI**
**<u>Violations of the Arkansas Common Law</u>**
**(Named Plaintiffs and Escrow Plaintiffs v. Defendant PAM)**

**(Unjust Enrichment)**

172.    The foregoing paragraphs are incorporated herein as if set forth in full.

173.    Defendant PAM made deductions from Named Plaintiffs and Escrow Plaintiffs' wages throughout the course of their employment and alleged that these deductions were being placed in an escrow account to cover final pay deductions at time of discharge.

174.    Defendant PAM also agreed to pay Named Plaintiffs and Escrow Plaintiffs interest on the amount in the escrow account on a quarterly basis at an interest rate of 8% per year.

175.    Defendant PAM did not pay the interest amount it agreed to, and accordingly, increased its profits to the detriment of Named Plaintiffs and Escrow Plaintiffs.

176.    Named Plaintiffs and Escrow Plaintiffs were harmed as a result of Defendant's actions.

**COUNT VII**
**Violations of the Arkansas Common Law**
**(Named Plaintiffs and Escrow Plaintiffs v. Defendant PAM)**
**(Breach of Contract)**

177.    The foregoing paragraphs are incorporated herein as if set forth in full.

178.    Defendant PAM made deductions from Named Plaintiffs and Escrow Plaintiffs' wages throughout the course of their employment and alleged that these deductions were being placed in an escrow account to cover final pay deductions at time of discharge.

179.    Defendant PAM also agreed to pay Named Plaintiffs and Escrow Plaintiffs interest on the amount in the escrow account on a quarterly basis at an interest rate of 8% per year.

180.    Defendant PAM did not pay the interest amount it agreed to, and accordingly, breached its contract with Named Plaintiffs and Escrow Plaintiffs.

181.   Additionally, Defendant PAM agreed to provide Named Plaintiffs and Escrow Plaintiffs final disbursement of the escrow balance, less any deductions, within ninety days of termination.

182.   Defendant PAM failed to tender final disbursement of the escrow balance, less any deductions, within ninety days of termination, and accordingly, further breached its contract with Named Plaintiffs and Escrow Plaintiffs.

183.   Named Plaintiffs and Escrow Plaintiffs were harmed as a result of Defendant's actions.

**WHEREFORE**, Plaintiffs pray that this Court enter an Order:

1) Certifying the instant action as a "collective action" pursuant to the Fair Labor Standards Act;

2) Certifying the instant action as a "class action" pursuant to Federal Rule of Civil Procedure 23;

3) Enjoining Defendant PAM from continuing to maintain its illegal policy, practice, or customs in violation of federal and state law;

4) Providing that Defendant PAM is to compensate, reimburse, and make Plaintiffs whole for any and all pay and benefits they would have received had it not been for Defendant PAM's illegal actions, including but not limited to past lost earnings.

5) Awarding Plaintiffs liquidated damages pursuant to the laws they are suing under in an amount equal to the actual damages in this case;

6) Awarding Plaintiffs the costs and expenses of this action and reasonable legal fees as provided by applicable law; and

7) Awarding Plaintiffs all other relief as the Court deems appropriate and just.

Respectfully submitted,

Richard S, Swartz, Esq.
Justin L. Swidler, Esq.
Joshua S. Boyette, Esq.
Travis Martindale-Jarvis, Esq.
**SWARTZ SWIDLER, LLC**
1101 Kings Hwy N., Suite 402
Cherry Hill, NJ 08034
Phone: (856) 685-7420
Fax: (856) 685-7417

Dated:  December 7, 2016

33