# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF ARKANSAS

DAVID BROWNE, ANTONIO )
CALDWELL, and LUCRETIA HALL, on )
behalf of themselves and all those similarly )
situated, )          Case No. 5:16-cv-05366, TLB
)
          Plaintiffs, )
)
v. )
)
P.A.M. TRANSPORT, INC., )
297 West Henri de Tonti Blvd. )
Tontitown, AR  72770 )
)
          And )
)
JOHN DOES, 1-10 )
c/o P.A.M. TRANSPORT, INC. )
297 West Henri de Tonti Blvd. )
Tontitown, AR  72770 )
)
          Defendants. )

---

## P.A.M. TRANSPORT, INC.'S MOTION FOR
## PARTIAL DISMISSAL UNDER FED. R. CIV. P. 12(c)

---

Defendant P.A.M. Transport, Inc. ("PAM"), by and through counsel, moves for partial dismissal of the First Amended Complaint of Plaintiffs David Browne, Antonio Caldwell, and Lucretia Hall.  In support of this Motion, PAM relies on the authorities and arguments set out in the accompanying Brief in Support of this Motion.

Respectfully Submitted,

CONNER & WINTERS, LLP

s/Robert L. Jones, III
Robert L. Jones, III, AR #69041
Kerri E. Kobbeman, AR #2008149
Amber J. Prince, AR #2007247
4375 N. Vantage Drive, Suite 405
Fayetteville, AR  72703
(479) 582-5711
(479) 587-1426 (fax)
bjones@cwlaw.com
mburney@cwlaw.com
kkobbeman@cwlaw.com
aprince@cwlaw.com

DICKINSON WRIGHT PLLC

/s/ M. Reid Estes, Jr.
M. Reid Estes, Jr., BPR #9043
Peter F. Klett, BPR #12688
Martin D. Holmes, BPR #12122
424 Church Street, Suite 800
Nashville, TN  37219
(615) 620-1737
(844) 670-6009 (fax)
restes@dickinsonwright.com
pklett@dickinsonwright.com
mdholmes@dickinsonwright.com

/s/ K. Scott Hamilton
500 Woodward Avenue
Suite 4000
Detroit, MI  48226-3425
(313)-223-3500
khamilton@dickinsonwright.com

Dated : May 24, 2018

*Attorneys for the Defendant P.A.M. Transport, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing pleading was electronically filed with the Clerk of the Court using the CM/ECF System on May 24, 2018, which will serve notice of same on the following:

Justin L. Swidler, Esq.
Richard S. Swartz, Esq.
Joshua S. Boyette, Esq.
Travis Martindale_Jarvis, Esq.
Swartz Swidler, LLC
1101 Kings Hwy. N., Suite 402
Cherry Hill, NJ 08034

/s/ K. Scott Hamilton
K. Scott Hamilton

DETROIT 27403-20 1460371v1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF ARKANSAS

DAVID BROWNE, ANTONIO
CALDWELL, and LUCRETIA HALL, on
behalf of themselves and all those similarly
situated,

             Plaintiffs,

v.

P.A.M. TRANSPORT, INC.,
297 West Henri de Tonti Blvd.
Tontitown, AR  72770

             And

JOHN DOES, 1-10
c/o P.A.M. TRANSPORT, INC.
297 West Henri de Tonti Blvd.
Tontitown, AR  72770

             Defendants.

Case No. 5:16-cv-05366, TLB

---

## BRIEF IN SUPPORT OF P.A.M. TRANSPORT, INC.'S MOTION FOR
## PARTIAL DISMISSAL UNDER FED. R. CIV. P. 12(c)

---

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ...........................................................................................III

QUESTIONS PRESENTED........................................................................................... VI

I.   STATEMENT OF FACTS ....................................................................................1

    A.   Introduction................................................................................................1

    B.   Relevant Allegations and Undisputed Facts ..............................................1

II.  ARGUMENT.......................................................................................................3

    A.   Standard of Review....................................................................................3

    B.   Plaintiffs' Fair Labor Standard Act and Arkansas State Law "Sleeper Berth" Claims Must Be Dismissed .............................................................3

        1.   Department of Transportation Regulation of Commercial Drivers ..........4

        2.   Plaintiffs' Federal and State Minimum Wage Claims Ignore DOL and DOT Regulations Specifically Applicable to Truck Drivers ............7

            a.   Based on DOL Regulations Alone, Non-Compensable Sleeper Berth Time Is Not Limited to 8 Hours............................9

            b.   DOT Regulations Also Compel Holding That Non-Compensable Sleeper Berth Time Is Not Limited to 8 Hours....................................................................................11

        3.   The DOT Regulations Must Be Construed Together With the FLSA's 29 C.F.R. §785.22 Regulations .................................................12

            a.   Regulations Must Be Applied *In Pari Materia*..........................13

            b.   Regulations Created By Different Government Agencies Must Be Applied *In Pari Materia*................................................13

    C.   Plaintiffs Browne and Hall's Arkansas State Law Claims Must Be Dismissed...............................................................................................15

        1.   Arkansas Wage Statutes are Presumed Not to Apply Extraterritorially.....................................................................................16

2.     Applying the Arkansas Minimum Wage Law to Plaintiffs Browne
       and Hall Would Violate the Dormant Commerce Clause.......................19

III.   CONCLUSION............................................................................................22

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Abdulina v. Eberl's Temp. Serv., Inc.*, 79 F. Supp.2d 1201 (D. Colo. 2015) ............................... 18

*Arkansas Valley Elec. Cooperative Corp. v. Southwestern Bell Telephone Co.*, 2017 WL 3314008 (W.D. Ark., April 17, 2017).............................................................................. 16

*Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) ..................................... 3

*Bell Atl. Corp. v. Twombley*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ................. 3

*Bolt v. Pfizer, Inc.*, 716 F.3d 1087 (8th Cir. 2013) ....................................................................... 3

*Chalmers v. Toyota Motor Sales, USA, Inc.*, 326 Ark. 895 (1996) .............................................. 16

*Cotter v. Lyft, Inc.*, 60 F. Supp.3d 1059 (N.D. Calif. 2014) .................................................. 21, 22

*Dennis v. Higgins*, 498 U.S. 439, 111 S.Ct. 865, 112 L.Ed.2d 969 (1991) ................................... 19

*Edgar v. MITE Corp.*, 457 U.S. 624, 642-43, 102 S.Ct. 2629, 73 L.Ed.2d 269 (1982) ............... 21

*Erlenbaugh v. United States*, 409 U.S. 239 (1972)....................................................................... 12

*Erlenbaugh v. United States*, 409 U.S. 239, 34 L.Ed.2d 446, 93 S.Ct. 477 (1992)...................... 13

*Glass v. Kemper Corp.*, 133 F.3d 999 (7th Cir. 1998).................................................................. 17

*Handmaker v. Certus Bank, N.A.*, 2015 WL 13635662 (W. D. Ky., July 17, 2015)................... 18

*Hetman v. Schwade*, 317 S.W.3d 559 (2009) ............................................................................. 16

*Holt v. Deer-Mt. Judea School Dist.*, 135 F. Supp.2d 898 (W.D. Ark. 2015)................................ 3

*Huang v. Fluidmesh Network, LLC*, 2017 WL 3034672 (N.D. Ill., July 18, 2017) ..................... 19

*Ibarra v. Texas Employment Comm'n*, 598 F. Supp. 104 (E.D. Tex. 1984).......................... 13, 14

*JPMorgan Chase Bank, N.A. v. Johnson*, 715 F3d 1010 (8th Cir. 2013)...................................... 13

*Keinath v. Comm'nr*, 480 F.2d 57 (8th Cir. 1973)....................................................................... 13

*Leonard & Yeagin v. State*, 95 Ark. 381 (1911) ........................................................................ 16

*Loos v. BNSF Railway Co.*, 865 F.3d 1106 (8th Cir. 2017)......................................................... 12

*Meekins v. Meekins*, 169 Ark. 265 (1925) ................................................................................. 16

*Mitchell v. Abercrombie & Fitch*, 2005 WL 1159412 (S. D. Ohio, May 17, 2005)..................... 20

*Nance v. May Trucking Co.*, 2014 WL 199136 (D. Oregon, Jan. 15, 2014) ............................... 10

*Petrone v. Werner Enterprises, Inc.*, 2017 WL 510884 (D. Neb., Feb. 2, 2017) ......... 9, 10, 11, 12

*Reeder-Simco GMC, Inc. v. Volvo GM Heavy Truck Corp.*, 374 F.3d 701 (8th Cir. 2004).......... 13

*Risinger v. SOC LLC*, 936 F. Supp.1235 (D. Nevada 2013) ...................................................... 17

*United States v. Fillmore*, 162 F.3d 1055 (10th Cir. 1998) ......................................................... 13

*United States v. Rutherford*, 437 F.2d 182 (8th Cir. 1971)......................................................... 13

*Van Orman v. The America Insur. Co.*, 680 F.2d 301 (3rd Cir. 1982) ......................................... 15

*Vidrio v. United Airlines, Inc.*, 2017 WL 1034200 (C.D. Calif, March 15, 2017) ................. 18, 19

*Wachovia Bank v. Schmidt*, 546 U.S. 303 (2006)....................................................................... 12

*Westcott v. City of Omaha*, 901 F.2d 1486 (8th Cir. 1990) ........................................................... 3

*Widmer v. Wood*, 243 Ark. 457 (1967) ....................................................................................... 16

**Rules**

Fed. R. Civ. P. 12(b)(6).......................................................................................................... 3, 18

Fed. R. Civ. P. 12(c) ...................................................................................................... vi, 1, 3, 22

Fed. R. Civ. P. 8(a)(2)................................................................................................................... 3

**Statutes**

26 U.S.C. §3304(a)(14).......................................................................................................... 13, 14

26 U.S.C. §411 ........................................................................................................................... 15

29 U.S.C. §1344(d) ..................................................................................................................... 15

29 U.S.C. §1344(d)(2) ................................................................................................................. 15

42 U.S.C. §1382c(a)(1)(b)(ii) ................................................................................................ 13, 14

42 U.S.C. §602(a)(33) ................................................................................................................. 14

42 U.S.C. §602(a)(333) ............................................................................................................... 13

49 U.S.C. §3113............................................................................................................................ 4

49 U.S.C. §31135 ............................................................................................................ 4

49 U.S.C. §31136(c) ....................................................................................................... 4

**Regulations**

20 C.F.R. §416.1618 ..................................................................................................... 14

26 C.F.R. §1.401-2(b)(1) ............................................................................................. 15

29 C.F.R. §285.22 .......................................................................................................... 8

29 C.F.R. §785.22 .................................................................................................. passim

29 C.F.R. §785.22(a) ...................................................................................................... 9

29 C.F.R. §785.33 ..................................................................................................... 7, 10

29 C.F.R. §785.41 .................................................................................................. passim

49 C.F.R. §395.1(a)(2) ................................................................................................... 6

49 C.F.R. §395.1(g) ........................................................................................................ 5

49 C.F.R. §395.2 ................................................................................................. 6, 11, 12

49 C.F.R. §395.3 ............................................................................................................. 8

49 C.F.R. §395.3(a) ........................................................................................................ 5

49 C.F.R. §395.3(a)(2) ................................................................................................. 11

49 C.F.R. §395.3(a)(3) ................................................................................................. 12

49 C.F.R. §395.8 ............................................................................................................. 4

49 C.F.R. §395.8(b) .................................................................................................... 1, 5

49 C.F.R. §395.8(h)(1)-(2) .......................................................................................... 11

49 C.F.R. §395.9(e)(1) ................................................................................................... 5

49 C.F.R. §395.9(f)(1) .................................................................................................... 5

49 C.F.R.§395.8(a)(1) .................................................................................................... 5

49 C.F.R.§395.8(a)(2) .................................................................................................... 5

## QUESTIONS PRESENTED

Background Facts:   Named Class Plaintiffs Browne, Caldwell and Hall ("Plaintiffs") allege that Defendant P.A.M. Transport, Inc. ("PAM") violated the minimum wage requirements of the Fair Labor Standards Act ("FLSA") and its Arkansas state law equivalent by counting as non-compensable all time that Plaintiffs spend in the sleeper berth of their commercial vehicles while driving their routes.  Plaintiffs allege that PAM is permitted to count as non-compensable a maximum of 8 hours of "sleeper berth" time and that PAM must pay minimum wage for the remaining 16 hours of each 24-hour period during which they drive their routes.  Plaintiffs are paid based on a rate per mile driven, and allege that such payments, when measured against 16 hours per day, result in less than the hourly minimum wage required by the FLSA and Arkansas state law.

Question No.1:   Should Plaintiffs' "sleeper berth" claim be dismissed under Fed. R. Civ. P. 12(c) where:

(i)   Department of Transportation Regulations specifically define *all* time spent in a sleeper berth as "off-duty" time and therefore not compensable;

(ii)   DOT Regulations require drivers to have at least 10 consecutive hours of "off-duty" time before driving, limiting drivers to a maximum of 14 possible "on-duty" hours in each 24-hour cycle; and

(iii)   Plaintiffs only allege that they were paid less than minimum wage if they had at least 16 hours per day of compensable "on-duty" time each 24-hour period?

Question No. 2:   Should Named Plaintiffs Browne and Hall's claims for violation of the Arkansas Wage & Hour Act be dismissed where:

(i)   they are residents of a state other than Arkansas;

(ii)   they do not work within the State of Arkansas; and

(iii)   Arkansas statutory law cannot be applied extra-territorially outside the State of Arkansas?

## I.      STATEMENT OF FACTS

### A.      Introduction

Defendant P.A.M. Transport, Inc. ("PAM") brings the present Motion for Partial Dismissal under Fed. R. Civ. P. 12(c)[1] of Plaintiffs David Browne, Antonio Caldwell, and Lucretia Hall's claims for the reasons set out below.  Plaintiffs' allegations of violation of the minimum wage requirements in the Fair Labor Standards Act ("FLSA") and the Arkansas Minimum Wage Law fail to state a claim because they ignore, and are contrary to, Department of Labor and Department of Transportation regulations that specifically govern on-duty and off-duty time for commercial vehicle employees.  Moreover, Plaintiffs' claims under the Arkansas Minimum Wage Law must be dismissed to the extent Plaintiffs attempt to apply that state statute to employment outside of Arkansas.

### B.      Relevant Allegations and Undisputed Facts[2]

PAM truck drivers, other than those few who are paid on an hourly basis, are "paid [based on] a per-mileage rate for each mile driven." (Complaint, ¶74) (Doc. 7).  Drivers are required, both by PAM and by federal regulations, to account for and log all of their time in one of four categories:  (1) "Off-Duty;" (2) "Sleeper Berth;" (3) "On-Duty, Driving'" and (4) "On-Duty, Not Driving."  49 C.F.R. §395.8(b).  Every driver (including both "solo" and "team" drivers) must report his or her duty status, and each change of status, to PAM "via [PAM's] Qualcomm system to [PAM's] headquarters in Arkansas." (Complaint, ¶38).  That is how Plaintiffs "reported their hours worked" to PAM. (*Id.*)

---

[1] PAM filed its Answer to Plaintiffs' First Amended Complaint ("Complaint") on February 8, 2017 (Doc. 15).

[2] Because this Motion is for judgment on the pleadings, PAM relies only on the well-pleaded allegations in Plaintiffs' Complaint.

The gravamen of Plaintiffs' federal and state minimum wage claims is that "Plaintiffs were 'on duty' . . . continually for days and weeks on end" when driving their routes (Complaint, ¶¶57 and 78), that the maximum number of compensable worktime hours that PAM can deduct in each 24-hour period "for time spent in a sleeper berth is 8 hours per day," and the "remaining amount of time (16 hours per day) is work time and must be paid, less bona fide meal periods." (Complaint, ¶¶58 and 79).  Plaintiffs allege that PAM should have paid them the applicable minimum wage rate for 16 hours per day (Complaint, ¶¶61, 63-65, 86-89), but their pay regularly fell "below the federal and state minimum wage" (Complaint, ¶¶72 and 93) when they "did not drive enough miles to receive minimum wage by virtue of their mileage rate" (Complaint, ¶¶71 and 92).  They assert minimum wage act claims under both the FLSA and the Arkansas Minimum Wage Law.

For the reasons set out below, Plaintiffs cannot state a minimum wage act violation because as a matter of law, non-compensable time spent in a sleeper berth is not limited to 8 hours.  Under federal DOT regulations, all time logged in a sleeper berth is "off-duty" time and therefore presumed to be non-compensable in determining whether drivers are paid minimum wage.  Because Plaintiffs "sleeper berth" claim is based on the legally erroneous premise that only 8 hours in each 24-hour period can be deducted from compensable worktime, and the remaining 16 hours must be deemed "on-duty" and compensable, the claim must be dismissed.

Moreover, the Arkansas Minimum Wage Law does not apply outside the State of Arkansas.  Therefore, Plaintiffs Browne and Hall, who do not reside in Arkansas and are not alleged to work in Arkansas, cannot maintain a claim for violation of the Arkansas Wage and Hour Law.

## II.     ARGUMENT

### A.     Standard of Review

This Court explained the standard of review for motions under Fed. R. Civ. P. 12(c) in

*Holt v. Deer-Mt. Judea School Dist.*, 135 F. Supp.2d 898 (W.D. Ark. 2015):

> Since the pleadings of both parties had been made at the time of the filing of the Motion, the Court will treat it as a motion made under Fed. R. Civ. P. 12(c) for judgment on the pleadings. *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990). The distinction between a motion made under Fed. R. Civ. P. 12(b)(6) "is purely formal, because we review their 12(c) motion under the same standards that governs 12(b)(6) motions." *Id.*

135 F. Supp.2d at 901.  *Holt* further explained:

> To survive a motion to dismiss pursuant to Rule 12(b)(6), the complaint must present "a short and plain statement of the claim that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). . . . [T]he Court assumes all factual allegations in the pleadings are true and interprets them in the light most favorable to the non-moving party."   *Bolt v. Pfizer, Inc.*, 716 F.3d 1087, 1091 (8th Cir. 2013) . . . .

> Even so, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) . . .  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." (quoting *Bell Atl. Corp. v. Twombley*, 550 U.S. 544, 570 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

*Id.* at 901.

### B.     Plaintiffs' Fair Labor Standard Act and Arkansas State Law "Sleeper Berth" Claims Must Be Dismissed

Plaintiffs' allegation that under DOL regulations only 8 hours of "sleeper berth" time can be deducted in each 24-hour period from time PAM must pay drivers is wrong as a matter of law.  Under DOT regulations, all time logged as "sleeper berth" time is expressly exempted from "on-duty" time.  Plaintiffs' allegation that they are "on-duty" and must be paid the equivalent of

minimum wage for 16 hours in each 24-hour period they are on the road for "days and weeks on end" is implausible (indeed, is legally impossible) under DOT regulations that require drivers to be "off-duty" for 10 consecutive hours before driving, and that limits driving time to 11 hours within the 14-hour period following 10 consecutive "off-duty" hours.

### 1.  Department of Transportation Regulation of Commercial Drivers

Commercial vehicle operators are heavily regulated by the Department of Transportation, and those regulations specifically limit and define drivers' duty status.  Plaintiffs' Complaint completely ignores those DOT regulations, and applying them is fatal to their "sleeper berth" claims.

Under 49 U.S.C. §31135, "[e]ach employer and employee shall comply with regulations on commercial motor vehicle safety prescribed by the Secretary of Transportation under this subchapter [49 U.S.C. §§3113 *et seq.*] that apply to the employer's and employee's conduct."  49 U.S.C. §31136(c) provides that "the Secretary of Transportation shall prescribe regulations on commercial motor vehicle safety."

DOT regulations govern a commercial driver's "on-duty" and "off-duty" status.  In summary, in any 24-hour period, a driver must be "off-duty" for at least 10 consecutive hours before driving, and can drive no more than 11 hours in the remaining 14-hour period.  A driver thus can be "on-duty" no more than 14 hours in such period.  Moreover, DOT regulations specifically provide that *all* time in a sleeper berth is *not* "on-duty" time.  Those regulations are set out below.

49 C.F.R. §395.8 ("Driver's record of duty status") provides that a motor carrier "must require each driver used by the motor carrier to record the driver's duty status for each 24-hour

period," and a "driver operating a commercial motor vehicle must . . . [r]ecord the driver's duty status . . .." §395.8(a)(1) and (2) .

49 C.F.R. §395.8(b) provides:

> The duty status shall be recorded as follows:
> (1) "Off duty" or "OFF."
> (2) "Sleeper berth" or "SB" (only if a sleeper berth is used).
> (3) "Driving" or "D."
> (4) "On-duty not driving" or 'ON."

49 C.F.R. §395.9(e)(1) provides that "[n]o driver or motor carrier may make a false report in connection with duty status," and "[d]rivers shall keep their records of duty status current to the time shown for the last change of duty status." §395.8(f)(1) .

49 C.F.R. §395.3(a) sets a minimum number of hours drivers must be "off duty" in every 24-hour period.

> . . . [N]o motor carrier shall permit or require any driver used by it to drive a property-carrying commercial motor vehicle, nor shall any such driver drive a property-carrying commercial vehicle . . . unless the driver complies with the following requirements:
> (1)   *Start of work shift.*  A driver may not drive without first taking 10 consecutive hours off duty.
> (2)   *14-hour period.*  A driver may drive only during a period of 14 consecutive hours after coming on duty following 10 consecutive hours off duty.  The driver may not drive after the end of the 14-consecutive-hour period without first taking 10 consecutive hours off duty.
> (3)   *Driving time and rest breaks.*
>        (i)    *Driving time.*  A driver may drive a total of 11 hours during the 14-hour period specified in paragraph (a)(2) of this section.
>        (ii)   *Rest breaks. . . .* [D]riving is not permitted if more than 8 hours have passed since the end of the driver's last off-duty or sleeper-berth period of at least 30 minutes.

49 C.F.R. §395.1(g) applies to sleeper berth trucks and provides:

> . . . A driver who operates a property-carrying commercial motor vehicle equipped with a sleeper berth . . .

(A) Must, before driving, accumulate
    (1) At least 10 consecutive hours off duty;
    (2) At least 10 consecutive hours of sleeper-berth time;
    (3) A combination of consecutive sleeper-berth and off-duty time amounting to at least 10 hours; or
    (4) The equivalent of at least 10 consecutive hours off duty if the driver does not comply with [the three preceding] paragraph[s] of this section;

(B) May not drive for more than [11 hours in a 14-hour period] . . . after coming on duty following one of the 10-hour off-duty periods . . .; and

(C) May not drive more than [11 hours during a period of 14 consecutive hours after coming on duty] following one of the 10-hour off-duty periods specified in paragraphs (g)(1)(i)(A) through (4) of this section; and

(D) Must exclude from the calculation of the 14-hour period in §395.3(a)(2) any sleeper-berth period of at least 8 but less than 10 consecutive hours.

Lastly, 49 C.F.R. §395.2 specifically defines what is, and what is not, "on-duty time":

*On-duty time* means all time from the time a driver begins to work or is required to be in readiness to work until the time the driver is relieved from work and all responsibility for performing work. **On-duty time shall include:**

(1) All time at a plant, terminal, facility, or other property of a motor carrier or shipper, or on any public property, waiting to be dispatched, unless the driver has been relieved from duty by the motor carrier;

(2) All time inspecting, servicing, or conditioning any commercial motor vehicle at any time;

(3) All driving time as defined in the term *driving time*;

(4) **All time in or on a commercial motor vehicle, other than:**
    (i) Time spent resting in or on a parked vehicle . . .;
    (ii) **Time spent resting in a *sleeper berth*;** or
    (iii) Up to 2 hours riding in the passenger seat of a property-carrying vehicle moving on the highway immediately before or after a period of at least 8 consecutive hours in a sleeper berth.

(italics in original; bold added).

6

2.  **Plaintiffs' Federal and State Minimum Wage Claims Ignore DOL and DOT Regulations Specifically Applicable to Truck Drivers**

Department of Labor regulation 29 C.F.R. §785.22[3] provides in relevant part:

> Where an employee is required to be on duty for 24 hours or more, the employer and employee may agree to exclude bona fide meal periods and a bona fide regularly scheduled sleeping period of not more than 8 hours from hours worked, provided adequate sleeping facilities are furnished by the employer and the employee can usually enjoy an uninterrupted night's sleep.  If sleeping period is of more than 8 hours, only 8 hours will be credited.

Under 29 C.F.R. §785.33, the "principles which apply in determining whether or not time spent traveling is working time depend upon the kind of travel involved."

29 C.F.R. §785.41[4] applies specifically to the kind of travel the Plaintiff truck drivers engage in, and provides in relevant part:

> Any work which an employee is required to perform while traveling must, of course, be counted as hours worked.  *An employee who drives a truck* . . . or an employee who is required to ride therein as an assistant or helper, *is working* while riding, *except* during bona fide meal periods or *when he is permitted to sleep in adequate facilities furnished by the employer.*[5]  (emphasis added).

DOL Regulation 29 C.F.R. §785.41 specifically applies to employees who drive (or ride in) trucks, and the exclusion of worktime for time spent in a sleeper berth is not limited to 8 hours.

---

[3] Ark. Admin. Code 010.14.1-108(D)(3) is identical to 29 C.F.R. §785.22.
[4] Ark. Admin. Code 010.14.1-108(D)(7) is identical to 27 C.F.R. §785.41.
[5] As a matter of law, truck sleeper berths are "adequate facilities."  *See* U.S. Department of Labor Field Operations Handbook, Chapter 31 Hours Worked, Section 31b09(a) (Dec. 15, 2000) (sleeper berths "are regarded as adequate sleeping facilities for the purpose of . . . [section] 785.41[.]") (http://www.dol.gov./whd/FOH).

Plaintiffs' federal and state minimum wage claims are based solely and exclusively on §785.22 and its Arkansas equivalent, and ignores §785.41 and DOT regulations that specifically apply to truck drivers.  Plaintiffs' "sleeper berth" claim alleges:

> 57.    . . . Named Plaintiffs Browne and Hall and Team-Driver *Plaintiffs were "on duty"* (per United States Department of Labor ("DOL") Regulations and per Administrative Regulations of the Labor Standards Division of the Arkansas Department of Labor ("AR DOL")) *continually for days and weeks on end.*

> 58.    Per 29 C.F.R. §785.22 and AR DOL Rule No. 010.14-108(d)(3), the maximum amount of time an employer may dock an employee who is on duty for more than 24 hours for time spent in a sleeper berth is 8 hours per day. *The remaining amount of time (16 hours per day) is work time* and must be paid, less bona fide meal periods.

> 59.    While driving over-the-road as Team-Drivers for Defendant PAM, Named Plaintiffs Browne and Hall and Team-Driver Plaintiffs regularly worked more than 16 hours per day because they were required to, among other things[,] . . . remain inside the truck when stopped to log time in the sleeper berth . . . .

(Complaint, ¶¶57-59) (emphasis added).  Plaintiffs allege that under 29 C.F.R. §285.22 and AR DOL Rule No. 010.14-108(d)(3), they were required to be paid minimum wage for 16 hours per day "for each day spent over-the-road, minus bona fide meal periods." (Complaint, ¶¶61, 63-65, 78-79, 85-89).

Courts that have considered the issue have uniformly held that in construing general DOL regulations (29 C.F.R. §785.22) together with DOL and DOT regulations specific to truck drivers (29 C.F.R. §785.41 and 49 C.F.R. §395.3), *all* time logged in a sleeper berth is "off-duty" and non-compensable under the FLSA.  Plaintiffs' allegation that a maximum of 8 hours of "sleeper berth" time can be deducted from compensable time, and that the remaining 16 hours in every 24-hour period must be deemed compensable, is therefore wrong as a matter of law.

a. **Based on DOL Regulations Alone, Non-Compensable Sleeper Berth Time Is Not Limited to 8 Hours.**

One and one-half months after Plaintiffs filed their First Amended Complaint in this action, *Petrone v. Werner Enterprises, Inc.*, 2017 WL 510884 (D. Neb., Feb. 2, 2017), held:

> The language in the FLSA regulatory scheme is unambiguous with respect to compensation for sleeper-berth time. While time spent sleeping in excess of 8 hours in a 24-hour cycle may be compensable under §785.22(a), time truck drivers . . . spend in truck sleeper berths is presumed to be non-compensable. This conclusion is supported by the plain language of the regulations, the DOT regulations regarding on-duty and mandatory rest periods, and case law addressing the regulations.

*Id.* at *10.

As in the present case, in *Petrone* the plaintiffs' FLSA and state minimum wage claims were based on the defendant trucking company's "practice of failing to compensate for sleeping periods in excess of eight hours." *Id.* at *3.[6] As in the present case, in *Petrone* the defendant's "computer system totaled the time drivers logged on Lines 3 and 4 to determine payment of minimum wage," but "did not consider time logged in "Line 1 off-duty" or "Line 2 sleeper berth" in determining whether a particular driver "earned minimum wage." *Id.* at *3. Plaintiffs in this case similarly understand that PAM uses time logged in Lines 3 and 4 to calculate the number of hours in a workweek to determine whether drivers have earned minimum wage. (Complaint, ¶60 and 62, 90-91).[7]

*Petrone* first held that based on DOL regulations alone, including regulations specific to truck drivers, non-compensable sleeper-berth time is *not* limited to 8 hours in a 24-hour cycle:

---

[6] Plaintiffs' counsel in the present action was also counsel for the plaintiffs in *Petrone*.

[7] Paragraphs 60, 62, and 90-91 all allege the following: "the time [Plaintiffs] logged each workweek on lines "3" and "4" of the Qualcomm system (corresponding to "On-Duty Driving" and "On-Duty, Not Driving" . . . [as defined by DOT regulations] when multiplied by [the FLSA or Arkansas minimum wage rate] exceeded the wages paid to them based on the per-mileage rate."

> Under the plain language of the regulation, §785.22 applies to
> employees who are continuously on duty for 24 hours or more,
> even while sleeping.   However, under the plain language of
> §785.41, drivers and assistants are off duty when permitted to sleep
> in adequate facilities, such as a sleeper berth . . . . [T]he Court
> concludes that the statutory scheme is unambiguous.   . . .
> §785.33 . . . clarifies the purpose of §785.41 in the regulatory
> scheme.   §785.33 specifies that §785.41 addresses the issue of
> when a truck driver is on duty.   Any interpretation of §785.41 that
> categorically limits non-compensable sleeper-berth time to 8 hours
> in a 24-hour cycle renders the language in §785.41 superfluous.
> Under the plain language of the regulations, time in the sleeping
> berth   is   presumably   non-compensable   under   §785.41.
> Accordingly, sleeping berth time is compensable, if ever, only
> where a plaintiff can demonstrate that he or she was on duty while
> in the sleeper berth.

*Id.* at *7.[8]

*Nance v. May Trucking Co.*, 2014 WL 199136 (D. Oregon, Jan. 15, 2014), is "the only

other court to address the interplay between §785.41 and §785.22," and "concluded that sleeper-

berth time is *not* compensable under the FLSA." *Petrone, supra,* at *9 (emphasis in original).

*Nance* addressed "the legal question of whether time spent in the sleeper berth is compensable

because the truck is moving." *Id.* at *6.   In moving to dismiss, the defendant trucking company

relied on 29 C.F.R. §785.41, which provides that a driver or assistant "is not working if the

employee is permitted to sleep in adequate facilities provided by the employer." *Id.* at *7.   The

court held that "[a]s a matter of law, . . . time spent in the sleeper berth . . . is not compensable"

simply "because the truck is moving." *Id.*

On appeal, the United States Court of Appeals for the Ninth Circuit affirmed that

analysis.   685 Fed. Appx. 602 (9th Cir., March 29, 2017) (unpub).   The Court of Appeals

---

[8] Plaintiffs' Complaint makes absolutely no allegation that they were "on-duty" during the time
they reported as line "2" time (sleeper berth) on the Qualcomm system.   Moreover, as set out
*infra*, under DOT regulations *all* time logged as "sleeper berth" is, by definition, not "on-duty"
time.

explained that "we affirm because the district court properly relied on the persuasive authority of federal and state regulations saying drivers are not entitled to compensation for time they are permitted to sleep in the berths of moving trucks. *See . . .* 29 C.F.R. §785.41 (providing that . . . a truck driver 'or an employee who is required to ride therein as an assistant or helper' is 'working' while he rides along in the truck, but not 'when he is permitted to sleep in adequate facilities furnished by the employer')." *Id.*

**b.    DOT Regulations Also Compel Holding That Non-Compensable Sleeper Berth Time Is Not Limited to 8 Hours.**

*Petrone* also held that DOT regulations compel the conclusion that all sleeper berth time is presumed to be off duty time, and therefore not compensable under the FLSA. *Id.* at *8. DOL regulation §785.22 applies to employees who are on call continuously, including while sleeping, such as firefighters or on-call telephone operators. *Id.* In contrast to those kinds of employees, "under DOT regulations, a truck driver *cannot* be on duty for more than 14 hours in any 24-hour period and therefore cannot be on duty or on call while fulfilling off-duty requirements. 49 C.F.R. §395.3(a)(2)." *Id.* (emphasis in original).

*Petrone* explained how DOT regulations inter-relate with the FLSA and DOL regulations under the FLSA:

> The DOT regulations define "on-duty time" as "all time from the time a driver begins to work or is required to be in readiness to work until the time the driver is relieved from work and all responsibility for performing work." 49 C.F.R. §395.2. The definition specifically states that all time on a commercial motor vehicle is "on-duty" time "other than . . . [t]ime spent resting in a sleeper berth." *Id.* DOT regulations further require a truck driver to log time in the sleeper berth only when he or is "is not on duty, is not required to be in readiness to work, [and] is not under any responsibility for performing work." 49 C.F.R. §395.8(h)(1)-(2). The regulations instruct drivers "to record the period(s) of time off duty resting in a sleeper berth" as defined in §395.8(h)(2).

11

*Id*. at *8.

*Petrone* thus reasoned that DOL and DOT regulations, construed together and harmoniously, mean that sleeper berth time of any duration is presumed to be non-compensable:

> The language of the DOT regulations with respect to sleeper berth time clarifies the meaning of §785.41. Section 785.41 states that a truck driver or assistant is not working for purposes of the FLSA when resting in adequate sleeping facilities. This unambiguous language coincides with DOT requirements that drivers have adequate off-duty rest periods in the sleeper berth. *See* 49 C.F.R. §395.2, §395.3(a)(3). Accordingly, sleeper berth time is presumed to be non-compensable under the FLSA.

*Id*. At *8-9.

As a matter of law, all time a truck driver logs as "sleeper berth" time is non-compensable because it is not "on-duty" time, and that amount is not capped at 8 hours by the limit set by 29 C.F.R. §785.22. Specific DOL and DOT regulations apply to truck drivers, and those regulations when read together unambiguously mean that all sleeper berth time is not compensable.

### 3. The DOT Regulations Must Be Construed Together With the FLSA's 29 C.F.R. §785.22 Regulations

The reasoning of the above-referenced courts in construing DOL and DOT regulations harmoniously is proper and, in fact, compelled by controlling law. In alleging that they are entitled to 16 hours of compensable worktime in every 24-hour period Plaintiffs' Complaint simply ignores DOT regulations, and DOL regulations specifically applicable to truck drivers.

Under the *in pari materia* canon of statutory construction, statutes "addressing the same subject matter generally should be read 'as if they were one law'." *Wachovia Bank v. Schmidt*, 546 U.S. 303, 315-16 (2006) (quoting *Erlenbaugh v. United States*, 409 U.S. 239, 243 (1972)). *See also Loos v. BNSF Railway Co.*, 865 F.3d 1106, 1119 (8th Cir. 2017) (same); *JPMorgan*

*Chase Bank, N.A. v. Johnson*, 715 F3d 1010, 1015 (8th Cir. 2013) ("[s]tatutes relating to the same subject are said to be *in pari materia* and should be read in a harmonious manner, if possible"); *Reeder-Simco GMC, Inc. v. Volvo GM Heavy Truck Corp.*, 374 F.3d 701, 716 (8th Cir. 2004) (where "both statutory schemes relate to the [same] subject matter . . . we must read them in a harmonious manner if possible").

### a.     Regulations Must Be Applied *In Pari Materia*

The Eight Circuit has expressly held that "regulations, the same as statutes, must be read *in pari materia.*" *Keinath v. Comm'nr*, 480 F.2d 57, 65 (8th Cir. 1973). *See also United States v. Rutherford*, 437 F.2d 182, 185 (8th Cir. 1971) ("regulations are to be read *in pari materia*").

The *in pari materia* canon is based on the assumption "that whenever Congress passes a new statute, it acts aware of all previous statutes on the same subject." *United States v. Fillmore*, 162 F.3d 1055, 1057 (10th Cir. 1998) (quoting *Erlenbaugh v. United States*, 409 U.S. 239, 244, 34 L.Ed.2d 446, 93 S.Ct. 477 (1992)).

### b.     Regulations Created By Different Government Agencies Must Be Applied *In Pari Materia*

*Ibarra v. Texas Employment Comm'n*, 598 F. Supp. 104 (E.D. Tex. 1984), involved different statutes (26 U.S.C. §3304(a)(14), 42 U.S.C. §1382c(a)(1)(b)(ii), and 42 U.S.C. §602(a)(333)) that were administered by different regulatory agencies (the Department of Labor and the Department of Health and Human Services). In *Ibarra* the "statute in question [was] 26 U.S.C. §3304(a)(14), which allows aliens to receive unemployment benefits if they are 'permanently residing in the United States under color of law'." *Id.* at 106. The Department of Labor was the agency charged with passing regulations under 26 U.S.C. §3304(a)(14), and it issued inconsistent interpretations of that phrase. However, two different statutes under the

13

Social Security Act (42 U.S.C. §§602(a)(33) and 1382c(a)(1)(B)(ii)) used the same phrase, and

the Department of Health and Human Services issued regulations defining the phrase.

The court in *Ibarra* observed the propriety of applying the *in pari materia* doctrine by

looking to the Department of Health and Human Services' regulatory definition to construe the

phrase "presumably residing in the United States under color of law," a phrase for which the

Department of Labor failed to provide a consistent definition. *Ibarra* explained:

> The central issue in this case is the proper meaning of [26 U.S.C.]
> §3304(a)(14), and whether defendant's policies violated this
> statute. . . . Plaintiff has pointed out seeming inconsistencies in
> the United States Department of Labor's interpretation of
> §3304(a)(14), and has referred the court to two other statutes under
> the Social Security Act which employ the same language:   42
> U.S.C. §1382c(a)(1)(B)(ii) (Supplemental Security Income), and
> 42 U.S.C. §602(a)(33) (Aid to Families With Dependent Children).
> Since these statutes have an identical purpose and subject matter –
> restricting the eligibility of aliens for benefits under the Social
> Security Act – it seems they should be construed *in pari materia . .
> .. Of particular interest is the agency interpretation of . . . 42
> U.S.C. §1382c(a)(1)(B)(ii), which is contained in regulations
> promulgated by the Department of Health and Human Services,
> 20 C.F.R. §416.1618.  This working definition of "permanent
> resident under color of law" recommends itself as practicable,
> and its application to the identical language here would seem to
> promote consistency in the administration of Social Security Act
> programs.*

*Id.* at 108-109 (emphasis added).

In exactly the same way, in the present case the relevant provisions of Title 49 and Title

29, and the regulations under them, both have the same purpose and subject-matter.  Just as the

court in *Ibarra* looked to the Department of Health and Human Services' regulatory definition in

light of the Department of Labor's failure to define the same phrase, this Court must look to the

relationship between the DOT's definition of "on-duty" (which excludes all sleeper berth time)

and the DOL's general regulations in §785.22.

14

In *Van Orman v. The America Insur. Co.*, 680 F.2d 301 (3rd Cir. 1982), the Third Circuit affirmed the district court's decision which construed a regulation of the Treasury Department *in pari materia* with a provision of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §1344(d)(2) which is subject to regulation by the Department of Labor. *Van Orman* held:

> Defendants relied on 26 C.F.R. §1.401-2(b)(1) (1981), a treasury regulation[9] that permits an employer to recapture any surplus "due to erroneous actuarial computation during the previous life of the trust." The district court held that this regulation must be read *in pari materia* with section 4044(d)(2) [29 U.S.C. §1344(d)(2)] of ERISA, which permits the employer to recapture only that portion of the surplus attributable to his contributions . . . .
>    We agree that the regulation permitting employers to recapture surplus caused by erroneous actuarial computation must be limited by the provisions of section 4044(d) [29 U.S.C. §1344(d)].

*Id.* at 307.

Just as a Treasury Department regulation was construed *in pari materia* with a provision under ERISA (which is regulated by the Department of Labor), the DOL regulation (29 C.F.R. §785.22) must be construed *in pari materia* with Title 49 and regulations issued under it by the DOT.

## C.    Plaintiffs Browne and Hall's Arkansas State Law Claims Must Be Dismissed

Plaintiffs Browne and Hall both reside at 2729 Aspen Wood Avenue, City of Henderson, in the State of Nevada. (Complaint, ¶¶7 and 9). Although Plaintiffs allege that their employment applications, pay, and hours worked were processed at PAM's headquarters in Arkansas (Complaint, ¶38), Plaintiffs Browne and Hall fail to allege that they drove or performed any work within the State of Arkansas during the course of their employment with

---

[9] 26 C.F.R. §1.401-2(b)(1) is a Treasury Department regulation issued under the Internal Revenue Code, 26 U.S.C. §411.

PAM from 2005 to December 2015 and, if so, how much.  (Complaint, ¶¶40 and 42).  They cannot state a claim for violation of Arkansas statutory law because Arkansas law cannot be applied extraterritorially.

### 1. Arkansas Wage Statutes are Presumed Not to Apply Extraterritorially.

This Court recognized in *Arkansas Valley Elec. Cooperative Corp. v. Southwestern Bell Telephone Co.*, 2017 WL 3314008 (W.D. Ark., April 17, 2017), that where "a substantive provision of" Arkansas law is at issue, it "should not apply extraterritorially." *Id.* at *10 (citing *Widmer v. Wood*, 243 Ark. 457, 459 (1967) ("[o]rdinarily statutes have no effect except within the state's own territorial limits")).   Under Arkansas law, statutes generally have no extraterritorial effect.  *See, e.g., Hetman v. Schwade*, 317 S.W.3d 559, 564 (2009) (it is a "general rule that statutes have no effect except within the state's own territorial limits"); *Chalmers v. Toyota Motor Sales, USA, Inc.*, 326 Ark. 895, 907 (1996).

*Meekins v. Meekins*, 169 Ark. 265 (1925), noted the "general rule is that the statutes of one state have no force except within the territorial limits and jurisdiction of that state" and "can only operate upon those living in this state" when "the statute does not by its terms purport to have any extraterritorial effect."   *Id.* at 266.   An Arkansas statute will only be given extraterritorial effect if the intent to do so is clear and unmistakable. *Leonard & Yeagin v. State*, 95 Ark. 381 (1911), held:

> An intent to give extraterritorial effect to a statute will not be ascribed to the lawmakers unless the language employed affords no escape from such construction.

*Id.* at 382.   Thus, under Arkansas law, if a statute does not specifically and unambiguously provide that it has extraterritorial affect, it does not apply to persons outside Arkansas.

Nothing in the Arkansas Minimum Wage Law, A.C.A. §§11-4-201 *et seq.* gives the slightest hint that it was intended to apply beyond the State of Arkansas to employees who do not reside or work in Arkansas. Therefore, it is presumed to *not* apply to employees working outside Arkansas.

Although there appear to be no Arkansas state or federal cases addressing the issue, courts across the country have held that state minimum wage statutes do not apply extraterritorially to employees outside the state absent a clear intent manifest in the statute.

In *Glass v. Kemper Corp.*, 133 F.3d 999 (7th Cir. 1998), the plaintiff, who neither lived nor worked in Illinois, sued his Illinois-based employer under the Illinois Wage Payment and Collection Act. Affirming dismissal of that claim, the Seventh Circuit held:

> The plaintiff is not, and at no time relevant to this suit was he, a resident of Illinois. Nor did he perform any work in Illinois . . . . Although the employer defendants have their principal place of business in Illinois, and are therefore "employers . . . in this State," we do not think the statute has an extraterritorial reach. Its evident purpose is to protect employees *in Illinois* from being stiffed by their employers . . ..

*Id.* at 1000 (emphasis in original.

In *Risinger v. SOC LLC*, 936 F. Supp.1235 (D. Nevada 2013), the plaintiff sued under the Nevada Wage and Hour Law. The defendant moved to dismiss "because Risinger's employment occurred outside of Nevada . . . " *Id.* at 1247. The plaintiff was a California resident, and the defendant had "its principal place of business in Nevada . . .." *Id.* Applying the "general presumption against the extraterritoriality of a state's statute," *id.* at 1250, the court dismissed the claim. It noted that the fact that the defendant operated "principally in Nevada does not make the alleged misconduct arise out of Nevada," and alleging "that the parties executed the employment agreement in Nevada, and conducted some training in [Nevada]" did not "morph the bulk of [the plaintiff's] employment" outside of Nevada "into work arising out of Nevada." *Id.* at 1248.

In *Abdulina v. Eberl's Temp. Serv., Inc.*, 79 F. Supp.2d 1201 (D. Colo. 2015), the plaintiff sued under the Colorado Wage Claim Act. She resided in Indiana, worked in Maryland and Missouri, and did "not allege that she worked . . . in Colorado." *Id.* at 1205. Dismissing the claim under Fed. R. Civ. P. 12(b)(6), the court held "[b]ecause Plaintiff did not work in and is not a resident of Colorado, Plaintiff has no standing to assert a claim under the [Colorado] Wage Claim Act," *id.* at 1206, citing cases holding that state statutes do "not have extraterritorial application."

*Handmaker v. Certus Bank, N.A.*, 2015 WL 13635662 (W. D. Ky., July 17, 2015), addressed "whether Plaintiffs, who both worked exclusively outside South Carolina, can sue Certus Bank, which is headquartered in South Carolina, under the South Carolina Payment of Wages Act." *Id.* at *6. Like Arkansas, South Carolina law provided that "no law has any effect, if its own force, beyond the territorial limits of the sovereignty . . ." *Id.* (citation omitted). The presumption against extraterritorial application "may be rebutted 'only where a contrary intent is "clearly expressed or reasonably to be inferred from the language of the act "'," and like the Arkansas wage act, the "South Carolina Payment of Wages Act says nothing of extraterritorial application." *Id.* In dismissing the state claim, *Handmaker* held that "the South Carolina legislature's silence is insufficient to overcome the presumption against extraterritorial application," and therefore "the South Carolina Payment of Wages Act does not apply to those who are employed entirely outside the state." *Id.* at *6-7.

In *Vidrio v. United Airlines, Inc.*, 2017 WL 1034200 (C.D. Calif, March 15, 2017), the plaintiff flight attendant resided in California and sued under California's wage statute. The defendant operated out of California. However, the plaintiffs and class members spent "only a small percentage of their time working within California's borders." *Id.* at *1. The defendant

argued that "California wage and hour laws only govern[ ] work that is performed exclusively or principally in California, and therefore, applying [California law] would violate the presumption against extraterritorial application of California law." *Id.* at *2.  Like Arkansas, in California "[s]tate statutes are presumed not to have extraterritorial effect." *Id.* at *3.  Like Arkansas's wage statute, "[t]here is no 'clear expression' of extraterritorial application for California wage and hour laws." *Id.*  *Vidrio* held that the plaintiffs could not allege violation of California wage statutes because their work was performed outside California.  *See also Huang v. Fluidmesh Network, LLC,* 2017 WL 3034672 (N.D. Ill., July 18, 2017) at *4-5 (dismissing claim under Illinois Wage Act "because the statute does not apply extraterritorially," the plaintiff "has not alleged (and cannot allege) that any of the events supporting his claim occurred in Illinois," and rejecting argument that the Act "applies to all Illinois employers regardless of the location of" the employee).

Under Arkansas law, the state statute cannot be applied extraterritorially.

### 2. Applying the Arkansas Minimum Wage Law to Plaintiffs Browne and Hall Would Violate the Dormant Commerce Clause.

A perhaps more compelling reason for not applying the Arkansas Minimum Wage Law to employees outside Arkansas is that doing so would violate the dormant Commerce Clause of the United States Constitution.

The Commerce Clause gives Congress the power to "regulate Commerce with foreign Nations, and among the several States . . . ."  U.S. Const. art. I §8, cl. 3.  The Commerce Clause does not just *give* power to the federal government, but "it is also a substantive 'restriction on permissible state regulation' of interstate commerce."  *Dennis v. Higgins,* 498 U.S. 439, 447, 111 S.Ct. 865, 112 L.Ed.2d 969 (1991) (citation omitted).  That substantive restriction is known as the "dormant" Commerce Clause.  *Id.*

Applying the Arkansas Minimum Wage Law to Browne and Hall's employment outside Arkansas would impermissibly burden interstate commerce. PAM employs thousands of people in many states in interstate commerce. Plaintiffs assume that any Arkansas-based employer that operates in other states must comply with the Arkansas Minimum Wage Law even for employees who never work (or even reside) in Arkansas. Under that analysis, employees who work solely in one state (e.g., Wyoming with a minimum wage of $5.15/hour) would be able to sue their employers that are based in another state (e.g., Washington with a minimum wage of $9.05/hour), making the Washington minimum wage applicable across the nation. Doing so would violate the dormant Commerce Clause.

In *Mitchell v. Abercrombie & Fitch*, 2005 WL 1159412 (S. D. Ohio, May 17, 2005), the plaintiffs class representative worked for Abercrombie in Pennsylvania, and did "not allege that he performed any work for Abercrombie in the State of Ohio." *Id.* at *1. He sued under the FLSA and the Ohio Minimum Fair Wage Standards Act. The defendant moved to dismiss the state claim "on the grounds that Plaintiff . . . never worked within the State of Ohio and that he is attempting to extend Ohio law beyond the state's borders to regulate employment relationships that exist entirely within other states," and that applying the Ohio statute to the plaintiff's "claim would violate the Commerce Clause of the United States Constitution." *Id.* at *2. The plaintiff argued that "Abercrombie, as an Ohio corporation, should be governed by Ohio law and subject to the state's labor laws, including the Minimum Fair Wage Standards Act." *Id.*

Granting the defendant's motion to dismiss for failure to state claim under Fed. R. Civ. P. 12(b)(6), the court held:

> Application of the Ohio Minimum Fair Wage Standards Act to Oros's employment in Pennsylvania would impermissibly burden interstate commerce. Abercrombie employs thousands of people in many states and is engaged in interstate commerce. Under

> Plaintiff's theory, any Ohio-based employer that operates in more than one state would be required to comply with the Ohio Minimum Fair Wage Standards Act with respect to all of its employees, even those who are not working in this state. Furthermore, using Plaintiff's analysis, an Ohio resident working in Ohio for a California-based company could file a claim in California for overtime or minimum wage violations under California's laws which provide for a higher minimum wage than both Ohio and the nation. Thus, extending Plaintiff's analysis to its logical conclusion, California's higher minimum wage would apply across the country, despite differing wage laws throughout the other states. Such an extension of another states' law creates the type of burden on interstate commerce that the Commerce Clause prohibits.

*Id.* at *4.

In *Cotter v. Lyft, Inc.*, 60 F. Supp.3d 1059 (N.D. Calif. 2014), the plaintiffs brought class "claims under California's wage and hour laws on behalf of people who drove for Lyft in other states." *Id.* at 1060. The plaintiffs alleged "that Lyft's principal place of business is in California, that its decision to classify drivers as independent contractors was made in California, and that its decision to implement the 'administrative fee' that the plaintiffs challenge was made in California." *Id.*

The court held that the "California wage and hour laws . . . do not apply to employees who work exclusively in another state," and "regardless of the connection between Lyft and California, Lyft drivers who worked in other states cannot bring claims under California's wage and hour statutes." *Id.* at 1061.

*Cotter* explained that applying California wage laws to employees outside California "would raise serious constitutional concerns" under the dormant Commerce Clause:

> "The Commerce Clause . . . precludes the application of a state statute to commerce that takes place wholly outside of the State's borders, whether or not the commerce has effects within the State." *Edgar v. MITE Corp.*, 457 U.S. 624, 102 S.Ct. 2629, 73 L.Ed.2d 269 (1982). . . . The compensation of nonresidents who work

exclusively outside the state would seem to constitute "commerce
that takes place wholly outside of [California's] borders."

*Id.* at 1063.  Thus, although *Cotter* had already concluded the California's wage and hour laws

did not apply extraterritorially, "these constitutional concerns cement that conclusion."  *Id.*

For exactly the same reasons, applying the Arkansas Minimum Wage Law to employees

outside Arkansas (including Named Plaintiffs Browne and Hall) would violate the dormant

Commerce Clause.  Their Arkansas state statutory claims must therefore be dismissed.

## III.  CONCLUSION

For the foregoing reasons, Defendant PAM requests the Court to grant PAM's Motion for

Partial Dismissal under Fed. R. Civ. P. 12(c).

Respectfully Submitted,

CONNER & WINTERS, LLP

s/Robert L. Jones, III
Robert L. Jones, III, AR #69041
Kerri E. Kobbeman, AR #2008149
Amber J. Prince, AR #2007247
4375 N. Vantage Drive, Suite 405
Fayetteville, AR  72703
(479) 582-5711
(479) 587-1426 (fax)
bjones@cwlaw.com
mburney@cwlaw.com
kkobbeman@cwlaw.com
aprince@cwlaw.com


DICKINSON WRIGHT PLLC

/s/ M. Reid Estes, Jr.
M. Reid Estes, Jr., BPR #9043
Peter F. Klett, BPR #12688
Martin D. Holmes, BPR #12122
424 Church Street, Suite 800
Nashville, TN  37219
(615) 620-1737

(844) 670-6009 (fax)
restes@dickinsonwright.com
pklett@dickinsonwright.com
mdholmes@dickinsonwright.com

/s/ K. Scott Hamilton
500 Woodward Avenue
Suite 4000
Detroit, MI  48226-3425
(313)-223-3500
khamilton@dickinsonwright.com

*Attorneys for the Defendant P.A.M. Transport, Inc.*

Dated:  May 24, 2018.

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing pleading was electronically filed with the Clerk of the Court using the CM/ECF System on May 24, 2018, which will serve notice of same on the following:

Justin L. Swidler, Esq.
Richard S. Swartz, Esq.
Joshua S. Boyette, Esq.
Travis Martindale_Jarvis, Esq.
Swartz Swidler, LLC
1101 Kings Hwy. N., Suite 402
Cherry Hill, NJ 08034

/s/ K. Scott Hamilton
K. Scott Hamilton

DETROIT 27403-20 1454288v1

23