**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF ARKANSAS**

| | | |
|---|---|---|
| DAVID BROWNE, ANTONIO CALDWELL, and LUCRETIA HALL, on behalf of themselves and all those similarly situated, | ) ) ) ) | Case No. 5:16-cv-05366, TLB |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| P.A.M. TRANSPORT, INC., | ) | |
| 297 West Henri de Tonti Blvd. | ) | |
| Tontitown, AR  72770 | ) | |
| | ) | |
| And | ) | |
| | ) | |
| JOHN DOES, 1-10 | ) | |
| c/o P.A.M. TRANSPORT, INC. | ) | |
| 297 West Henri de Tonti Blvd. | ) | |
| Tontitown, AR  72770 | ) | |
| | ) | |
| Defendants. | ) | |

---

**BRIEF IN SUPPORT OF DEFENDANTS'**
**MOTION FOR JUDGMENT ON THE PLEADINGS**
**PURSUANT TO FED. R. CIV. P. 12(c) TO DISMISS THE CLAIMS OF NAMED**
**PLAINTIFF ANTONIO CALDWELL AND 54 OPT-IN PLAINTIFFS**

---

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ....................................................................................................II

I.      STATEMENT OF FACTS .....................................................................................1

        A.      Introduction..................................................................................................1

        B.      Relevant and Undisputed Facts....................................................................1

                1.      The Present Action............................................................................1

                2.      Bankruptcy Debtors' Filing and Disclosure Obligations.........................2

                3.      Caldwell's Bankruptcy Proceeding.........................................................2

                4.      Fifty Four Additional Opt-In Plaintiffs Have Concealed the Present
                        Action from Their Respective Bankruptcy Proceedings .........................3

II.     ARGUMENT ..........................................................................................................4

        A.      Standard of Review......................................................................................4

        B.      Law Regarding Judicial Estoppel ......................................................................6

        C.      Application of the *New Hampshire* Factors...........................................................7

                1.      Factor I ................................................................................................7

                2.      Factor 2 ..............................................................................................9

                3.      Factor 3 ..............................................................................................12

        D.      The Barred Opt-In Plaintiffs Are Judicially Estopped From Maintaining
                Their Claims In This Action ...........................................................................14

III.    CONCLUSION......................................................................................................15

# TABLE OF AUTHORITIES

**Cases**

*Ashley Cty., Ark. v. Pfizer, Inc.*, 552 F.3d 659 (8th Cir. 2009) ........................................................ 4

*Bazzelle v. Compasspointe Healthcare System*, 2016 WL 6832643 (W.D. Ark., Nov. 18, 2016) ................................................................................................................ 4, 5, 8, 13

*Clay v. University Cancer Specialist*, 2010 WL 11520007 (E.D. Tenn., Jan. 25, 2010 at *4 .................................................................................................................... 10

*Davis v. Wakelee*, 156 U.S. 680, 15 S.Ct. 555, 39 L.Ed. 578 (1895) ........................................... 6

*E.E.O.C. v. CRST Van Expedited, Inc.*, 679 F.3d 657 (8th Cir. 2012) ........................................ 8

*Funk v. Labor Ready, Inc.*, 2008 WL 4368946 (E.D. Ark., Sept. 24, 2008) at *2 ....................... 9

*In re Superior Crewboats, Inc.*, 374 F.3d 330 (5th Cir. 2004) ..................................................... 7

*Jones v. Bob Evans Farms, Inc.*, 811 F.3d 1030 (8th Cir. 2016)........................................... passim

*Monterey Development Corp. v. Lawyer's Title Ins. Corp.*, 4 F.3d 605 (8th Cir. 1993)............... 6

*New Hampshire v. Maine*, 532 U.S. 742, 121 S.Ct. 1808, 149 L.Ed.2d (2001) .................... passim

*Nixon v. Warner Commo'ns, Inc.*, 435 U.S. 589 (1978)................................................................ 5

*Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999)..................................... 5

*Reynolds v. Comm'r*, 861 F.2d 469 (6th Cir. 1988)....................................................................... 9

*Small v. Arkansas Fair Housing Comm'n*, 2007 WL 433565 (E.D. Ark., Feb. 6, 2007) at *2 .................................................................................................................... 9

*Stahl v. U.S. Dep't of Agric.*, 327 F.3d 697 (8th Cir. 2003) ......................................................... 5

*Stallings v. Hussmann Corp.*, 447 F.3d 1041 (8th Cir. 2006)....................................... 5, 7, 12, 13

*Stutzka v. McCarville*, 420 F.3d 757 n.2 (8th Cir. 2005).............................................................. 5

*United States ex rel. Gebert v.Transp.Admin. Servs.*, 260 F.3d 909 (8th Cir. 2001)..................... 7

*Van Horn v. Martin*, 812 F.3d 1180 (8th Cir. 2016)................................................................ 8, 13

**Rules**

Fed. R. Civ. P. 12(b)(6).................................................................................................................. 4

Fed. R. Civ. P. 12(c) ................................................................................................... 4

Fed. R. Evid. 1006 ...................................................................................................... 4

**Statutes**

*11 U.S.C. § 341(a)* ................................................................................................... 10

11 U.S.C. §521(1) ....................................................................................................... 6

29 U.S.C. §216(b) ....................................................................................................... 1

**Other Authorities**

W. Drake, P. Bonapfel, and A. Goodman, CHAPTER 13 PRACTICE AND PROCEDURE (July 2017 Update) §16:7 ..................................................................................... 10

# I. STATEMENT OF FACTS

## A. Introduction

Defendant P.A.M. Transport, Inc. ("PAM") moves for judgment on the pleadings against Plaintiff Antonio Caldwell on the ground that he failed to disclose the claims he asserts in this action as a potential asset in his pre-existing bankruptcy proceeding, and is therefore judicially estopped from maintaining those claims in this action. PAM is also entitled to judgment on the pleadings against all opt-in plaintiffs who have similarly failed to disclose the claims in this action in their respective bankruptcy proceedings.

## B. Relevant and Undisputed Facts

### 1. The Present Action

Named Plaintiffs David Browne, Antonio Caldwell and Lucretia Hall commenced this action on December 9, 2016. They filed a First Amended Complaint ("Complaint") on December 19, 2016 (Doc. 7) alleging various violations of the Fair Labor Standards Act ("FLSA") and the Arkansas Minimum Wage Law. The Named Plaintiffs asserted their FLSA claims on behalf of themselves and "similarly situated" individuals under the FLSA's collective action provision, 29 U.S.C. §216(b).

On May 8, 2017 the Court conditionally certified the FLSA claim as a collective action authorizing the Named Plaintiffs to pursue FLSA claims "on behalf of all over-the-road truck drivers who were employed by PAM for any portion of the time period from May 5, 2014 through May 5, 2017 ("the Recovery Period")." (Doc. 19). Notice was mailed to all potential collective group members on or about July 3, 2017 advising them of the FLSA claims and their right to opt into the action as party plaintiffs. Currently, 2,772 individuals have opted in by submitting consent forms.

### 2. Bankruptcy Debtors' Filing and Disclosure Obligations

From December 1, 2007 through December 1, 2015, Schedule B required bankruptcy debtors to disclose, and to estimate the value of, "[o]ther contingent and unliquidated claims *of every nature*, including tax refunds, counterclaims of the debtor, and rights to setoff claims." (Exhibit 1) (Category 21) (emphasis added). Legal claims are among the types of claims that a bankruptcy debtor is required to identify in Schedule B.

From December 1, 2015 to present, Schedule A/B requires debtors to list and describe all of their real and personal property. (Exhibit 2). Category 33 of Schedule A/B requires debtors to disclose "claims against third parties, whether or not you have filed a lawsuit or made a demand for payment." (Exhibit 2). Category 34 requires debtors to disclose "other contingent and unliquidated claims of every nature, including counterclaims of the debtor and rights to set off claims." (Exhibit 2). Category 53 is a catch-all that requires debtors to disclose "all property you own or have an interest in that you did not list above." (Exhibit 2).

The Statement of Financial Affairs requires bankruptcy debtors to "[l]ist all suits and administrative proceedings to which the debtor is or was a party within one year immediately preceding the filing of this bankruptcy case." (Exhibit 3). The debtor must provide the caption of the proceeding, the nature of the proceeding, the court or agency in which it is or was pending, and its current status.

### 3. Caldwell's Bankruptcy Proceeding

Caldwell and his wife filed a petition for Chapter 13 bankruptcy in the United States Bankruptcy Court for the Eastern District of Arkansas on June 20, 2014. (Case No. 5:14-bk-13391) (Exhibit 4). Caldwell accompanied the petition with a proposed plan (Exhibit 5) that Caldwell amended or modified seven times on July 24, 2014, August 19, 2014, December 30,

2014, March 4, 2015, May 5, 2015, May 12, 2015, and August 17, 2017 (Collective Exhibit 6). Caldwell filed his most recent proposed plan on August 7, 2017, ***eight months after filing the present lawsuit***. Even though Caldwell has been a Named Plaintiff in the present action since he filed it on December 9, 2016, he failed to disclose to the bankruptcy court that he had asserted numerous legal claims against PAM for alleged violations of federal and state wage laws, and various common law claims. Unaware of the claims he has asserted as a Named Plaintiff in this action, the bankruptcy court confirmed Caldwell's plan on January 31, 2018. (Exhibit 7).

Moreover, during his bankruptcy Caldwell amended the schedules associated with his bankruptcy petition *eleven times* on July 24, 2014, August 19, 2014, September 25, 2014, December 30, 2014, March 4, 2015, May 12, 2015, May 13, 2015, March 28, 2016, October 5, 2016, February 3, 2017, and August 17, 2017. (Collective Exhibit 8). His initial Schedule B listed "NONE" under Category 21 ("other contingent and unliquidated claims of every nature . . . ."). Despite filing numerous amended schedules throughout his bankruptcy, including after becoming a Named Plaintiff in this action, Caldwell never filed an amended Schedule B or A/B to disclose to the bankruptcy court his claims against PAM. (*See* Docket Report, Exhibit 9). Caldwell knew at least as of December 9, 2016 that he had such claims, yet concealed them from the bankruptcy court throughout that proceeding, up to and including when the bankruptcy court confirmed his Chapter 13 plan on January 31, 2018. Even to date, Caldwell has *still* concealed his claims in this action from the bankruptcy court.

> **4.**     **Fifty Four Additional Opt-In Plaintiffs Have Concealed the Present Action from Their Respective Bankruptcy Proceedings**

Similar to Caldwell, forty one opt-in plaintiffs ("the Barred Opt-Ins") have filed Chapter 13 bankruptcy petitions in which they have concealed the present action as a contingent asset by

failing to disclose, and failing to amend, their bankruptcy petition schedules. Some of the Barred Opt-Ins signed (subject to penalty of perjury) and filed a Schedule A/B, and some signed and filed the previously effective Schedule B. Most of them filed a Statement of Financial Affairs. None of the Barred Opt-Ins disclosed in their Schedules and Statement of Financial Affairs the existence of the claims being asserted by them in this lawsuit.[1]

Moreover, thirteen opt-in plaintiffs filed Chapter 7 bankruptcy petitions after becoming aware of their claims in the present action, and failed to disclose them to their respective bankruptcy courts. These Barred Opt-Ins are similarly precluded from maintaining their claims in this action.

## II.    ARGUMENT

### A.    Standard of Review

Motions to dismiss on the pleadings under Fed. R. Civ. P. 12(c) are subject to the same standard of review as motions to dismiss under Fed. R. Civ. P. 12(b)(6). *Ashley Cty., Ark. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009).

This Court specifically held in *Bazzelle v. Compasspointe Healthcare System*, 2016 WL 6832643 (W.D. Ark., Nov. 18, 2016), that a plaintiff's bankruptcy records can be considered under Rule 12(c) in determining whether a plaintiff should be judicially estopped from maintaining an action because of his failure to disclose the action to the bankruptcy court. *Bazzelle* explained:

---

[1] Exhibit 10 is a spreadsheet listing the names of each Barred Opt-In Plaintiff and the case number for his or her bankruptcy action. From the public records of each bankruptcy case, the spreadsheet summarizes the date it was filed, and whether the Barred Opt-In Plaintiff amended their Schedule B or A/B. That summary is pursuant to Fed. R. Evid. 1006, entitled "Summaries to Prove Content," which provides that a "proponent may use a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court." The public bankruptcy filings for each of the Barred Opt-In Plaintiffs are extremely voluminous and are therefore summarized in Exhibit10.

When considering a motion for judgment on the pleadings, a court must generally ignore all materials outside the pleadings. *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077 (8th Cir. 1999) . . .. However, courts may consider "some materials that are part of the public record or do not contradict the complaint . . . as well as materials that are necessarily embraced by the pleadings." *Porous Media Corp.* 186 F.3d at 1079 (internal quotation marks omitted); *see also Stahl v. U.S. Dep't of Agric.*, 327 F.3d 697, 700 (8th Cir. 2003) ("The district court may take judicial notice of public records and may thus consider them on a motion to dismiss."). Judicial records are considered part of the public record. *See Nixon v. Warner Commo'ns, Inc.*, 435 U.S. 589, 597 (1978) (recognizing a general right to "inspect and copy public records and documents, including judicial records and documents") (footnote omitted); *see also Stutzka v. McCarville*, 420 F.3d 757, 761 n.2 (8th Cir. 2005) (stating the court would consider a judgment entered in a federal bankruptcy case because "[courts] may take judicial notice of judicial opinions and public records").

*Id* at *2.

In *Bazzelle*, the defendant submitted with its Rule 12(c) motion "the voluntary petition filed by Plaintiff in her bankruptcy case," the "docket sheet from Plaintiff's bankruptcy case," and the "final report and account filed by the trustee in Plaintiff's bankruptcy case." *Id*. This Court held they were all "part of the public record" and would "consider them in the instant Motion for Judgment on the Pleadings" under Rule 12(c). *Id*. at *3.

The Eighth Circuit has held that a district court's decision to apply judicial estoppel is within its sound discretion. *Stallings v. Hussmann Corp.*, 447 F.3d 1041, 1046-47 (8th Cir. 2006). Review of a district court's application of judicial estoppel is for abuse of discretion, and will not be overturned "unless it plainly appears that the court committed a clear error of judgment in the conclusion it reached upon a weighing of" the factors that should be considered when a district court renders such a decision. *Jones v. Bob Evans Farms, Inc.*, 811 F.3d 1030, 1032 (8th Cir. 2016); *Stallings*, 447 F.3d at 1046-47.

**B.      Law Regarding Judicial Estoppel**

The Supreme Court has held that "where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position," and is therefore judicially estopped from maintaining that contrary position. *Davis v. Wakelee*, 156 U.S. 680, 689, 15 S.Ct. 555, 39 L.Ed. 578 (1895). *New Hampshire v. Maine*, 532 U.S. 742, 121 S.Ct. 1808, 149 L.Ed.2d (2001), summarized the purposes and policies sought to be advanced through judicial estoppel:

> Although we have not had occasion to discuss the doctrine elaborately, other courts have uniformly recognized that its purpose is to protect the integrity of the judicial process . . . by prohibiting parties from deliberately changing positions according to the exigencies of the moment. . . . Judicial estoppel is a doctrine intended to prevent the perversion of the judicial process. . . . [J]udicial estoppel protects the essential integrity of the judicial process . . . [and] prevents parties from playing fast and loose with the courts. . . . Because the rule is intended to prevent improper use of judicial machinery, judicial estoppel is an equitable doctrine invoked by a court at its direction.

532 U.S. at 749-50, 121 S.Ct. at 1814-15 (internal quotation marks and citations omitted). Because judicial estoppel focuses on the court's integrity, it does not require proof of privity, reliance, or prejudice by the party invoking it. *Monterey Development Corp. v. Lawyer's Title Ins. Corp.*, 4 F.3d 605, 609 (8th Cir. 1993).

Courts frequently apply judicial estoppel when bankruptcy debtors fail to disclose that they are plaintiffs in lawsuits seeking to recover money, or that they have legal claims that may ripen into litigation.  It is not surprising that judicial estoppel is frequently raised in litigation involving current or former bankruptcy debtors, because the Bankruptcy Code requires all debtors to file "a schedule of assets and liabilities, a schedule of current income and current expenditures, and a statement of the debtor's financial affairs."  11 U.S.C. §521(1).  As set out

*supra*, standardized forms of the required schedules and the statement of affairs must be used to make the disclosures, and those forms are executed under penalty of perjury.

"In the bankruptcy context, a party may be judicially estopped from asserting a cause of action not raised in a reorganization plan or otherwise mentioned in the debtor's schedules or disclosure statements." *Stallings supra*, 447 F.3d at 1047. Indeed, a bankruptcy debtor's failure to list a claim in the mandatory bankruptcy filings "is tantamount to a representation that no such claim existed." *Stallings*, 447 F.3d at 1047 (quoting from *In re Superior Crewboats, Inc.*, 374 F.3d 330, 335 (5th Cir. 2004). *Accord, Jones v. Bob Evans Farms, Inc.*, 811 F.3d 1030, 1033 (8th Cir. 2016); *United States ex rel. Gebert v.Transp.Admin. Servs.*, 260 F.3d 909, 917 (8th Cir. 2001).

In *New Hampshire v. Maine*, *supra*, 532 U.S. 742, 121 S.Ct. 1808, 149 L.Ed.2d (2001), the Supreme Court identified three factors that "aid a court in determining whether to apply the [judicial estoppel] doctrine." Those factors are that: (1) a party's later position must be clearly inconsistent with its earlier position; (2) the party must have succeeded in persuading the prior court to accept or adopt the party's prior position; and (3) the party asserting the inconsistent later position will derive an unfair advantage or impose an unfair detriment on the opposing party.

### C.    Application of the *New Hampshire* Factors

#### 1.    Factor I

The first *New Hampshire* factor – that Caldwell took inconsistent positions in his bankruptcy proceeding and in this action – is clearly met by the fact that Caldwell failed to amend his bankruptcy schedules or his Chapter 13 plan to disclose the claims in this action. *Jones v. Bob Evans Farms, Inc.*, 811 F.3d 1030 (8th Cir. 2016), affirmed summary judgment to the defendant, holding that the plaintiff's "failure to disclose his claims in his Chapter 13

bankruptcy proceedings judicially estopped him from pursuing them." *Id*. at 1031. The Eighth

Circuit explained in *Jones*:

> The first *New Hampshire* factor supports the district court's
> application of judicial estoppel because Jones took inconsistent
> positions between his bankruptcy case and this case. Jones' failure
> to amend his bankruptcy schedules to include his discrimination
> claims "represented to the bankruptcy court that no such claims
> existed," and his assertion of those claims in this case is
> inconsistent with that prior position . . .. Our court has previously
> concluded . . . that a Chapter 13 debtor who does not amend his
> bankruptcy schedule to reflect a post-petition cause of action
> adopts inconsistent positions in the bankruptcy court and the court
> where that cause of action is pending.

*Id*. at 1033 (citing *Stallings*, 447 F.3d at 1049).

Jones further held that the plaintiff's "failure to report his claims to the trustee

represented to the bankruptcy court that those claims did not exist regardless of whether he had

an independent duty to amend his schedules." 811 F.3d at 1033.

Similarly, in *Van Horn v. Martin*, 812 F.3d 1180 (8th Cir. 2016), the Eighth Circuit

affirmed the dismissal of the plaintiff's complaint because she failed to disclose it as an asset in

her bankruptcy proceeding. Applying the first *New Hampshire* factor, the Court held:

> Because Van Horn . . . failed to amend her Chapter 13 bankruptcy
> schedules to include her employment discrimination lawsuit which
> arose during the pendency of her bankruptcy proceedings, all three
> [*New Hampshire*] factors support the application of judicial
> estoppel in this case. First, Van Horn's employment
> discrimination suit was clearly inconsistent with her failure to
> amend her Chapter 13 bankruptcy schedules to include such
> claims.

*Id*. at 1183.

*E.E.O.C. v. CRST Van Expedited, Inc*., 679 F.3d 657 (8th Cir. 2012), similarly held that

"[u]nder the principles of judicial estoppel, [the plaintiff] was still obligated to amend her

[bankruptcy] petition to disclose her involvement or potential involvement in the post-petition

lawsuit," and the plaintiff's failure to do so judicially estopped her from maintaining those claims. *Id.* at 680. *See also Bazzelle, supra*, 2016 WL 6832643 (W.D. Ark., Nov. 18, 2016) ("Eighth Circuit precedent clearly states that Chapter 13 debtors who do not amend their bankruptcy schedules to reflect post-petition causes of action risk adopting inconsistent positions in courts").

In the present case, Caldwell commenced this action on December 9, 2016 as a Named Plaintiff. Although he filed several amended Chapter 13 plans and amended schedules in the bankruptcy court after December 9, 2016 (Exhibit 9), he never disclosed the existence of the claims in the action. Indeed, when he filed his final Chapter 13 plan on August 17, 2017, he *still* failed to disclose this action as a contingent asset. His continued and repeated failure to amend those schedules in the bankruptcy court was a representation that no such claims existed, making assertion of the claims in this action inconsistent with the position he took in the bankruptcy proceeding. The first *New Hampshire* factor is undeniably met.

### 2. Factor 2

The second *New Hampshire* factor is "whether [the] party has persuaded a court to accept its prior position 'so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled'." *Jones*, 811 F.3d at 1033 (quoting *New Hampshire*, 532 U.S. at 751).

The second factor is met when a bankruptcy court adopts the debtor's Chapter 13 plan and confirms it. *Funk v. Labor Ready, Inc*., 2008 WL 4368946 (E.D. Ark., Sept. 24, 2008) at *2 ("[t]he second [*New Hampshire*] factor was met when the bankruptcy court adopted Plaintiff's position on her assets and instituted her payment plan") (citing *Reynolds v. Comm'r*, 861 F.2d 469, 473 (6th Cir. 1988) (order confirming Chapter 13 plan adopts the debtor's statement that she has no potential causes of action)); *Small v. Arkansas Fair Housing Comm'n*, 2007 WL

433565 (E.D. Ark., Feb. 6, 2007) at *2 ("second factor was met when the bankruptcy court adopted Plaintiff's position on his assets and instituted the payment plan"); *Clay v. University Cancer Specialist*, 2010 WL 11520007 (E.D. Tenn., Jan. 25, 2010 at *4 ("an order confirming a Chapter 13 plan adopts the debtor's statement that she has no potential causes of action and supports a finding that the second [*New Hampshire* factor] has been met").

A leading bankruptcy law treatise explains why granting discharge or confirming a Chapter 13 plan satisfies the "acceptance" requirement of the second *New Hampshire* factor:

> Most courts require some form of "acceptance" of the prior position by the court in the earlier proceeding, the second element in the *New Hampshire v. Maine* analysis. Courts have generally concluded that the debtor's receipt of a discharge or the confirmation of her plan is a sufficient acceptance of the prior position. The reasoning is that, in granting a discharge or confirming a plan, the bankruptcy court relied on the representations the debtor made in her schedules that the cause of action now being prosecuted did not exist. If the debtor had disclosed the cause of action, the theory assumes, some other action would have occurred in the debtor's bankruptcy case that would have subjected proceeds from the cause of action to payment of the debtor's creditors, whereas nondisclosure results in the debtor being able to keep all of the recovery for herself, unless the undisclosed cause of action is detected.

W. Drake, P. Bonapfel, and A. Goodman, CHAPTER 13 PRACTICE AND PROCEDURE (July 2017 Update) §16:7.

Bankruptcy courts can "accept" a debtor's stated position that he has no legal claims against other parties in other, less obvious ways. For example, shortly after the filing of a Chapter 7 case, a notice is sent to the all of the creditors identified in the debtor's bankruptcy petition advising them of the date, time and location of the meeting of creditors required for all debtors. *See 11 U.S.C. § 341(a).* In Chapter 7 cases, the notice typically includes a Notice of No Dividend, the content of which is prescribed by Bankruptcy Rule 2002(e).

> *(e) Notice of No Dividend.*[2]  In a chapter 7 liquidation case, if it appears from the schedules that there are no assets from which a dividend can be paid, the notice of the meeting of creditors may include a statement to that effect; that it is unnecessary to file claims; and that if sufficient assets become available for the payment of a dividend, further notice will be given.

BANKR. R. 2002.  Determining that there are no assets sufficient to fund a dividend is made "from the schedules."  Thus, for purposes of giving this important information to creditors and other parties in interest, the court relies completely on trust schedules completed and filed by the debtor under penalties of perjury, unless and until the appointed trustee or some other interested party becomes aware of the undisclosed cause of action.

The trustee appointed in the case (who is considered an officer of the bankruptcy court) also makes an early determination as to the debtor's claim of exempt property.  In every bankruptcy case the debtor is allowed to claim certain of his property as exempt, meaning that certain property owned by the debtor will remain his at the conclusion of the case, as opposed to being sold or otherwise liquidated.  The trustee, the debtor's creditors, and other parties in interest can object to the debtor's exempt property claims if, for example, they believe the debtor "low-balled" the value of listed property.  The trustee first determines value based upon the property shown in the schedules to the debtor's petition.  The types of property debtors are allowed to exempt, and the maximum aggregate value of such property, varies from jurisdiction to jurisdiction, but in many jurisdictions the value of personal property the debtor is entitled to claim as exempt is relatively modest.  Therefore, bankruptcy debtors often exhaust their entire personal property exemptions, as a result of which there is no property in the bankruptcy estate for the bankruptcy trustee to administer.

---

[2]  The dividend referred to in this Rule is a pro rata distribution made to unsecured creditors of the debtor, at or near the conclusion of the case, if the bankruptcy estate administered by the trustee includes, after the payment of administration expenses and priority, sufficient funds to permit the dividend payment to be made.

When bankruptcy debtors represent to the court that they have no legal claims, the bankruptcy court accepts the debtor's representation by permitting the case to proceed in what appears to be a no-asset case in which no one challenges the debtor's exempt property claim. The debtor has succeeded in advancing his position that he has no legal claims against other parties, and the trustee, a representative of the bankruptcy court, is deprived of the opportunity to evaluate the actual contents and potential value of the bankruptcy estate the trustee is charged with administering. Unless the claim is discovered later, the debtor will retain the power to pursue the claim, even though it was property of the debtor's bankruptcy estate.

In the present case, Caldwell submitted his final bankruptcy plan on August 17, 2017 knowing that he had commenced this action as a Named Plaintiff over nine months earlier on December 9, 2016. He nonetheless failed to disclose it to the bankruptcy court, which confirmed his plan on January 31, 2018. Caldwell succeeded in getting the bankruptcy court to confirm his plan based on his representation that he did not have the claims in this action as a potential asset.

Thus, the second *New Hampshire* factor is easily satisfied.

### 3. Factor 3

The third *New Hampshire* factor is whether the plaintiff would derive an "unfair advantage"[3] by taking inconsistent positions in the present action and in the bankruptcy proceeding.

The debtor's nondisclosure of a legal claim during the debtor's bankruptcy case will invariably work to the debtor's advantage because, unless the bankruptcy court somehow learns of the legal claim, the debtor will retain the power to prosecute the claim and receive the

---

[3] An advantage is not considered "unfair" if the debtor's failure to disclose is determined to have been inadvertent or the result of a good-faith mistake. The non-disclosure is neither mistaken nor inadvertent if the debtor "knew about the undisclosed claims and had a motive to conceal them." *Stallings*, 447 F.3d at 1048-49.

proceeds.  On the other hand, if the debtor discloses the claim during the bankruptcy, the trustee will acquire the power and right to determine, in the first instance, how to attempt to turn the claim into cash that can then be used to pay creditors.

The Eight Circuit explained in *Jones* that, with respect to "[t]he third *New Hampshire* factor," the plaintiff "could have derived an unfair advantage in the bankruptcy proceedings by concealing his claims."  811 F.3d at 1034.  That is because "[i]f [the [plaintiff] had disclosed his claims, for example, the trustee could have moved the bankruptcy court to order him to make the proceeds from any potential settlement available to his unsecured creditors."  *See also Van Horn, supra*, 812 F.3d at 1183 (Eighth Circuit held third *New Hampshire* factor satisfied because plaintiff "could have received an unfair advantage because her trustee could have asked the bankruptcy court to order her to make any proceeds from a potential settlement available to her unsecured creditors").

In *Bazzelle, supra*, this Court held that the plaintiff "would benefit from an unfair advantage if judicial estoppel is not applied," because she "obtained judicial relief from the bankruptcy court on the representation that no claims existed," and therefore "the Court will prohibit her from subsequently 'resurrecting such claims and obtaining relief on the opposite basis'."  *Id*. at *5 (quoting *Stallings*, 447 F.3d at 1048).

Caldwell cannot claim that his repeated failure to disclose his claims in this action to the bankruptcy court was inadvertent or unintentional.  The Eighth Circuit has held that a "debtor's failure to satisfy its statutory disclosure duty is 'inadvertent' only when, in general, the debtor either lacks knowledge of the undisclosed claims or has no motive for this concealment."  *Jones*, 811 F.3d at 1034.  As in the present case, in *Jones* it was "undisputed that [the plaintiff] had knowledge of his claims while his bankruptcy case was pending."  *Id*.

Moreover, a "debtor who receives a right to sue letter from the EEOC while his bankruptcy case is pending has a motive to conceal his employment discrimination claims from that court." *Id.* Similarly, notice of the FLSA action to opt-in plaintiffs put them on notice of such claims, giving a motive to cancel them from the bankruptcy court.

The third *New Hampshire* factor weighs strongly in favor of applying judicial estoppel to bar Caldwell's claims in this action.

### D. The Barred Opt-In Plaintiffs Are Judicially Estopped From Maintaining Their Claims In This Action

All three *New Hampshire* factors apply with equal force to the Barred Opt-In Plaintiffs who were, or are, in bankruptcy and concealed their claims in this action from their respective bankruptcy courts.

All of the Barred Opt-In Plaintiffs were aware of the claim in this action not later than early July, 2017, when, based on the Court's Order Conditionally Certifying Collective Action and Approving Notice, it ordered that notice of the FLSA action be sent "within 7 days of June 26, 2017." (Doc. 19, Page ID #152).

As summarized in Exhibit 10, based on the public bankruptcy records available for each Barred Opt-In Plaintiff, after July, 2017 none of them disclosed their claims in this action in their respective bankruptcy cases, and none of them filed an amended Schedule B or A/B disclosing this action as a contingent asset.

For the same reasons applicable to Named Plaintiff Caldwell, these Barred Opt-In Plaintiffs (1) took inconsistent positions between their bankruptcy proceedings and this action, (2) were successful in getting the bankruptcy courts to adopt their positions based on their failure to disclose the claims in this action, and (3) would receive an unfair advantage unless they are estopped from asserting them in this action.

### III.    CONCLUSION

For the foregoing reasons, the Court should dismiss Named Plaintiff Caldwell and all

Bared Opt-In Plaintiffs identified in Exhibit 10.

Respectfully Submitted,

CONNER & WINTERS, LLP

s/Robert L. Jones, III
Robert L. Jones, III, AR #69041
Kerri E. Kobbeman, AR #2008149
Amber J. Prince, AR #2007247
4375 N. Vantage Drive, Suite 405
Fayetteville, AR  72703
(479) 582-5711
bjones@cwlaw.com
mburney@cwlaw.com
kkobbeman@cwlaw.com
aprince@cwlaw.com

DICKINSON WRIGHT PLLC

/s/ M. Reid Estes, Jr.
M. Reid Estes, Jr., BPR #9043
Peter F. Klett, BPR #12688
Martin D. Holmes, BPR #12122
424 Church Street, Suite 800
Nashville, TN  37219
(615) 620-1737
restes@dickinsonwright.com
pklett@dickinsonwright.com
mdholmes@dickinsonwright.com

/s/ K. Scott Hamilton
500 Woodward Avenue
Suite 4000
Detroit, MI  48226-3425
(313)-223-3500
khamilton@dickinsonwright.com

*Attorneys for the Defendant P.A.M. Transport, Inc.*

Dated:  May 25, 2018.

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing pleading was electronically filed with the Clerk of the Court using the CM/ECF System on May 25, 2018, which will serve notice of same on the following:

Justin L. Swidler, Esq.
Richard S. Swartz, Esq.
Joshua S. Boyette, Esq.
Travis Martindale_Jarvis, Esq.
Swartz Swidler, LLC
1101 Kings Hwy. N., Suite 402
Cherry Hill, NJ 08034

/s/ K. Scott Hamilton
K. Scott Hamilton

NASHVILLE 27403-20 644622v1