IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS

| | |
|---|---|
| DAVID BROWNE, ANTONIO CALDWELL, and LUCRETIA HALL, on behalf of themselves and all those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>P.A.M. TRANSPORT, INC.,<br>297 West Henri de Tonti Blvd.<br>Tontitown, AR 72770<br><br>And<br><br>JOHN DOES, 1-10<br>c/o P.A.M. TRANSPORT, INC.<br>297 West Henri de Tonti Blvd.<br>Tontitown, AR 72770<br><br>Defendants. | Case No. 5:16-cv-05366, TLB |

**REPLY BRIEF IN SUPPORT OF P.A.M. TRANSPORT, INC.'S MOTION FOR PARTIAL DISMISSAL UNDER FED. R. CIV. P. 12(c)**

# TABLE OF CONTENTS

|   |   |   | Page |
|---|---|---|---|
| TABLE OF AUTHORITIES | | | ii |
| I. | ARGUMENT | | 1 |
|   | A. | Plaintiffs' Sleeper Berth Claim Must Be Dismissed Under DOL Regulations | 1 |
|   | B. | DOT Regulations Further Support Dismissal of Plaintiffs' Sleeper Berth Claims | 7 |
|   | C. | Plaintiffs Browne and Halls' State Law Claims Must Be Dismissed | 8 |
| II. | CONCLUSION | | 11 |

# TABLE OF AUTHORITIES

**Cases**

*Christensen v. Harris County*, 529 U.S. 576 (2000) ............................................................... 2, 4

*Cotter v. Lyft*, 60 F. Supp.2d 1049 (N.D. Cal 2014) ................................................................ 9, 10

*Fast v. Applebee's Int'l, Inc.*, 638 F.3d 872 (8th Cir. 2011) ........................................................ 2

*Gravquick A/S v. Trimble Navigation Int'l Ltd.*, 323 F.3d 1219 (9th Cir. 2003) ......................... 9

*Handmaker v. Certusbank, N.A.*, 2015 WL 13635662 (W.D. Ky., July 7, 2015) ......................... 9

*Petrone v. Werner Enterprises, Inc.*, 2017 WL 510884 (D. Neb., Feb. 2, 2017) .................. passim

*Petrone v. Werner Enterprises, Inc.*, 212 F. Supp.3d 860 (D. Neb. 2015) ............................... 3, 5

*Reeder-Simco GMC, Inc. v. Volvo GM Heavy Truck Corp.*, 374 F.3d 701 (8th Cir. 2004) ............ 8

*Reuth v. Barnhart*, 372 F.3d 946 (8th Cir. 2004) .......................................................................... 3

*Ward v. United Airlines, Inc.*, 2016 WL 3906077 (N.D. Cal., July 19, 2016) ............................... 8

**Rules**

Fed. R. Civ. P. 12(c) ....................................................................................................................... 1

**Regulations**

29 C.F.R. §785.1 ............................................................................................................................. 1

29 C.F.R. §785.22 ....................................................................................................................... 1, 2

29 C.F.R. §785.22(a) ................................................................................................................... 4, 5

29 C.F.R. §785.33 .................................................................................................................. passim

29 C.F.R. §785.35 ........................................................................................................................... 2

29 C.F.R. §785.41 .................................................................................................................. passim

29 C.F.R. §785.6 ............................................................................................................................. 1

49 C.F.R. §395(f)(7) ....................................................................................................................... 6

49 C.F.R. §395.2 ............................................................................................................................. 8

49 C.F.R. §395.8(e)(1) .................................................................................................................... 6

**Statutes**

28 U.S.C. §1292(b) ............................................................................................................. 6

## I. ARGUMENT

### A. Plaintiffs' Sleeper Berth Claim Must Be Dismissed Under DOL Regulations

With respect to Plaintiffs' sleeper berth claim, Plaintiffs' Memorandum of Law in Opposition to Defendant's Motion for Partial Dismissal Under Fed. R. Civ. P. 12(c) ("Plaintiffs' Response") merely repeats the same unsuccessful arguments that Plaintiffs' counsel made, and Judge Smith Camp rejected, in *Petrone v. Werner Enterprises, Inc.*, 2017 WL 510884 (D. Neb., Feb. 2, 2017) ("*Petrone II*").[1] Section 6 of the FLSA "requires that each employee ... who is *employed* in an enterprise ... receive a specified minimum wage." 29 C.F.R. §785.1 (emphasis added). By FLSA's "definition the term 'employ' includes ... 'to suffer or permit to work.' The act, however, contains no definition of 'work'." 29 C.F.R. §785.6. Part 785 "discusses the principles involved in determining what constitutes working time." 29 C.F.R. §785.1. Under 29 C.F.R. §785.41, truck drivers are by definition "not working" for purposes of the FLSA whenever they are "permitted to sleep in" sleeper berths. 29 C.F.R. §758.41. Drivers who are on the road for extended periods (*i.e.*, multiple days) are therefore not entitled to compensation for any time they are permitted to spend in their sleeper berths, because during such time they are "not working." Plaintiffs' reliance on 29 C.F.R. §785.22 is therefore misplaced, and PAM is entitled to dismissal of their claim to compensation for time spent in a sleeper berth in excess of 8 hours.

Plaintiffs' Response to PAM's Motion regarding their sleeper berth claim relies on the DOL's Field Operations Handbook and two DOL Advisory Opinions interpreting 29 C.F.R. §785.22, to which Plaintiffs claim the Court must defer under *Auer v. Robbins*, 514 U.S. 452 (1997) (Plaintiffs' Response at 17-20). Plaintiffs are simply wrong.

---

[1] All unpublished cases are attached as Exhibit 1.

1

First, "*Auer* deference is warranted only when the language of the regulation is ambiguous." *Fast v. Applebee's Int'l, Inc.*, 638 F.3d 872, 878 (8th Cir. 2011) (quoting *Christensen v. Harris County*, 529 U.S. 576, 588 (2000)). In *Fast*, "[b]ecause the regulation [at issue] [did] not define 'occasionally' or 'part of [the] time'," the "regulation [was] ambiguous, and the ambiguity support[ed] the DOL's attempt to further interpret the regulation" through a handbook and advisory opinions. 638 F.3d at 880.

In contrast, the DOL regulations that define when a truck driver is "working" for purposes of compensation under the FLSA are unambiguous. 29 C.F.R. §785.33 directs that the "principles which apply in determining whether or not time spent traveling is working time depend upon the kind of travel involved," and that "subject is discussed in §§785.35 to 785.41."

29 C.F.R. §785.41 specifically applies to truck drivers and their assistants and defines when they are, and are not, deemed to be "working." They are "not working" any time they are permitted to sleep in a sleeper berth: "*An employee who drives a truck, . . .* or an employee who is required to ride therein as an assistant or helper, *is working* while riding, *except . . . when he is permitted to sleep in adequate facilities* furnished by the employer." Section 785.41 does not limit the number of such "non-working" hours to 8 or any other amount. By its terms, all time a driver is permitted to sleep in a berth is not working time.

29 C.F.R. §785.22 generally applies to employees who are continuously on duty for 24 hours or more and who are on duty even while sleeping. Section 785.22 allows employers to deduct up to 8 hours of sleep time from such employees' compensable work time. But 29 C.F.R. §785.41 specifically applies to truck drivers (and their assistants) while traveling, to determine when they are working or not, and they are, by definition, *not working* whenever they are "permitted to sleep in adequate facilities" (*i.e.*, sleeper berths).

2

With respect to truck drivers, the DOL regulatory framework is unambiguous. As Judge Smith Camp held in *Petrone II*:

> Under the plain language of the regulation, §785.22 applies to employees who are continuously on duty for 24 hours or more, even while sleeping. However, under the plain language of §785.41, drivers and assistants *are off duty when permitted to sleep in adequate facilities*, such as a sleeper berth. . . . [T]he Court concludes that the statutory scheme is unambiguous. [The Court's prior order][2] omitted reference to, or consideration of, §785.33, which clarifies the purpose of §785.41 in the regulatory scheme. Section 785.33 specifies that §785.41 addresses the issue of when a truck driver is on duty. Any interpretation of §785.41 that categorically limits non-compensable sleeper-berth time to 8 hours in a 24-hour cycle renders the language in §785.41 superfluous. Under the plain language in the regulations, time in a sleeper berth is presumably[3] non-compensable under §785.41.

*Petrone II*, 2017 WL 510884 at *7 (emphasis added).

Because there is no ambiguity in those DOL regulations, *Auer* deference to the DOL's Advisory Opinions and Field Operations Manual is not warranted.

Second, no deference is due an agency interpretation of its regulations if the interpretation is "plainly erroneous or inconsistent with the regulation." *Reuth v. Barnhart*, 372 F.3d 946, 951 (8th Cir. 2004). In *Petrone II*, Judge Smith Camp properly rejected the DOL Advisory Opinions and Field Operations Handbook that Plaintiffs' counsel relied upon in *Petrone I*, and which it again tries to rely upon in the present action, because those agency interpretations are contrary to the DOL regulations. Judge Smith Camp explained:

> The Court cannot reconcile the [prior summary judgment order in *Petrone I*] and that of the DOL advisory opinions with the plain language of the regulations. First, the advisory opinions did not

---

[2] 121 F. Supp.3d 860 (D. Neb. 2015) (Strom, J.) ("*Petrone I*").
[3] As discussed *infra*, all time drivers report as "sleeper berth" is *conclusively* non-compensable because they are charged with accurately reporting their duty status. They cannot report their status as "sleeper berth," and then later present evidence that it was actually "on-duty not driving" time.

3

address the language of §785.41. Second, the advisory opinions stated that non-compensable sleeping time must be limited to 8 hours when drivers or assistants are on trips away from home or "facilities" for a period of 24 hours or more. However, §758.22(a) does not apply any time an employee is away from home for 24 hours or more, but only "[w]hen an employee is required to be *on duty* for 24 hours or more." §758.22(a).

*Petrone II*, 2017 WL 510884 at *8 (emphasis in original). The DOL Advisory Opinions therefore conflict with the regulation:

> The DOL's interpretation suggests that a driver or assistant is on duty any time the driver or assistant is away from home for 24 hours or more,[4] even though no such language exists in §785.22 or elsewhere. To defer to the DOL's interpretation under these circumstances, "would be to permit the agency, under the guise of interpreting a regulation, to create *de facto* a new regulation." *See Christensen*, 529 U.S. at 588. This is particularly true because the FLSA regulatory scheme separately and specifically addresses when an employee in travel is considered "on duty" for purposes of the FLSA, *see* §785.33, and specifically states that truck drivers and assistants are working while traveling "except . . . when . . . permitted to sleep in adequate facilities furnished by the employer." §785.41. Accordingly, the advisory opinions conflict with the plain language of the regulation.

*Id.* at *8.

Beyond being contrary to the DOL's unambiguous regulations, neither the DOL Advisory Opinions nor the Field Operations Handbook Plaintiffs cite (Plaintiffs' Response at 17-20) have any *persuasive* authority because they fail to address the specific DOL regulations that apply in determining when a truck driver is, or is not, working. DOL Advisory Opinion 25 BA 407.8, 1964 DOLWH LEXIS 16 (Feb. 17, 1964) does not even mention 29 C.R.F. §§758.33 and 758.41, which specifically address when a truck driver is considered to be "working." Nor does

---

[4] That is also Plaintiffs' claim in this case; *i.e.*, that drivers are "on duty" whenever away from home more than 24 hours, and that employers can deduct no more than 8 hours of sleeper berth time from each 24 hour period.

4

DOL Advisory Opinion 25 BA 302, 1966 DOLWH LEXIS 248 (Nov. 18, 1966). They both instead simply parrot 29 C.F.R. §758.22 in isolation.

Similarly, the Field Operations Handbook upon which Plaintiffs rely fails to address 29 C.F.R. §§758.33 or 758.41. Plaintiffs' Response mischaracterizes that handbook as "**specifically** interpreting how 29 C.F.R. §§758.22 or 758.41 apply to over-the-road truck drivers." (Plaintiffs' Response at 17) (emphasis in original). *See also id.* at 25.

The DOL interpretations in no way "reconciled" §§758.22 or 758.41 as Plaintiffs repeatedly represent. (Plaintiffs' Response at 17, 25). *Petrone II* observed that "[d]espite [Judge Strom's] reliance on" it in *Petrone I*, "the guidance in the Handbook does not address the effect of §758.41 or §785.22(a)." *Petrone II* at *8. Instead, the "Handbook only references §758.41 to state that sleeper berths are 'adequate facilities' for purpose of both §758.41 or §758.22." *Id.*

Not surprisingly, Plaintiffs attempt to convince the Court to follow Judge Strom's August 3, 2015 opinion in *Petrone I*, 212 F. Supp.3d 860 (D. Neb. 2015), which is the opinion Judge Smith Camp vacated in part in *Petrone II*. 2017 WL 510884 (D. Neb. Feb. 2, 2017). The Court should not do so for several reasons.

First, Judge Strom erroneously concluded "[t]he two regulations [29 C.F.R. §§785.22 and 785.41], when read on their face, are ambiguous as to whether one or both apply to truck sleeper berths while on a tour of duty." 121 F. Supp.3d at 868. But as Judge Smith Camp pointedly observed, Judge Strom's opinion "omitted reference to, or consideration of §785.33, which clarifies the purpose of §785.41 in the regulatory scheme," and "[s]ection 785.33 specifies that §785.41 addresses the issue of when a truck driver is on duty." *Petrone II* at *7. Section 785.33 requires that "in determining whether or not time spent in travel is working time depend[s] on the kind of travel involved," and for truck drivers (and assistants) that requires reference to §785.41.

5

Applying §785.33 resolves the "ambiguity" Judge Strom misperceived, and which Plaintiffs seek to perpetuate in their Response to PAM's Motion.

Second, Judge Strom's opinion woodenly applied the DOL Advisory Opinions and Field Operations Handbook provisions discussed above without considering whether they were consistent with all of the applicable DOL regulations. See *Petrone II* at *7-8. Neither Judge Strom, nor those agency interpretations, even mentioned §785.33 and its role in the regulatory scheme.

Third, Judge Strom recognized the frailty of his analysis by taking the extraordinary step of certifying his opinion for immediate interlocutory appeal under 28 U.S.C. §1292(b). 2015 WL 5156869 (D. Neb. Aug. 25, 2015) at *2 (acknowledging that under his ruling, "a substantial ground for difference of opinion is present").[5]

Judge Smith Camp did err in one regard in *Petrone II*: Having concluded that drivers are not working any time they are permitted to sleep in sleeper berths under §785.41, she should have dismissed the plaintiff's sleeper berth claim outright, rather than concluding that fact questions precluded immediate judgment. Drivers are charged with reporting their duty status accurately and honestly.[6] PAM's only knowledge of duty status - - and therefore compensable time - - is from the driver's status reports. All time a driver reports as "Line 2 sleeper berth" therefore must be deemed time spent "not working," and therefore not compensable under the FLSA as a matter of law. Whether or not a driver was "in fact" working while logged in under

---

[5] The Eight Circuit declined immediate review.
[6] 49 C.F.R. §395.8(e)(1) ("No driver or motor carrier may make a false report in connection with a duty status"); 49 C.F.R. §395(f)(7) ("The driver shall certify to the correctness of all entries by signing the form containing the driver's duty status record with his/her legal name or name of record. The driver's signature certifies that all entries required by this section made by the driver are true and correct.")

6

Line 2 sleeper berth is inconsequential. Thus, it was error for *Petrone II* to conclude that the defendant was not entitled to judgment as a matter of law on the sleeper berth claim.

In the present case, the Court should adopt *Petrone II*'s reasoning and conclusion that the DOL regulations unambiguously mean that sleeper berth time is time "not working," regardless of whether it exceeds 8 hours in each 24-hour period, and should dismiss as a matter of law Plaintiffs' sleeper berth claim given that it is based on their assertion that only 8 hours per each 24-hour period can be deemed non-compensable.

### B. DOT Regulations Further Support Dismissal of Plaintiffs' Sleeper Berth Claims

Plaintiffs' Response mischaracterizes PAM's argument as being "that the compensability of hours worked by a truck driver is governed by the FMCSA's HOS guideline and not by the FLSA and the DOL's interpretation guidelines which set forth when waiting time and sleeping time counts as compensable hours worked." (Plaintiffs' Response at 9).[7] Not true. PAM's argument is that under DOL regulations, all time a driver is permitted to sleep in a sleeper berth is by definition not "working time" (§785.41) and therefore is not compensable under the FLSA. The DOT regulations *bolster* that understanding of the DOL regulations, but PAM's argument does not *depend* upon them.

DOT regulations control drivers' on-duty and off-duty time limits. Regardless of whether DOT and DOL regulations have different *purposes* (DOT safety; DOL minimum pay), they *both* regulate the same subject-matter, drivers and their employers, and should be read together. *Reeder-Simco GMC, Inc. v. Volvo GM Heavy Truck Corp.*, 374 F.3d 701, 716 (8th Cir.

---

[7] Plaintiffs further misrepresent "that the only basis for Defendants' motion is that the sleeper berth time in question was considered 'off duty' by the" DOT. (Plaintiffs' Response at 13).

7

2004) (statutory schemes that relate to the same subject matter must be read "in a harmonious manner if possible").

When the DOL regulations applicable to drivers are read to mean that *all* time in a sleeper berth is time "not working," the DOL and DOT regulations fit hand-in-glove. 49 C.F.R. §395.2 provides that "*On-duty time* shall include . . . [a]ll time in or on a commercial vehicle, other than . . . [t]ime spent in a *sleeper berth* . . . ." *Compare with* 29 C.F.R. §785.41 ("An employee who drive a truck . . . is working while riding, except . . . when he is permitted to sleep in adequate facilities," which include sleeper berths).

As set out in PAM's opening brief, and as *Petrone II* held, the DOT regulations applicable to truck drivers further support the view that all sleeper berth time is off-duty and is not work time compensable under the FLSA.

### C. Plaintiffs Browne and Halls' State Law Claims Must Be Dismissed

Plaintiffs Browne and Hall reside in Nevada. Plaintiffs do not, and cannot, dispute that Arkansas statutes cannot apply outside Arkansas absent a clear intent manifest in the statutes, and that the Arkansas Minimum Wage Law express no such intent. Plaintiffs Browne and Hall argue instead that (1) they occasionally drove through Arkansas on their routes, (2) PAM's driver's manual states all employees' employment is deemed to be "principally localized in the state of Arkansas," and (3) PAM's headquarters is in Arkansas.

First, an employee's itinerant, occasional and temporary presence in a state does not allow application of that state's wage statute. For example, in *Ward v. United Airlines, Inc.*, 2016 WL 3906077 (N.D. Cal., July 19, 2016), the "[c]lass members spent less than an average of twelve percent of their total work time within California," *id.* at *1, and "at least for class

8

members who worked primarily outside of California, . . . California's labor laws . . . [do] not apply." *Id.* at *5.

Second, the Plaintiffs' reliance on a driver's manual stating that employment for all employees is deemed to be "localized in the state of Arkansas" (Plaintiffs' Response at 30) is misplaced. Not even an express agreement between parties (much less one party's unilateral statement in a manual) can force extraterritorial application of a state statute where state law does not allow extraterritorial application.

In *Handmaker v. Certusbank, N.A.*, 2015 WL 13635662 (W.D. Ky., July 7, 2015), a South Carolina wage statute was silent whether it applied extraterritorially, and that silence fell "well short of a clear expression of intent that the South Carolina statue creates a cause of action for out of state workers." *Id.* at *6. The out-of-state plaintiffs relied on a letter agreement of employment saying it "shall be governed by and enforceable in accordance with the laws of the State of South Carolina," claiming they could sue under the South Carolina wage statute. Holding the statute could not be applied to non-South Carolina residents, *Handmaker* held:

> . . . [E]ven if the parties had intended to apply the statute to all aspects of the employment relationship, such an agreement would not be enforceable. Numerous courts have held that "[w]hen a law contains geographical limitations on its application, . . . courts will not apply it to parties falling outside those limitations, even if the parties stipulate that the law should apply." *Gravquick A/S v. Trimble Navigation Int'l Ltd.*, 323 F.3d 1219, 1223 (9th Cir. 2003); *see also Cotter* [*v. Lyft*, 60 F. Supp.2d 1049 (N.D. Cal 2014)] (collecting cases). . . . [T]he South Carolina Payment of Wages Act does not apply to those who are employed entirely outside the state. "Parties cannot, by contract, extend its reach." *Cotter*, 60 F. Supp.3d at 1065. The claim fails.

*Id.* at *7.

If parties cannot *contractually* agree to extraterritorial application of state law, extraterritorial application cannot be based on one party's unilateral statement.[8]

Third, Plaintiffs assert there is a "substantial physical connection" between them and Arkansas because they report duty status to, their pay is calculated in, and employment decisions are made in Arkansas. (Plaintiffs' Response at 31). They cite no authority that such actions allow state law to apply extraterritorially to vehicle drivers who are non-state residents, and case law is to the contrary. For example, in *Cotter v. Lyft, supra*, plaintiffs included non-California residents who drove vehicles in states other than California, but who sued under California's wage and hour laws. Those out-of-state plaintiffs "allege[d] that Lyft's principal place of business [was] in California, that its decision to classify drivers as independent contractors was made in California, and that its decision to implement the 'administrative fee' that the plaintiffs challenge[d] was made in California." *Id.* at 1061. They contended "that because of these connections, California wage and hours laws" should apply to non-California state drivers. *Id.* Applying the presumption that "[s]tate statutes are presumed not to have extraterritorial effect," the court held that "regardless of the connection between Lyft and California, Lyft drivers who worked in other states cannot bring claims under California's wage and hour statutes." *Id.* at 1061.

Arkansas law imposes the same presumption against extraterritorial application of its statutes, and there is nothing in Arkansas' wage statute to show intent that it be so applied.

---

[8] The drivers' manual expressly states in the Preface that it "does not constitute a contract for employment."

10

## II. CONCLUSION

For the foregoing reasons, and for the reasons in PAM's opening brief, PAM is entitled to partial dismissal under Fed. R. Civ. P. 12(c).

Respectfully Submitted,

CONNER & WINTERS, LLP

s/Robert L. Jones, III
Robert L. Jones, III, AR #69041
Kerri E. Kobbeman, AR #2008149
Amber J. Prince, AR #2007247
4375 N. Vantage Drive, Suite 405
Fayetteville, AR 72703
(479) 582-5711
(479) 587-1426 (fax)
bjones@cwlaw.com
mburney@cwlaw.com
kkobbeman@cwlaw.com
aprince@cwlaw.com


DICKINSON WRIGHT PLLC

/s/ M. Reid Estes, Jr.
M. Reid Estes, Jr., BPR #9043
Peter F. Klett, BPR #12688
Martin D. Holmes, BPR #12122
424 Church Street, Suite 800
Nashville, TN 37219
(615) 620-1737
(844) 670-6009 (fax)
restes@dickinsonwright.com
pklett@dickinsonwright.com
mdholmes@dickinsonwright.com

/s/ K. Scott Hamilton
500 Woodward Avenue
Suite 4000
Detroit, MI 48226-3425
(313)-223-3500
khamilton@dickinsonwright.com

*Attorneys for the Defendant P.A.M. Transport, Inc.*

Dated: July 25, 2018

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing pleading was electronically filed with the Clerk of the Court using the CM/ECF System on July 25, 2018, which will serve notice of same on the following:

Justin L. Swidler, Esq.
Richard S. Swartz, Esq.
Joshua S. Boyette, Esq.
Travis Martindale_Jarvis, Esq.
Swartz Swidler, LLC
1101 Kings Hwy. N., Suite 402
Cherry Hill, NJ 08034

/s/ K. Scott Hamilton
K. Scott Hamilton

DETROIT 27403-20 1466537v1