IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION


DAVID BROWNE; ANTONIO CALDWELL; and
LUCRETIA HALL, on behalf of themselves
and all those similarly situated                                   **PLAINTIFFS**

V.                                        CASE NO. 5:16-CV-5366

P.A.M. TRANSPORT, INC.                                             **DEFENDANT**


## MEMORANDUM OPINION AND ORDER

Currently before the Court are:

- Defendant P.A.M. Transport Inc.'s ("PAM") Motion for Partial Dismissal and Brief in Support (Doc. 55); Plaintiffs David Browne's, Antonio Caldwell's, and Lucretia Hall's (collectively, "Plaintiffs") Memorandum of Law in Opposition (Doc. 67); and PAM's Reply Brief in Support (Doc. 77); and

- PAM's Motion for Judgment on the Pleadings (Doc. 56) and Brief in Support (Doc. 57); Plaintiffs' Memorandum of Law in Opposition (Doc. 68); and PAM's Reply Brief in Support (Doc. 76).

For the reasons given below, both Motions are **DENIED**.

## I. BACKGROUND

Plaintiffs are individuals who worked for PAM as truck drivers. They have asserted a variety of claims against PAM in this case for alleged violations of the federal Fair Labor Standards Act ("FLSA") and the Arkansas Minimum Wage Law ("AMWL"). *See* Doc. 7. Plaintiffs brought their claims as a putative collective action under the FMLA and a putative class action under Fed. R. Civ. P. 23. *See id.* On May 8, 2017, this Court

conditionally certified the collective action, *see* Doc. 19, and roughly three thousand individuals subsequently opted in as collective-action plaintiffs, *see generally* Docs. 21–39, 42–46. November 2, 2018 is the deadline for PAM to move for decertification of the collective action and for Plaintiffs to move for class certification under Rule 23. *See* Doc. 81.

On May 24, 2018, PAM filed a Motion for Partial Dismissal under Fed. R. Civ. P. 12(c). *See* Doc. 55. In that Motion, PAM seeks dismissal of all Plaintiffs' "sleeper berth" claims (which will be explained further below), and of the Arkansas state law claims brought by Plaintiffs Browne and Hall. The following day, PAM filed a Motion for Judgment on the Pleadings under Fed. R. Civ. P. 12(c). *See* Doc. 56. In that Motion, PAM seeks dismissal of all claims by Plaintiff Caldwell along with 54 additional opt-in plaintiffs. Both of these motions have been fully briefed and await decision from this Court. The Court will address them both below, after reciting the applicable legal standard.

## II. LEGAL STANDARD

As mentioned above, both Motions are brought under Fed. R. Civ. P. 12(c). Although one is styled a "motion to dismiss" and the other is styled a "motion for judgment on the pleadings," the same legal standard applies to both. Specifically, motions for judgment on the pleadings under Rule 12(c) are governed by the same standard that governs Rule 12(b)(6) motions to dismiss. *See Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990). To survive such a motion, a complaint must provide "a short and plain statement of the claim that [the plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of this requirement is to "give the defendant fair notice of what the

2

. . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The Court must accept all of a complaint's factual allegations as true, and construe them in the light most favorable to the plaintiff, drawing all reasonable inferences in the plaintiff's favor. *See Ashley Cnty., Ark. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009).

However, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* In other words, while "the pleading standard that Rule 8 announces does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Id.*

## III. DISCUSSION

Below, the Court will first discuss PAM's May 24 Motion for Partial Dismissal. Then the Court will take up PAM's May 25 Motion for Judgment on the Pleadings.

### A. PAM's May 24 Motion for Partial Dismissal (Doc. 55)

As previously mentioned, PAM's May 24 Motion seeks dismissal of two categories of claims: all sleeper berth claims brought by any of the plaintiffs in this case, and the Arkansas state law claims brought by Plaintiffs Browne and Hall. In the first subsection below, the Court will discuss the sleeper berth claims. Then the Court will discuss PAM's

arguments about Plaintiffs Browne's and Hall's Arkansas state law claims in the second subsection.

## 1. Sleeper Berth Claims

Plaintiffs have advanced a variety of theories of recovery in this case. One of those theories is that for any given 24-hour shift, Department of Labor ("DOL") regulations prohibit PAM from excluding more than 8 hours from compensation for time that a driver spends in a truck's sleeper berth. PAM disagrees, and contends that it is legally permissible for PAM to exclude *all* time from compensation that a driver spends in a truck's sleeper berth, regardless of whether that amount of time exceeds 8 hours within a given 24-hour shift. This dispute involves a somewhat tangled web of statutes, agency regulations, and agency *interpretations* of statutes and regulations, which the Court will attempt to summarize now for the readers' benefit.

The FLSA requires employers to pay their employees a minimum wage for every hour worked. *See* 29 U.S.C. § 206(a). "Under certain conditions an employee is considered to be working even though some of his time is spent in sleeping or in certain other activities." 29 C.F.R. § 785.20. This is so because, as the United States Supreme Court has recognized, an employer may hire an employee simply to wait for some period of time. *See Skidmore v. Swift & Co.*, 323 U.S. 134, 136–37 (1944). One such instance explicitly addressed by DOL regulations is where an employee is on duty for 24 hours or more. Specifically, the DOL has instructed that:

> Where an employee is required to be on duty for 24 hours or more, the employer and the employee may agree to exclude bona fide meal periods and a bone fide regularly scheduled sleeping period of not more than 8 hours from hours worked, provided adequate sleeping facilities are furnished by the employer and the employee can usually enjoy an uninterrupted night's sleep. If sleeping period is of more than 8 hours, only

8 hours will be credited. Where no expressed or implied agreement to the contrary is present, the 8 hours of sleeping time and lunch periods constitute hours worked.

29 C.F.R. § 785.22(a). In other words, when an employee is required to be on duty for 24 hours, his employer must pay him for at least 16 of those hours, even if he has spent more than 8 hours sleeping and eating during that 24-hour period.

The FLSA does not affirmatively define the terms "on duty" or "hours worked." *See* 29 C.F.R. § 785.6; 29 U.S.C. § 203. To find a definition of "on duty," PAM points to Department of *Transportation* ("DOT") regulations that prohibit commercial truck drivers from being on duty for more than 14 hours in any 24-hour period. *See* 49 C.F.R. § 395.3(a). These DOT regulations define "on-duty time" as "all time from the time a driver begins to work or is required to be in readiness to work until the time the driver is relieved from work and all responsibility for performing work," but they explicitly *exclude* from on-duty time "[t]ime spent resting in a sleeper berth." *See* 49 C.F.R. § 395.2.

However, this Court believes those DOT regulations have little, if any, bearing on the matter at hand. They are a different set of regulations from the DOL regulations under discussion, promulgated pursuant to different statutes, and concerned with different policy aims. The DOT regulations aim to make our roads safe, while the DOL regulations aim to provide workers adequate compensation. If the DOT prohibits commercial truck drivers from driving for more than 14 hours in a 24-hour period while the DOL requires their employers nevertheless to pay them for at least 16 hours in that same period, then this Court sees nothing inconsistent or inharmonious about that state of affairs. It would simply be a cost of business that the federal government has seen fit to impose on employers of commercial truck drivers in order to ensure an adequate level of road safety

and driver compensation. This seems especially unremarkable in light of the DOL's requirement, already quoted above, that *all* sleeping time in a 24-hour shift must be compensated absent an explicit agreement to the contrary between the employer and the employee. *See* 29 C.F.R. § 785.22.

Nor is this Court troubled by the potential for the DOT's explicit definition of "on duty" to conflict with the DOL's implicit definition of the same phrase. Different laws frequently assign different technical meanings to identical words or phrases. And indeed, both the DOL and the DOT have explicitly, albeit informally, acknowledged that their respective definitions of "on duty" differ. *See* DOL Field Operations Handbook, § 14g03 at https://www.dol.gov/whd/FOH/FOH_Ch14.pdf (last visited Oct. 18, 2018) ("Time during which an employee is considered on or off duty by the Department of Transportation (DOT) is not governed by the same principles as apply under the FLSA. . . . Thus, the off-duty time required by DOT for safety purposes may exceed the amount of sleep time or other non-working time that may be deducted pursuant to [the Field Operations Handbook]."); 65 FR 25540-01, 25564–65 (May 2, 2000 Notice of Proposed Rulemaking by the DOT's Fed. Motor Carrier Safety Admin. ("FMCSA")) ("Some motor carriers, drivers, and enforcement officials have not understood the differences between the current FMCSA and [DOL Wage and Hour Division ("WHD")] definitions of duty time, off duty time, interstate commerce, and record keeping methods. The FMCSA believes some motor carriers that have not understood the difference may miscalculate the minimum wage, placing the motor carrier in violation of the FLSA. The driver may lose pay because the driver recorded time based upon the current FMCSA regulations and

guidance rather than using the WHD regulations and guidance for duty time.").[1] Although PAM is correct to point out that "under the *in pari materia* canon of statutory construction, statutes addressing the same subject matter generally should be read 'as if they were one law,'" that does not mean courts should conflate inconsistent definitions from different laws when they are dealing with concepts that "are not . . . of the same order." *See Wachovia Bank v. Schmidt*, 546 U.S. 303, 315–16 (2006).

However, rejecting the aforementioned DOT regulations as immaterial does not end this inquiry. As previously noted, under 29 C.F.R. § 785.22(a), when an employee is required to be on duty for 24 hours, his employer must pay him for at least 16 hours worked, even if the employee has spent more than 8 hours sleeping and eating during that 24-hour period. But another as-yet-unmentioned DOL regulation explains that "[t]he principles which apply in determining whether or not time spent *in travel* is working time depend upon the *kind of travel* involved." 29 C.F.R. § 785.33 (emphasis added). And with respect to work performed while *driving or riding*, yet another DOL regulation provides:

> Any work which an employee is required to perform while traveling must, of course, be counted as hours worked. *An employee who drives a truck*, bus, automobile, boat or airplane, or an employee who is required to ride therein as an assistant or helper, is working while riding, *except during bona fide meal periods or when he is permitted to sleep in adequate facilities furnished by the employer.*

---

[1] The Court does not mean to indicate here that its interpretation of these regulations depends in any way on the level of deference given to these instances of informal agency guidance. The Court believes, for the reasons described above, that the DOL and DOT regulations at hand contemplate different definitions of the phrase "on duty," and that there is nothing problematic about that state of affairs. The Court references these instances of informal agency guidance simply to point out that both of the relevant agencies appear to have independently arrived at the same conclusion as this Court's.

29 C.F.R. § 785.41 (emphasis added).

Thus, PAM argues, while DOL regulations generally require sleep time to be compensable to the extent it exceeds 8 hours within a 24-hour on-duty period, 29 C.F.R. § 785.41 creates an exception for commercial drivers. Under 29 C.F.R. § 785.41, PAM contends sleep time is *never* compensable for commercial drivers.

Plaintiffs counter that this is not how the DOL has interpreted its own regulations, and that this Court should defer to the DOL's interpretation. Plaintiffs are correct that the DOL appears to have interpreted 29 C.F.R. § 785.41 as doing little more than simply restating 29 C.F.R. § 785.22(a) and § 785.21.[2] For example, the DOL's Field Operations Handbook states:

(a) Berths in trucks are regarded as adequate sleeping facilities for the purposes of 29 CFR 785.41 and 29 CFR 785.22. However, this rule applies to sleeping berth time of truck drivers or helpers only when they are on continuous tours of duty during trips away from home for a period of 24 hours or more. If the trip begins and ends at the home station and is performed within one working day (less than 24 hours), all time on duty on the truck is time worked (except, of course, for bona fide meal periods) even though some of that time is spent in the sleeping berth. *See* FOH 31b00.

(b) FOH 31b12 and 29 CFR 785.22 describe excludable sleep time for hours of duty of 24 hours or more. On continuous tours of duty of more than 24 hours but less than 48 hours, 1 extra hour of sleep time in excess of the maximum 8 hours may be claimed for each hour beyond 40 that a continuous tour of duty extends, provided that the employee has actually slept such number of hours. For example, in a 42-hour continuous tour of duty, no more than 10 hours could be deducted for sleep time. Similarly, in a 45-hour continuous tour, a maximum of 13 hours could be deducted. However, in the absence of an express or

---

[2] 29 C.F.R. § 785.21 provides that when an employee is required to be on duty for *less* than 24 hours, he "is working even though he is permitted to sleep or engage in other personal activities when not busy." In other words, while under 29 C.F.R. § 785.22(a), employers and employees may agree that up to 8 hours of sleep time in a 24-hour shift is *not* compensable, employers must pay employees for all sleep time that is provided in a shift lasting less than 24 hours.

> implied agreement concerning the exclusion of sleep time, the time spent sleeping constitutes hours worked even though the tour of duty exceeds 24 hours. *See* FOH 31b12.

*See* DOL Field Operations Handbook, § 31b09 at https://www.dol.gov/whd/FOH/ FOH_Ch31.pdf (last visited Oct. 18, 2018). Plaintiffs have also pointed to a couple of DOL advisory opinions from 1964 and 1966 that state, without reference to 29 C.F.R. § 785.41, that under 29 C.F.R. § 785.22 employers must pay truck drivers for sleep time that exceeds 8 hours in a 24-hour shift. *See* Docs. 67-4, 67-5.

The question for this Court, then, is how much (if any) deference to give the DOL's interpretation of its own regulations here. "An agency's interpretation of its own regulation is 'controlling unless plainly erroneous or inconsistent with the regulation.'" *Reutter ex rel. Reutter v. Barnhart*, 372 F.3d 946, 951 (8th Cir. 2004) (quoting *Auer v. Robbins*, 519 U.S. 452, 461 (1997)). "But *Auer* deference is warranted only when the language of the regulation is ambiguous." *Christensen v. Harris Cnty.*, 529 U.S. 576, 588 (2000).

Here, again, 29 C.F.R. § 785.41 states in relevant part that "[a]n employee who drives a truck, . . . or an employee who is required to ride therein as an assistant or helper, is working while riding, except during bona fide meal periods or when he is permitted to sleep in adequate facilities furnished by the employer." It also states that "[a]ny work which an employee is required to perform while traveling must, of course, be counted as hours worked." There is no ambiguity here, then, as to whether an employer must count as hours worked the time that an employee spends riding in a commercial truck while

neither sleeping nor eating: time thus spent "is working,"[3] and "[a]ny work" performed "while traveling must . . . be counted as hours worked."

But there *is* an ambiguity in 29 C.F.R. § 785.41 as to whether an employer must count as hours worked the time that an employee spends eating or sleeping in a commercial truck. By the plain language of that regulation, the employee is not "working" when he is eating or sleeping; but that is not the same thing as offering guidance on whether such non-working time should nevertheless "be counted as hours worked." After all, we have already seen that in 29 C.F.R. § 785.22(a), whether time spent sleeping or eating should be counted as hours worked has nothing to do with whether such time constitutes actual work; rather, it simply turns on whether the employee has been on duty for at least 24 hours, whether the employee and employer have agreed to exclude it from hours worked, and whether it exceeds 8 hours.

To recap: 29 C.F.R. § 785.41 is unambiguous that a truck driver is not "working" when he is sleeping, but it is completely silent on whether a truck driver's time spent sleeping should nevertheless "count as hours worked." In the regulatory context, such silence typically constitutes ambiguity. *See Fast v. Applebee's Int'l, Inc.*, 638 F.3d 872, 877 (8th Cir. 2011) (*citing Barnhart v. Walton*, 535 U.S. 212, 218 (2002) for the proposition that "[S]uch silence, after all, normally creates ambiguity. It does not resolve it." (alteration in original)). However, any ambiguity on the topic disappears once one looks to 29 C.F.R.

---

[3] For this reason, this Court disagrees with the ruling in *Petrone v. Werner Enters., Inc.*, that "[a]ny interpretation of § 785.41 that categorically limits non-compensable sleeper-berth time to 8 hours in a 24-hour cycle renders the language in § 785.41 superfluous." 2017 WL 510884, at *7 (D. Neb. Feb. 2, 2017). The clarification in 29 C.F.R. § 785.41 that an employee can "work" by riding in a truck without driving, eating, or sleeping is a specific nuance that does not appear in 29 C.F.R. § 785.22.

§ 785.22(a). As has been extensively discussed by now, *that* regulation tells us *exactly* how to determine whether sleeping time is compensable—and the analysis has nothing to do with whether the employee is driving or riding in a truck. So the ambiguity is gone, and this Court need not give controlling deference to the DOL's interpretation of its own regulations on the matter (though it is comforting to see that the DOL's interpretation accords with this Court's own). Therefore, PAM's motion to dismiss Plaintiffs' sleeper berth claims will be denied.

## 2. Arkansas State Law Claims

PAM also seeks dismissal of the Arkansas state law claims brought by Plaintiffs Browne and Hall, on the grounds that they are Nevada residents and Arkansas state law cannot be applied extraterritorially, for reasons both statutory and constitutional. Plaintiffs concede that there are extraterritorial limitations on Arkansas state law, but they counter, *inter alia*, that they expect discovery to show that they were physically present in Arkansas for at least some of the work they performed, and that the extent of Arkansas state law's application to their employment will depend on a fact-intensive analysis. The Court believes that Rule 12 motion practice is not the appropriate place to resolve this issue, as it must confine itself at this stage to the pleadings and construe them in the light most favorable to Plaintiffs. Plaintiffs' Arkansas state law claims are sufficiently well pleaded to place PAM on notice of what those claims are. Accordingly, the Court will deny PAM's motion to dismiss the Arkansas state law claims brought by Plaintiffs Browne and Hall, without prejudice to PAM's right to re-raise issues of extraterritorial application at a time when the standard of review will permit the Court to consider facts not in the pleadings.

## B. PAM's May 25 Motion for Judgment on the Pleadings (Doc. 56)

In PAM's May 25 Motion for Judgment on the Pleadings, it asks this Court to apply the doctrine of judicial estoppel against Plaintiff Caldwell, as well as against 54 opt-in plaintiffs, for having taken a prior inconsistent position in bankruptcy proceedings. Specifically, PAM alleges that these plaintiffs failed to disclose their interest in the outcome of the instant litigation as an asset in bankruptcy filings. PAM contends that those failures to disclose should be construed as denials of any claim in this case, and that they should be bound to those denials now.

In *New Hampshire v. Maine*, the United States Supreme Court explained that "the circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation of principle," but it noted the existence of several factors that "typically inform the decision whether to apply the doctrine in a particular case." *See* 532 U.S. 742, 750–51 (2001). One is that "a party's later position must be clearly inconsistent with its earlier position." *Id.* at 750 (internal quotation marks omitted). Another is "whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled." *Id.* (internal quotation marks omitted). And "[a] third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Id.* at 751. Importantly, the Eighth Circuit has stated that "judicial estoppel does not apply when a debtor's prior position was taken because of a good-faith mistake rather than as part of a scheme to mislead the court," and that "the specific facts of a case may weigh against" an inference

that a failure to disclose an asset in bankruptcy proceeding was done in bad faith. *See Stallings v. Hussmann Corp.*, 447 F.3d 1041, 1049 (8th Cir. 2006) (internal quotation marks omitted).

As with PAM's arguments regarding extraterritorial application of Arkansas law, the Court believes a Rule 12(c) motion for judgment on the pleadings is not an appropriate vehicle for resolving such a fact-intensive issue. Especially in light of the "extraordinary remedy" being requested, *see id.*, Plaintiffs are entitled to the opportunity to gather and provide evidence of their subjective intent with respect to these alleged nondisclosures. Accordingly, PAM's motion will be denied, without prejudice to its right to re-raise these issues at a later time in a motion for summary judgment.

## IV. CONCLUSION

**IT IS THEREFORE ORDERED** that Defendant PAM's Motion for Partial Dismissal (Doc. 55) and Motion for Judgment on the Pleadings (Doc. 56) are both **DENIED**.

**IT IS SO ORDERED** on this ___19th___ day of October, 2018.

TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE