IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

DAVID BROWNE; ANTONIO CALDWELL; and
LUCRETIA HALL, on behalf of themselves
and all those similarly situated                                                    PLAINTIFFS

V.                              CASE NO. 5:16-CV-5366

P.A.M. TRANSPORT, INC.                                                              DEFENDANT

## MEMORANDUM OPINION AND ORDER

Currently before the Court are:

- Defendant P.A.M. Transport, Inc.'s ("PAM") Motion to Decertify Conditional Collective FLSA Action (Doc. 84) and Brief in Support (Doc. 85); Plaintiffs David Browne's, Antonio Caldwell's, and Lucretia Hall's Memorandum of Law in Opposition (Doc. 96); and PAM's Reply Brief in Support (Doc. 97); and

- Plaintiffs' Motion for Class Certification pursuant to F.R.C.P. 23 (Doc. 91), Memorandum of Law in Support (Doc. 88), and Memorandum of Law Related to Choice-of-Law Analysis in Support (Doc. 90); PAM's Brief in Response (Doc. 95); and Plaintiffs' Reply in Further Support (Doc. 98).

For the reasons given below, PAM's Motion is **DENIED** and Plaintiffs' Motion is **GRANTED**.

## I. BACKGROUND

Plaintiffs, who worked as truck drivers for PAM, have brought a variety of claims against PAM under the Fair Labor Standards Act ("FLSA"), several Arkansas statutes including the Arkansas Minimum Wage Act ("AMWA"), and the Arkansas common law of

1

contracts and unjust enrichment. *See* Doc. 7. They brought their claims as a putative collective action under the FLSA, and as a putative class action under Fed. R. Civ. P. 23. *See id.* With PAM's consent, this Court conditionally certified the collective action on May 8, 2017. *See* Doc. 19. Roughly three thousand individuals have since opted in as collective-action plaintiffs. *See generally* Docs. 21–39, 42–46.

On November 2, 2018, PAM moved this Court to decertify the FLSA collective action. *See* Doc. 84. Three days later, Plaintiffs moved this Court to certify its state-law claims as a class action under Fed. R. Civ. P. 23. Both Motions have been fully briefed, and were the subject of oral argument at a hearing on December 20, 2018. They are now ripe for decision.

## II. LEGAL STANDARDS

For an FLSA collective action to be certified, plaintiffs must be "similarly situated" to the employees on whose behalf they are bringing the action. *See* 29 U.S.C. § 216(b). "Plaintiffs may be similarly situated when they suffer from a single, FLSA-violating policy, and when proof of that policy or of conduct in conformity with that policy proves a violation as to all the plaintiffs." *Bouaphakeo v. Tyson Foods, Inc.*, 765 F.3d 791, 796 (8th Cir. 2014) (internal quotation marks omitted), *aff'd and remanded*, 136 S. Ct. 1036 (2016). When determining whether this requirement is met, courts may consider the following three factors: "(1) disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant which appear to be individual to each plaintiff; and (3) fairness and procedural considerations." *See id.* (internal alterations omitted). The decision whether to decertify an FLSA collective action is committed to this

Court's discretion. *See Nerland v. Caribou Coffee Co., Inc.*, 564 F. Supp. 2d 1010, 1018 (D. Minn. 2007).

As for class certification under Fed. R. Civ. P. 23, the party seeking class certification bears the burden of proving that Rule 23's requirements are satisfied. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). The district court retains "broad discretion in determining whether to certify a class, recognizing the essentially factual basis of the certification inquiry and . . . the district court's inherent power to manage and control pending litigation." *In re Zurn Pex Plumbing Prods. Liab. Litig.*, 644 F.3d 604, 616 (8th Cir. 2011) (internal quotations and citations omitted). Nevertheless, a district court must undertake "a rigorous analysis" to ensure that the requirements of Rule 23 are met. *Gen. Tel. Co. of the Sw. v. Falcon*, 467 U.S. 147, 161 (1982). "Frequently that 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim." *Dukes*, 564 U.S. at 351. The district court may "resolve disputes going to the factual setting of the case" if necessary to the class certification analysis. *Blades v. Monsanto Co.*, 400 F.3d 562, 567 (8th Cir. 2005).

An implicit requirement for any Rule 23 class certification inquiry involves a court's assessment as to the ascertainability of the class. The description of a proposed class must be sufficiently definite to permit class members to be identified by objective criteria. *See Sandusky Wellness Ctr., LLC v. Medtox Sci., Inc.*, 821 F.3d 992, 996–97 (8th Cir. 2016). "The requirement that a class be clearly defined is designed primarily to help the trial court manage the class. It is not designed to be a particularly stringent test, but plaintiffs must at least be able to establish that the general outlines of the membership of

the class are determinable at the outset of the litigation." *Bynum v. Dist. of Columbia*, 214 F.R.D. 27, 31 (D.D.C. 2003).

Under Rule 23, certifying a class action requires a two-step analysis. First, the Court must determine whether:

- the class is so numerous that joinder of all members is impracticable ("*numerosity*");
- there are questions of law or fact common to the class ("*commonality*");
- the claims or defenses of the representative parties are typical of the claims or defenses of the class ("*typicality*"); and
- the representative parties will fairly and adequately protect the interests of the class ("*fair and adequate representation*").

Rule 23(a)(1)–(4). Second, because Plaintiffs seek to maintain the classes under Rule 23(b)(3), the Court must determine whether:

- questions of law or fact common to class members predominate over questions affecting only individual members ("*predominance*"); and
- a class action is superior to other available methods for fairly and efficiently adjudicating the controversy ("*superiority*").

Rule 23(b)(3).

### III. DISCUSSION

As might be expected, given the similarity of the governing legal standards, there is not really any substantive difference between the parties' respective arguments regarding Rule 23 class certification on the one hand, and FLSA collective action decertification on the other. Thus, for analytical ease the bulk of this Court's discussion

4

will be viewed through the lens of Rule 23, before a brief explanation at the end of why the FLSA claims should be treated the same as the state-law claims for purposes of certification.

Most of the Rule 23 factors are clearly satisfied here, and are not contested by PAM. Specifically, there appears to be no dispute, and the Court agrees, that the proposed class members are ascertainable and numerous, that the named Plaintiffs' claims are typical of the class's claims because they "are based on the same legal or remedial theory," *see Paxton v. Union Nat. Bank*, 688 F.2d 552, 561–62 (8th Cir. 1982), and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy, in the sense that: (1) individual damages are unlikely to be high enough for separate litigation of individual members' claims to be economically viable; (2) there does not appear to be any other pending litigation concerning this controversy; (3) concentrating the members' claims in this forum would be more efficient than piecemeal litigation; and (4) this would not be an especially difficult class action to manage, *see* Fed. R. Civ. P. 23(b)(3). In other words, the only Rule 23 factors that are contested here are: (1) fair and adequate representation, and (2) predominance (along, perhaps, with commonality, which is subsumed within the predominance analysis).

With respect to the first of those two factors, PAM contends that neither Plaintiff Caldwell nor Plaintiff Hall is capable of providing fair and adequate class representation, though for different reasons. Regarding Plaintiff Caldwell, PAM argues that he "is subject to a unique defense" of judicial estoppel that was previously raised in PAM's Rule 12 motion practice. *See In re Milk Prods. Antitrust Litig.*, 195 F.3d 430, 437 (8th Cir. 1999). The Court disagrees, for the simple reason that the defense is not actually unique to

Plaintiff Caldwell; PAM is also asserting it against 54 opt-in plaintiffs. *See* Doc. 57. Thus, Plaintiff Caldwell's incentives here are aligned with those of the putative class members. As for Plaintiff Hall, PAM frets that her medical issues will prevent her from effectively participating at trial. In order to protect her privacy, the Court will avoid getting into any details here, other than to say that it does not presently share PAM's concerns on this front, given that these issues did not prevent her from effectively participating in her deposition. And the Court certainly is not aware of any other reasons why fair and adequate representation cannot be provided by the named Plaintiffs in this case, who thus far have vigorously and effectively prosecuted their claims.

The gravamen of PAM's opposition to class certification is the issue of whether "questions of law or fact common to class members predominate over questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). "The Rule 23(b) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). The Eighth Circuit has explained that:

> When determining whether common questions predominate, a court must conduct a limited preliminary inquiry, looking behind the pleadings, but that inquiry should be limited to determining whether, *if the plaintiffs' general allegations are true, common evidence could suffice to make out a prima facie case for the class*. While limited in scope, this analysis should also be rigorous.

*In re Zurn Pex Plumbing Prods. Liab. Litig.*, 644 F.3d 604, 618 (8th Cir. 2011) (emphasis added) (internal citations and quotation marks omitted).

PAM's attack on predominance is lodged against three particular types of claims brought by these Plaintiffs: (1) claims that through its use of the "Comdata" pay system, PAM failed to pay some class members in currency; (2) claims that PAM made unlawful

deductions from some class members' paychecks; and (3) claims that PAM failed to pay class members minimum wage. With respect to the first two types of claims, PAM complains that checking administrative records to see whether someone used the Comdata system or received deductions is an individualized inquiry, and that the arithmetic one must then perform from those records to determine damages is also an individualized inquiry. *See* Doc. 95, pp. 43–48. But be that as it may, these are the sorts of individualized inquiries that must be done in countless other class actions, and the common question of whether the complained-of practices were legal in the first place easily predominates over them.

Predominance is a trickier issue when it comes to Plaintiffs' minimum wage claims, because it turns on the parties' differing theories of the case. Some factual and legal context is necessary here.

Plaintiffs are, or were, over-the-road truck drivers who worked shifts for PAM of 24 hours or more. They claim that for many of those shifts, PAM failed to pay them the minimum wage for at least 16 of those 24 hours, and that this was a violation of both Arkansas and federal law. *See* Ark. Admin. Code 010.14.1-108(D)(3); 29 C.F.R. § 785.22. In a prior Order in this case, this Court interpreted the relevant laws to the effect that "when an employee is required to be on duty for 24 hours, his employer must pay him for at least 16 of those hours, even if he has spent more than 8 hours sleeping and eating during that 24-hour period." *See* Doc. 82, pp. 4–5.[1] Thus, although PAM

---

[1] Although Plaintiffs have brought minimum wage claims under both state and federal law, and although Plaintiffs only seek Rule 23 class certification for their state-law claims, there is extensive consideration of federal law in this analysis. That is because the pertinent provisions of Arkansas minimum wage law here, both statutory and regulatory, are identical to federal minimum wage law, *compare, e.g.*, Ark. Admin. Code 010.14.1-

naturally disagrees with that prior ruling, under the law of this case, the critical facts for Plaintiffs to prove will be: (1) whether they were on duty for periods of 24 hours or more, and (2) how much PAM paid them. The second, while certainly an individualized inquiry, no more predominates over issues of common fact than the similar issues previously discussed with respect to the Comdata and deductions claims do; it is a simple matter of checking records and performing arithmetic. The first question, then, of whether class members were on duty for periods of 24 hours or more, is where the heart of the dispute over predominance can be found.

PAM points out that there is a lot of individual variation among putative class members with respect to how much time they logged as on-duty or off-duty, how they classified various types of work in their time logs, and even whether they falsified their time logs. Thus, the argument goes, PAM's time logs are inaccurate, and figuring out how much time class members spent doing what will require taking lots of individual class members' testimony. The problem with this line of argument, though, is that it ignores Plaintiffs' theory of the case, under which it simply does not matter whether a given class member was doing this type of work (or relaxation) for *x* number of hours or that type of work (or relaxation) for *y* number of hours during any given 24-hour period. Plaintiffs intend to prove that, pursuant to PAM's own policies, when PAM's truck drivers were on the road for at least 24 hours they were "on duty" for that entire period, regardless of how

---

108(D)(2), (D)(3), (F)(7) *with* 29 C.F.R. §§ 785.21, 785.22, 785.41, and the Arkansas Department of Labor is expressly authorized in the Arkansas Administrative Code to "rely on the interpretations of the U.S. Department of Labor and federal precedent established under the Fair Labor Standards Act in interpreting and applying the provisions of the [Minimum Wage] Act and [implementing rules], except to the extent a different interpretation is clearly required," *see* Ark. Admin. Code 010.14.1-112.

their time was logged during that period because, *inter alia*, they were required to stay in constant communication with PAM, and were constantly accountable for the safety of PAM's trucks. And Plaintiffs intend to prove this with evidence that is common among all class members, such as PAM's driver manuals, trainer manuals, and administrative records, as well as testimony by PAM executives, managers, supervisors, and trainers. *See, e.g.*, Docs. 88-1–88-18; Doc. 93; Docs. 93-1–93-8. This is sufficient common evidence for Plaintiffs "to make out a prima facie case for the class," which is all they must provide to satisfy the requirement of predominance. *See In re Zurn*, 644 F.3d at 618.

Nor is it any impediment to class certification, as PAM contends, that some putative class members might ultimately be found to have been paid at least minimum wage. While it is certainly true that class certification is inappropriate when it would confer a windfall on some class members, *see, e.g.*, *Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 774 (7th Cir. 2013), that concern is not present when individuals who have not suffered any damages can easily be identified and ultimately excluded from any award, *see, e.g.*, *Stuart v. State Farm Fire and Cas. Co.*, 910 F.3d 371, 376–77 (8th Cir. 2018); *Bouaphakeo*, 765 F.3d at 797–98. So it is here. This particular defense can easily be resolved using common proof—namely, PAM's own administrative records.

There is one final issue bearing on predominance here, which is the question of which state's (or states') law(s) apply. PAM has previously argued in this case that Arkansas' minimum wage laws do not permit extraterritorial application, and also that applying Arkansas' minimum wage laws to work performed on trips that occurred outside the state of Arkansas would violate the Dormant Commerce Clause of the United States Constitution. *See* Doc. 55, pp. 25–32. The Court declined to rule on those arguments

then, because to do so would have required considering matters outside the pleadings, which would have contravened the legal standard governing motions to dismiss. *See* Doc. 82, p. 11. But it did state that PAM would be permitted to re-raise such issues "at a time when the standard of review will permit the Court to consider facts not in the pleadings." *See id.* We have now arrived at such a time.

"The Supreme Court has held an individualized choice-of-law analysis must be applied to each plaintiff's claim in a class action." *In re St. Jude Medical, Inc.*, 425 F.3d 1116, 1120 (8th Cir. 2005) (citing *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 822–23 (1985)). That analysis has both a constitutional component and a common-law component. PAM contends that this analysis frustrates predominance because its factors weigh differently depending on which driver is under consideration. This Court disagrees, and believes that facts and law common to the entire class predominate over individualized issues in the choice-of-law analysis. The law is common to the entire class for the simple reason that when conducting a choice-of-law analysis, the presiding Court generally must apply the choice-of-law rules of the state in which it is located—which of course is Arkansas here. *See Eggleton v. Plasser & Theurer Export Von Bahnbaumaschinen Gesellschaft, MBH*, 495 F.3d 582, 585 (8th Cir. 2007). And although there is individual variation of facts with respect to the states through which different class members drove, the choice-of-law analysis here is driven by facts that are common among all class members. Those facts are that: (1) PAM exercises nearly constant oversight, supervision, and communication from its headquarters in Arkansas with its drivers who are on the road throughout the country; and (2) consistent with this practice, PAM explicitly informs all of its drivers that "[y]our employment is principally localized in

the state of Arkansas and although you will travel through many states, your headquarters and hub of operations will be our facility in Tontitown, Arkansas." *See* Doc. 93, p. 38.

These are very different facts from a situation where a defendant's only connection to the forum state is that it happens to be the state where that defendant is incorporated. So the instant case is easily distinguishable in that regard from the only case cited by PAM to have found a Dormant Commerce Clause violation. *See Mitchell v. Abercrombie & Fitch*, 2005 WL 1159412, at *4 (S.D. Ohio, May 17, 2005) (distinguishing its facts from those where an employee worked "even a brief period of time in Ohio, which would change the analysis as to the applicability of Ohio law to his employment relationship"). And given PAM's explicit representations to its employees about where their "headquarters and hub of operations" would be, it would be "neither arbitrary nor fundamentally unfair" to apply Arkansas law here—which is to say that applying Arkansas law in this case would not violate the Due Process Clause or the Full Faith and Credit Clause of the United States Constitution. *See Allstate Ins. Co. v. Hague*, 449 U.S. 302, 308–10 (1981).

For similar reasons, this Court is not persuaded that the application of Arkansas law here would be an impermissible "extraterritorial" application. It is certainly true, as PAM points out, that as a "general rule . . . statutes have no effect except within the state's own territorial limits." *See Hetman v. Schwade*, 2009 Ark. 302, at *9, 317 S.W.3d 559. But here, as described above, every single putative class member has significant and meaningful contacts with PAM *inside the state of Arkansas*, regardless of where they drove their trucks. PAM has not presented this Court with any cases interpreting Arkansas law to the contrary under facts like these, and this Court is likewise unaware of

any. Thus, it seems to this Court that the choice-of-law analysis here should be conducted in the same way that it would be in any other case where multiple states' laws are potentially applicable to a cause of action.

In Arkansas, different choice-of-law rules apply to claims sounding in contract from those sounding in tort. Here, since some of Plaintiffs' claims sound in contract and some sound in tort, this Court must conduct separate analyses for both categories, which is a process called "depecage." *See Ewing v. St. Louis-Clayton Orthopedic Grp., Inc.*, 790 F.2d 682, 686 (8th Cir. 1986).

For claims sounding in contract, Arkansas courts apply "the law of the state with the most significant relationship to the issue at hand." *Crisler v. Unum Ins. Co. of Am.*, 366 Ark. 130, 133, 233 S.W.3d 658 (2006). In doing so, they consider: "1) the place of contracting; 2) the place of negotiation of the contract; 3) the place of performance; 4) the location of the subject matter of the contract; [and] 5) the domicile, residence, nationality, place of incorporation and place of business of the parties." *See id.* Here, given each class member's constant and significant interaction with PAM in Arkansas as they drove throughout a variety of other states, the third and fourth factors all heavily weigh in favor of applying Arkansas law for all class members, while the first, second, and fifth factors would all either point exclusively to Arkansas or simply break even between Arkansas and some other state, depending on the particular class member in question. Accordingly, Arkansas has the most significant relationship with all class members' claims sounding in contract, and its law should apply to those claims.

For claims sounding in tort, Arkansas courts apply the law of the state that has "a more significant relationship to the parties and subject litigation," and determine which

state that is by considering two sets of factors. *See Ganey v. Kawasaki Motors Corp., U.S.A.*, 366 Ark. 238, 251–52, 234 S.W.3d 838 (2006). First, under the doctrine of *lex loci delicti*, they identify "the place where the wrong took place." *See id.* at 251. Then, they consider "the five choice-influencing factors promulgated by Dr. Robert A. Leflar," which are: "(1) predictability of results, (2) maintenance of interstate and international order, (3) simplification of the judicial task, (4) advancement of the forum's governmental interests, and (5) application of the better rule of law." *See id.* Here, for each class member, the place where the wrong allegedly occurred is Arkansas, because that is where PAM is alleged to have made and executed its payment decisions. *Cf. id.* at 251–52 (location where accident occurred not the place where the wrong took place in products liability case). As for the Leflar factors, the first four clearly favor Arkansas here. Applying Arkansas law to an Arkansas employer who manages its employees from inside Arkansas would further predictable results, maintain interstate and international order, and simplify the judicial task. And obviously the state of Arkansas has an interest in seeing its laws applied to employers who are physically located within its territory. As for the fifth factor, this Court supposes reasonable minds could disagree about what the "better rule of law" is when it comes to minimum wage, and it finds it very difficult to come down in favor of one state over another on that question; but at any rate, that question is so close, and the other factors all so lopsided, that it easily finds that overall, and for each member of the class, the state of Arkansas has the most significant relationship to the parties and subject litigation, and should see its laws applied to these Plaintiffs' claims sounding in tort.

And with that last excursion done, the predominance analysis is finished. Common questions of fact and law predominate over individual issues in this case. All the requirements for class certification under Rule 23(b) are satisfied. Accordingly, Plaintiffs' Motion for Class Certification will be granted.

Turning now to the matter of FLSA collective action certification: other than choice-of-law issues, which obviously are not implicated for this federal-law claim, the issues discussed above are all substantively identical here. As explained above, Plaintiffs intend to use evidence common to all members of the collective action to prove that PAM had "a single, FLSA-violating policy." *Bouaphakeo*, 765 F.3d at 796. This Court has already explained above that federal minimum wage law and Arkansas minimum wage law are substantively identical in all respects pertinent to this Order's analysis. Thus, decertification of the FLSA collective action is inappropriate here, and PAM's Motion to Decertify will be denied.[2]

## IV. CONCLUSION

**IT IS THEREFORE ORDERED** that Plaintiffs David Browne's, Antonio Caldwell's, and Lucretia Hall's Motion for Class Certification pursuant to F.R.C.P. 23 (Doc. 91) is **GRANTED**, and Defendant P.A.M. Transport, Inc.'s Motion to Decertify Conditional Collective FLSA Action (Doc. 84) is **DENIED**.

---

[2] There is one caveat. One set of claims in this case involves alleged failures to pay minimum wage to PAM employees during initial orientation (separate from any alleged failures to pay minimum wage for 24-hour over-the-road shifts). Plaintiffs did not seek Rule 23 certification of these initial-orientation claims, and they concede that their initial-orientation claims should be decertified for purposes of the FLSA collective action. Therefore, their initial-orientation FLSA claims will be decertified.

**IT IS FURTHER ORDERED** that the parties must confer and then provide the Court with an agreed-to form of and plan for notice to class members **by no later than February 8, 2019**.

**IT IS SO ORDERED** on this 25th day of January, 2019.

        */s/ Timothy L. Brooks*
        TIMOTHY L. BROOKS
        UNITED STATES DISTRICT JUDGE