IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

DAVID BROWNE, ANTONIO
CALDWELL, and LUCRETIA HALL,
on behalf of themselves and others
similarly situated                                                      PLAINTIFFS

V.                          CASE NO. 16-CV-5366

P.A.M. TRANSPORT, INC., et al.                                          DEFENDANTS

## MEMORANDUM OPINION AND ORDER

Before the Court is a Motion to Exclude Dr. Steve Viscelli's Expert Report (Doc. 149) filed by Defendant P.A.M. Transport, Inc. ("PAM") and a Brief in Support (Doc. 150). Plaintiffs filed a Response in Opposition (Doc. 172). For the reasons and to the extent discussed below, Defendant's motion is **GRANTED IN PART AND DENIED IN PART**.

## I. BACKGROUND

In its Case Management Order, this Court set the following deadlines for expert witness disclosures: July 22, 2019 for Plaintiffs' initial disclosures and reports; September 6, 2019 for Defendants; and September 30, 2019 for rebuttal experts. (Doc. 104, ¶ 3). These deadlines were ultimately extended to August 12, September 13, and October 14, respectively. On August 12, Plaintiffs disclosed a report by Dr. Robert Speakman, a labor economist who offers an expert opinion on the quantity of damages to which Plaintiffs may be entitled. Dr. Speakman relies on data sets for his calculations, including pay and pay deductions data, DOT driver logs, and load data. *See* Doc. 150-2.

On September 13, PAM disclosed its expert, Dr. Matthew Thompson. Dr. Thompson is also a labor economist, and his report offers several conclusions regarding the reliability of Dr. Speakman's damages calculations. For example, Dr. Thompson

1

concludes that "[i]f hours spent logged in the Sleeper Berth at a secure PAM facility or other secured areas are not compensable, then Dr. Speakman's damage calculations are unreliable." (Doc. 150-3, p. 4). Similarly, Dr. Thompson concludes that "[i]f time spent driving to and from home is not compensable, then Dr. Speakman's damage calculations are unreliable." *Id.* Finally, Dr. Thompson opines that "Dr. Speakman has not done this review [of individual factors that may impact the compensability of time] for any driver on any day[,] rendering his damage calculations unreliable." *Id.*

On October 14, Plaintiffs disclosed Dr. Steve Viscelli as a rebuttal expert. PAM now seeks to exclude Dr. Viscelli's report, opinions, and testimony as untimely, inadmissible, and not appropriate rebuttal. In the alternative, PAM requests time to respond to Dr. Viscelli's report, presumably by offering its own rebuttal expert. Plaintiffs respond that Dr. Viscelli was timely disclosed as a rebuttal expert and is qualified to offer the opinions and testimony contained in his report. However, they do not object to PAM being permitted to offer the expert testimony of Dr. Kristen Backor, whose declaration is attached to PAM's Motion (Doc. 150-7), as long as her testimony is limited to the opinions offered in her declaration and they have the opportunity to depose her in December 2019. *See* Doc. 172, p. 25–26.

## II. LEGAL STANDARD

The decision whether to exclude expert testimony is committed to a district court's discretion—subject, of course, to the Federal Rules of Evidence, including Rule 702. *Johnson v. Mead Johnson & Co., LLC*, 754 F.3d 557, 561 (2014). Rule 702 states that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

2

(b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

The Eighth Circuit applies these elements through a three-part test:

> First, evidence based on scientific, technical, or other specialized knowledge must be useful to the finder of fact in deciding the ultimate issue of fact. This is the basic rule of relevancy. Second, the proposed witness must be qualified to assist the finder of fact. Third, the proposed evidence must be reliable or trustworthy in an evidentiary sense, so that, if the finder of fact accepts it as true, it provides the assistance the finder of fact requires.

*Johnson*, 754 F.3d at 561.

The proponent of expert testimony bears the burden of showing by a preponderance of the evidence that these requirements are satisfied, but "Rule 702 favors admissibility if the testimony will assist the trier of fact, and doubts regarding whether an expert's testimony will be useful should generally be resolved in favor of admissibility." *Clark v. Heidrick*, 150 F.3d 912, 915 (8th Cir.1998) (internal citation and quotation marks omitted). "Only if an expert's opinion is so fundamentally unsupported that it can offer no assistance to the jury must such testimony be excluded." *Hose v. Chi. N.W. Transp. Co.*, 70 F.3d 968, 974 (8th Cir.1995) (internal quotation marks omitted).

Expert rebuttal testimony is offered "solely to contradict or rebut evidence on the same subject matter" discussed by another expert. Fed. R. Civ. P. 26(a)(2)(D)(ii). Its purpose must be to "explain, repel, counteract, or disprove evidence of an adverse party." *United States v. Lamoreaux*, 422 F.3d 750, 755 (8th Cir. 2005). The fact that evidence *could* have been offered in the case-in-chief, and may even have been *more appropriate* during the case-in-chief, "does not preclude the testimony if it is proper both in the case-in-chief and in the rebuttal." *Everett v. S.H. Parks & Assocs.*, 697 F.2d 250, 252 (8th Cir. 1983).

## III. DISCUSSION

### A. Timeliness

As an initial matter, PAM argues that Plaintiffs should have disclosed Dr. Viscelli and his survey in response to interrogatories and requests for production during discovery. However, the dates for disclosure of expert witnesses were established by the Court's Case Management Order, and neither party was required to make such disclosures before the dates set by the Court. Plaintiffs objected to the requests for production on this ground. *See* Doc. 172-2, p. 2. Additionally, though Dr. Viscelli began his research in this case during the summer of 2018, any work product he created before the final report disclosed on October 14 was protected by privilege and Plaintiffs were not required to disclose such preliminary work during discovery. *Simmons Food, Inc. v. Indus. Risk Insurers*, 2015 WL 5679760, at *3 (W.D. Ark. Sept. 25, 2015) ("Rule 26(b)(4)(B) provides that draft reports or disclosures made by retained experts are protected by work-product privilege.").

Therefore, the timeliness of Plaintiffs' disclosure of Dr. Viscelli turns on whether his report is true rebuttal or a mischaracterization of a new expert witness, as PAM contends. The Court finds that Dr. Viscelli's testimony is offered in direct rebuttal of Dr. Thompson's report. In particular, PAM objects to the relevance of two issues addressed by Dr. Viscelli's report, which he labels as issues 4 and 5:

> 4) Is there a reasonable way to construct more precise estimates of drivers' work time than the utilization of the data used by Dr. Speakman, such as by directly asking drivers, in interviews or surveys?
>
> 5) Overall, are Dr. Speakman's assumptions fair in estimating the amount of time over-the-road drivers spend engaged in work duties which benefit PAM and which significantly restrict the drivers' ability to pursue their own personal pursuits?

4

(Doc. 150-1, p. 4). PAM's expert, Dr. Thompson, concluded that Dr. Speakman's calculations were unreliable because he used data provided by PAM rather than conducting an individualized review of drivers' time. Issue 4 and the portions of Dr. Viscelli's report and testimony that are responsive to it serve to rebut or disprove Dr. Thompson's conclusion that the lack of individualized review made Dr. Speakman's calculations unreliable.

Dr. Thompson suggests that drivers may be relieved of responsibility when they are in secure PAM facilities and that time logged in the sleeper berth in such a facility may therefore not be compensable, undermining Dr. Speakman's method of calculating potential damages. (Doc. 150-3, p. 9).[1] He also contends that time spent driving to and from the driver's home may also be inappropriately included in Dr. Speakman's calculation of damages. (Doc. 150-3, pp. 9 & 10).[2] Issue 5 and the related portions of Dr.

---

[1] For example, Dr. Thompson writes,

> At 8:05 PM on 3/13/2019, Mr. Kolman records time under Line 2 – Sleeper Berth. This record lasts until 9:33 AM on 3/14/2019 (almost 13.5 hours later). During this time Mr. Kolman's truck is parked at a PAM Transport yard in Laredo, Texas. It is my understanding that Plaintiffs claim that their Sleeper Berth time is compensable due to the fact that they are always responsible for the truck. If Plaintiffs are relieved of this responsibility during the time in which the truck is parked at a PAM facility, then none of the time recorded while at that facility would be compensable under Plaintiffs' theory. Dr. Speakman makes no distinction between the Line 2 – Sleeper Berth time recorded at a PAM facility versus time recorded anywhere else. In fact, all of Mr. Kolman's Line 2 – Sleeper Berth time on 3/13/2019 – 3/14/2019 contributes to Dr. Speakman's associated damage estimates.

(Doc. 150-3, pp. 7–8).

[2] For example, Dr. Thompson continues,

Viscelli's report are directly responsive to these arguments in Dr. Thompson's report. Thus, the questions posed to Dr. Viscelli are directly responsive to the challenges Dr. Thompson raises to Dr. Speakman's reports, and Dr. Viscelli's responses are intended to rebut, explain, or disprove Dr. Thompson's assertions.

PAM also objects to Sections IV and V of Dr. Viscelli's report, arguing that those sections do not rebut anything in Dr. Thompson's report. Section IV describes the driver survey that Dr. Viscelli conducted in Summer 2018 "only to demonstrate that reliance on drivers' memories as to their work time will not produce a more precise estimate of work time" than Dr. Speakman's approach. (Doc. 150-1, p. 8). Dr. Thompson opined that "an individual review of each driver on each day would be required to appropriately assess damages or to determine whether a minimum wage violation occurred." (Doc. 150-3, p. 4). Therefore, Plaintiffs are permitted to offer Dr. Viscelli's rebuttal conclusion, based on

---

> Mr. Kolman went from the PAM facility in Irving, Texas and drove home on the morning of 3/15/2019, but all of the time spent logged under Line 3 – Driving and Line 4 – On-Duty (not Driving) is included in Dr. Speakman's estimates of compensable work time under each of his various damages calculations. Mr. Kolman's house does not appear to be directly along the route that he drives while driving for Pam.

(Doc. 150-3, p. 9). Dr. Thompson adds that this conduct "is not particularly unique for Mr. Kolman." (Doc. 150-3, p. 10). Another week

> begins with Mr. Kolman at home following a week logged at home in Line 1 – Off Duty. On 10/17/2016, he leaves home and heads north towards Lewisville. Based on the Load data for this week, Mr. Kolman does not have an active load as he leaves home and makes his way towards Lewisville. All of the time logged in Line 3 – Driving on this day is counted as compensable work time by Dr. Speakman, even the time spent traveling to pick up the first load of the day.

*Id.*

his own efforts at individual review, that a survey did not provide a more precise estimate of damages than Dr. Speakman's calculations.

Section V of Dr. Viscelli's report provides background information regarding the nature of drivers' work and time-recording policies and practices. *See* Doc. 150-1, pp. 9–15. Again, it is clear that this information is offered to explain why such time logged as spent in the sleeper berth or off duty may be compensable. It rebuts Dr. Thompson's assertions that Dr. Speakman's calculations are unreliable because they may include the time that drivers are in secure PAM facilities or are driving to or from their homes in their trucks. Dr. Viscelli uses his specialized knowledge of the trucking industry to provide an opinion on how workers are likely occupied while they are parked in the secure PAM facility, for example, or how allowing them to park their trucks at their homes can be considered to be for the benefit of PAM. *See* Doc. 150-1, pp. 10–14.

PAM attempts to argue that Dr. Viscelli's report is analogous to reports in other cases that were held to be inadmissible. For example, PAM directs the Court to *Wegener v. Johnson*, in which the Eighth Circuit affirmed the district court's decision to exclude supplemental testimony offered as rebuttal evidence. 527 F.3d 687 (8th Cir. 2008). In *Wegner*, the defendant's expert entered a supplemental report and plaintiff's expert sought to enter one as well. The court found that nothing in the plaintiff's supplemental testimony was rebuttal of the defendant's *supplemental* report, but only of assertions made the defendant expert's initial report, and the supplement was therefore untimely. *Id.* at 691–92. Here, in contrast, Dr. Viscelli's report is directly responsive to Dr. Thompson's report and is offered within the period set by the Court for rebuttal expert witness disclosure. Therefore, *Wegener* does not instruct the Court on this matter.

PAM also offers another case involving Plaintiffs' counsel in which the Eighth Circuit reversed the district court's decision to modify the scheduling order and permit a supplemental report despite the fact that it was otherwise untimely. *Petrone v. Werner Enters., Inc.*, 940 F.3d 425 (8th Cir. 2019). In *Petrone*, the process of defendants vetting the plaintiffs' expert "revealed considerable flaws in the methodology" used by the expert to calculate damages. *Id.* at 432. Plaintiffs sought to correct these errors, of which they had not been aware until they were highlighted by defendants, through a supplemental report from their expert, which the Eighth Circuit held must be rejected because "[p]laintiffs' expert was materially altering, not merely clarifying his original report" and there was no good cause for the delay in doing so. *Id.* at 434. Here, however, Dr. Viscelli's report is not offered to correct any errors or materially alter Dr. Speakman's report. Instead, it is offered to reinforce Dr. Speakman's report by rebutting the flaws Dr. Thompson's report attempts to highlight. This is the appropriate role of a rebuttal report. Since *Petrone* deals with an untimely corrective supplemental report, not a rebuttal report, it is not relevant to the Court's deliberations here.

Thus, the Court concludes that Dr. Viscelli's report is offered as permissible rebuttal to Dr. Thompson's report, not as an untimely addition to the case-in-chief. The disclosure of Dr. Viscelli was not untimely and his report and testimony are admissible.

### B. Qualifications and Reliability

PAM also challenges the admissibility of Dr. Viscelli's report by arguing that he is not an expert in survey design and interpretation, his survey and any conclusions drawn from it are unreliable, and he offers impermissible legal or factual conclusions that are the responsibility of the judge and jury. Specifically, PAM objects to the three conclusions of

Dr. Viscelli's report. *See* Doc. 150-1, p. 5. PAM asserts that Dr. Viscelli's first conclusion regarding what "data clearly indicates" is based on the data from his survey. However, reading the sentence in the context of the entire paragraph makes clear that "data" refers to messaging and log data and depositions rather than the survey results. *Id.* This makes sense since Dr. Viscelli's testimony regarding his driver survey is intended to *discredit* survey-taking as a viable strategy for assessing damages in this case. Dr. Viscelli's admissibility as a trucking industry expert is not disputed, *see* Doc. 150, p. 12, and he can reach his first conclusion based on his industry expertise and the data he reviewed, which does not include his own survey data.

Dr. Viscelli's second conclusion is more directly related to his qualifications to opine on surveys. In reviewing Dr. Viscelli's CV and deposition testimony, the Court finds that his background, education, and experience are sufficient to allow him to opine on the subject of the survey he conducted in relation to this litigation and the conclusions he believes can be drawn from the survey. In pursuing his doctoral degree, Dr. Viscelli completed extensive coursework in qualitative interviews, surveys, and statistical analysis. (Doc. 150-6, 30:4–20). As a lecturer at the University of Pennsylvania, he teaches a course on qualitative methods that covers research design and interviewing. (Doc. 150-1, p. 37). He has conducted two other similar surveys in the course of his academic research. (Doc. 150-6, 28:5–17). These qualifications are sufficient for Dr. Viscelli to conduct a study and offer his interpretation of his findings to the jury.

PAM also argues that flaws in the design and execution of Dr. Viscelli's survey make it unreliable and inadmissible. PAM submits a declaration from Dr. Kristen Backor asserting, for example, that the survey population is biased; questions are repetitive,

contain logical errors, are leading, and engender acquiescence bias or confusion; and the use of a slider scale with an outer limit skews the results. (Doc. 150-7). However, after examining the survey, the Court does not believe "it is so fundamentally flawed and devoid of scientific validity that it lacks probative value" on the issue of whether a driver survey was a superior method for calculating Plaintiffs' damages. *Zetor N. Am., Inc. v. Rozeboom*, 2018 WL 3865411, at *17 (W.D. Ark. Aug. 14, 2018). For example, it was not unreasonable for Dr. Viscelli to use the FLSA opt-in class members as his survey population since its purpose was to see if a driver survey could accurately assess class damages. Even though Dr. Backor might have structured some questions differently, Dr. Viscelli made reasonable choices in structuring the survey as he did.

Ultimately, PAM's arguments challenge the reliability of the survey as a factual basis for Dr. Viscelli's opinion regarding the usefulness of a driver survey. However, "the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination." *Loudermill v. Dow Chem. Co.*, 863 F.2d 566, 570 (8th Cir. 1988). Only if "an expert opinion is so fundamentally unsupported that it can offer no assistance to the jury" should that testimony be excluded. *Id.* Dr. Viscelli's conclusion is sufficiently supported by his survey, and his testimony on the matter will be admitted. PAM may use its opportunity to cross-examine him to highlight any credibility issues for the jury.

Finally, PAM argues that Dr. Viscelli's third conclusion infringes on the role of the jury to determine credibility by endorsing Dr. Speakman's assumptions and calculations. To support this argument, PAM directs the Court to several cases that are inapplicable to the current context. First, PAM cites two cases that address only whether experts may

offer *legal* conclusions. *See United States v. Klaphake*, 64 F.3d 435, 438–39 (8th Cir. 1995) ("[I]t was not proper for [the expert] to testify concerning the legality of the trust arrangement. As a general rule, questions of law are the subject of the court's instructions and not the subject of expert testimony." (internal quotations marks omitted)); *S. Pine Helicopters, Inc.*, 320 F.3d 838, 841 (8th Cir. 2003) (criticizing the admission of expert testimony "opining as to whether [the plaintiff] had violated FAA regulations" because "expert testimony on legal matters is not admissible"). PAM does not cite, nor does the Court find, inappropriate legal conclusions in Dr. Viscelli's report.

Next, PAM directs the Court to *Rottlund Co. v. Pinnacle Corp.*, holding that expert opinion on an ultimate issue of fact should have been excluded because it "added nothing helpful to the jury's consideration" of the issues of fact. 452 F.3d 726, 732 (8th Cir. 2006). Rule 704 permits expert testimony "embracing an ultimate issue," but not "on a question which the jury was entirely capable of answering without the benefit of expert opinion." *Id.* Accord *Hinkle v. LaRoche*, 2008 WL 5453779, at *3 (E.D. Wash. Aug. 1, 2008) ("If the issues in the case are ones that jurors can understand and evaluate through their own knowledge and experience, expert testimony is not needed and should be excluded."). Here, in contrast, Dr. Viscelli offers his professional opinion, rooted in his specialized knowledge as an expert, to concur in the conclusions of another expert. The Court does not find, nor has PAM directed it to, any opinions on issues of fact or credibility that are not informed by Dr. Viscelli's expertise and offered in his role as a rebuttal expert witness.

The Court concludes that Dr. Viscelli is qualified to offer his opinion on all topics covered by his report, and his report is sufficiently reliable and offers appropriate conclusions. It is therefore admissible.

### C. PAM's Opportunity to Respond

If its motion to exclude Dr. Viscelli is denied, PAM requests in the alternative that it be permitted to respond to his report because PAM is prejudiced by this unjustified and untimely disclosure. The disclosure of Dr. Viscelli's expert testimony was not untimely, however, and cannot be considered to have prejudiced PAM or entitled PAM to relief. Nor has PAM described the type of "response" it would like to offer. However, PAM did attach the Declaration of Dr. Kristen Backor to the instant motion (Doc. 150-7), and Plaintiffs have indicated that they would not object if PAM wished to offer Dr. Backor as a sur-rebuttal expert witness, so long as her testimony was limited to the content covered by her Declaration and Plaintiffs were given the opportunity to timely depose her. Since the 30-day window prescribed by Rule 26(a)(2)(D)(ii) for disclosure of rebuttal witnesses has passed, PAM will not be permitted to offer any other rebuttal witness, but since Plaintiffs have given their consent, PAM may have Dr. Backor testify to the extent of her Declaration. PAM must make her available for deposition no later than January 17, 2020.

### IV. CONCLUSION

Therefore, PAM's Motion to Exclude Expert Report (Doc. 149) is **GRANTED IN PART AND DENIED IN PART**. No portion of Dr. Viscelli's expert report will be excluded, but PAM will be permitted to offer Dr. Kristen Backor as a further rebuttal witness, subject to the limitations described above.

**IT IS SO ORDERED** on this 16th day of December, 2019.

TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE