IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

DAVID BROWNE, ANTONIO
CALDWELL, and LUCRETIA HALL,
on behalf of themselves and others
similarly situated                                                                                    PLAINTIFFS

V.                                       CASE NO. 16-CV-5366

P.A.M. TRANSPORT, INC., et al.                                                                  DEFENDANTS

## MEMORANDUM OPINION AND ORDER

Before the Court is a Motion for Summary Judgment on the Claims of Named Plaintiff Antonio Caldwell and Opt-In Plaintiffs Based on Estoppel (Doc. 151) and a Memorandum Brief (Doc. 152) and Statement of Facts in Support (Doc. 153) by P.A.M. Transport ("PAM") and John Doe Defendants (collectively, "Defendants"). Plaintiffs filed a Response (Doc. 169), and Defendants filed a Reply (Doc. 179). The matter is now ripe for decision. For the following reasons, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' Motion for Summary Judgment (Doc. 151).

### I. BACKGROUND

Defendants seek summary judgment against Named Plaintiff Antonio Caldwell and forty-eight Opt-In Plaintiffs on the basis of judicial estoppel. PAM previously raised this argument in its Motion for Judgment on the Pleadings. (Doc. 56). In its ruling, the Court denied the motion without prejudice, holding that the question was fact-intensive and not appropriate for a Rule 12(c) motion. (Doc. 82, p. 13).

Mr. Caldwell and his wife filed a Chapter 13 bankruptcy petition and proposed plan in the Eastern District of Arkansas on June 20, 2014. He then made at least four amendments to this proposed plan before the plan was confirmed by the bankruptcy court

1

in April 2015. Mr. Caldwell submitted two more amendments to the bankruptcy plan in May 2015, and the bankruptcy court confirmed an amended plan on June 3, 2015. In August of that year, Mr. Caldwell began working for PAM. He was employed by PAM for a little more than five months, ending his employment in late January 2016. On December 9, 2016, Mr. Caldwell and fellow Named Plaintiffs David Browne and Lucretia Hall initiated this action. Mr. Caldwell submitted another modified plan in his bankruptcy proceeding in August 2017, adding a new creditor, but did not inform the bankruptcy court that this case had been filed. In November of that year, Mr. Caldwell disclosed his bankruptcy proceeding in response to Defendants' interrogatories. His modified bankruptcy plan was confirmed by the bankruptcy court on January 31, 2018. Throughout this period, Mr. Caldwell also submitted amended schedules to the bankruptcy court but did not indicate that he had initiated this litigation. In May 2018, PAM filed its Motion for Judgment on the Pleadings in which it first raised the issue of judicial estoppel. On June 26, 2018, Mr. Caldwell filed an amended Schedule A/B in his bankruptcy case, listing for the first time the instant "lawsuit for unpaid wages and liquidated damages" under category 21 of personal property, "other contingent and unliquidated claims of every nature." (Doc. 169-6). He indicated that the current value of his interest is "unknown." *Id.* As of the writing of this opinion, Mr. Caldwell's bankruptcy proceeding remains active.

## II. LEGAL STANDARD

"Judicial estoppel is an equitable doctrine invoked by a court at its discretion" in order to "prevent improper use of judicial machinery." *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001). Courts invoke judicial estoppel "to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the

2

exigencies of the moment." *Id.* at 749–50 (internal quotation marks and citations omitted). "The circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation of principle." *Id.* However, the Supreme Court offers three factors to consider in determining whether to apply the doctrine:

> First, a party's later position must be clearly inconsistent with its earlier position. Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled. Absent success in a prior proceeding, a party's later inconsistent position introduces no risk of inconsistent court determinations, and thus poses little threat to judicial integrity. A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

*Id.* at 750–51 (internal quotation marks and citations omitted). The Eighth Circuit has cautioned that "[c]ourts should only apply the doctrine as an extraordinary remedy when a party's inconsistent behavior will result in a miscarriage of justice." *Stallings v. Hussmann Corp.*, 447 F.3d 1041, 1049 (8th Cir. 2006).

### III. DISCUSSION

### A. Named Plaintiff Caldwell

The Court first turns to the matter of judicial estoppel as to Named Plaintiff Antonio Caldwell. Both parties have provided the Court with copies of documents from Mr. Caldwell's bankruptcy proceedings, and the Court finds it appropriate to take judicial notice of these filings as public records. *See Bazzelle v. Compasspointe Healthcare System*, 2016 WL 6832643, at *2 (W.D. Ark. Nov. 18, 2016) (so holding in the context of a Rule 12(c) motion for judgment on the pleadings).

3

## 1. Inconsistent Positions

The Court first considers whether Mr. Caldwell has taken inconsistent positions in his bankruptcy proceeding and before this Court. Defendants assert that because Mr. Caldwell failed to disclose this action on the modified plan confirmed by the bankruptcy court after this litigation began and did not update his Schedule A/B until after Defendants brought the matter to his attention, he has taken the position before the bankruptcy court that this action does not exist while he attempts to litigate it here, a clearly inconsistent position. In support, Defendants direct the Court to multiple cases in which the Eighth Circuit has agreed with a lower court that a plaintiff took inconsistent positions in his or her bankruptcy proceeding and before the district court. *See Stallings*, 447 F.3d at 1049 (bankruptcy petitioner's "failure to amend his bankruptcy schedules to include his [post-petition] claim against [his employer] represented to the bankruptcy court that no such claims existed," and his position was inconsistent with his subsequent filing of those claims in federal district court); *see also Van Horn v. Martin*, 812 F.3d 1180, 1183 (8th Cir. 2016) (same); *Jones v. Bob Evans Farms, Inc.*, 811 F.3d 1030, 1033 (8th Cir. 2016) (same); *E.E.O.C. v. CRST Van Expedited Inc.*, 679 F.3d 657, 679 (8th Cir. 2012) (same). In each of these cases, however, the plaintiff ultimately had his or her bankruptcy discharged or dismissed without having ever amended the relevant schedules. *See Stallings*, 447 F.3d at 1045; *Van Horn*, 812 F.3d at 1182; *Bob Evans*, 811 F.3d at 1032; *CRST*, 679 F.3d at 678. Here, in contrast, Mr. Caldwell's opportunity to amend his bankruptcy filings has not passed—his bankruptcy proceedings are ongoing. In fact, in June 2018, Mr. Caldwell filed an updated Schedule A/B reflecting his participation in this

litigation, so his position before the bankruptcy court is *not* inconsistent with his position in this case.

Defendants argue that since Mr. Caldwell did not update his Schedule A/B until Defendants filed their first motion seeking judicial estoppel, he cannot be deemed to have "cured" his earlier omission. This, Defendants argue, would reward Mr. Caldwell's gamesmanship in waiting until he was "caught" by Defendants to update his bankruptcy filings. The Eighth Circuit has observed that "determining whether a litigant is playing fast and loose with the courts has a subjective element and its resolution draws on the trier's intimate knowledge of the case at bar." *Stallings*, 447 F.3d at 1046 (modifications adopted). The Court is confident that neither Mr. Caldwell nor his attorneys are engaged in such impermissible conduct. For example, Mr. Caldwell disclosed his pending bankruptcy proceedings in response to Defendants' interrogatories back in November 2017. If Mr. Caldwell were attempting to hide his ongoing wage-and-hour claim from the bankruptcy court, it would also make sense to conceal his bankruptcy proceeding from Defendants to avoid exactly the situation that has arisen here.

The Bankruptcy Code does not set deadlines for a petitioner to amend her filings with a post-petition legal claim. Nor was Mr. Caldwell subject to an explicit instruction from the trustee to report "lawsuits that were 'received or receivable' during the term of [the] plan," as the petitioners were in *Bob Evans*. 811 F.3d at 1032. Defendants do not offer any Eighth Circuit case holding that a plaintiff cannot cure the omission of a post-petition cause of action by amending her bankruptcy filings before discharge, and this Court declines to exercise its discretion to reach such a holding. Since Mr. Caldwell's bankruptcy has not yet been dismissed or discharged, he was permitted to amend his

filings, and he has done so. Therefore, the Court does not find that he has taken inconsistent positions.

## 2. Judicial Acceptance

Even if the Court were to find that Mr. Caldwell's failure to earlier amend his filings constituted a position inconsistent with this litigation, the Court does not find that the bankruptcy court "accepted" Mr. Caldwell's earlier position. Defendants cite to two cases from the Eastern District of Arkansas for the proposition that a court confirming a petitioner's Chapter 13 Plan constitutes acceptance for the purposes of judicial estoppel. *Funk v. Labor Ready, Inc.*, 2008 WL 4368946 (E.D. Ark. Sept. 24, 2008); *Small v. Ark. Fair Housing Comm'n*, 2007 WL 433565 (E.D. Ark. Feb. 6, 2007). In both of these cases, however, the plaintiff's cause of action accrued *before* he or she filed a bankruptcy petition, and the standard forms required the petitioner to disclose it at the time of filing. When the cause of action accrues *after* the bankruptcy petition is filed, in contrast, there is no specific timeline on which the schedules or the plan must be amended, and the petitioner can continue to update the schedules and plan throughout the multi-year bankruptcy process. In Mr. Caldwell's case, for example, it appears that he has amended his plan at least seven times since filing for bankruptcy and submitted amended schedules more than a dozen times. *See* Doc. 169-5.

Given the ease and frequency with which a petitioner can modify her bankruptcy filings, it makes sense that when the cause of action arises *after* the bankruptcy petition, the Eighth Circuit has only found judicial acceptance of an inconsistent position when the bankruptcy is *discharged* without the cause of action having been disclosed. *See Van Horn*, 812 F.3d at 1183; *Bob Evans*, 811 F.3d at 1033. In fact, the Eighth Circuit

6

specifically found "no judicial acceptance of [plaintiff's] inconsistent position [where] the bankruptcy court never discharged [his] debts based on the information that [he] provided in his schedules." *Stallings*, 447 F.3d at 1049. *See also CRST*, 679 F.3d at 679–80 (contrasting the plaintiffs' receipt of a full discharge with the facts in *Stallings*). Similarly here, the Court believes that even if Mr. Caldwell had taken an inconsistent position, there has not been judicial acceptance of that position simply because the bankruptcy court confirmed a modified plan that did not list this lawsuit. There was no specific deadline by which Mr. Caldwell was required to update his bankruptcy filings. He was permitted to file multiple amendments to both the plan and the schedules over the course of the bankruptcy, and indeed has done so, including an amended Schedule A/B to reflect this lawsuit, and his bankruptcy has not yet been discharged. Mr. Caldwell cannot be said to have had a "success" in his bankruptcy proceedings that creates a "risk of inconsistent court determinations" or "the perception that either . . . court was misled." *New Hampshire*, 532 U.S. at 750–51. Therefore, the Court finds that there was no judicial acceptance, even if Mr. Caldwell had taken inconsistent positions before this Court and the bankruptcy court.

### 3. Unfair Advantage

Finally, the Court cannot conclude that Mr. Caldwell has received any unfair advantage from waiting approximately eighteen months before disclosing post-petition litigation in his bankruptcy proceedings. The Eighth Circuit admonishes that

> judicial estoppel does not apply when a debtor's prior position was taken because of a good-faith mistake rather than as part of a scheme to mislead the court. Although it may generally be reasonable to assume that a debtor who fails to disclose a substantial asset in bankruptcy proceedings gains an advantage, the specific facts of a case may weigh against such an inference. A rule that the requisite intent for judicial estoppel can be inferred

7

> from the mere fact of nondisclosure in a bankruptcy proceeding would unduly expand the reach of judicial estoppel in post-bankruptcy proceedings and would inevitably result in the preclusion of viable claims on the basis of inadvertent or good-faith inconsistencies.

*Stallings*, 447 F.3d at 1049 (internal quotation marks and citations omitted and modifications adopted). The *Stallings* court offers the example of someone who receives a right-to-sue letter from the Equal Employment Opportunity Commission ("EEOC") after filing for bankruptcy and does not amend the bankruptcy petition accordingly as someone with a "motive to conceal" those claims. *Id.* at 1048. Importantly, however, the *Stallings* court did not extend that reasoning to the situation before it, in which the plaintiff's FMLA claim accrued after he filed for bankruptcy, because he had not received an indication that he had "a viable claim" against his employer. *Id.* at 1049. In *Bob Evans* and *Van Horn*, the plaintiffs had received right-to-sue letters from the EEOC and the courts were applying this language from *Stallings*. See 811 F.3d at 1034; 812 F.3d at 1183. *See also Bazzelle*, 2016 WL 6832642, at *4.

Additionally, in *Bob Evans*, *Van Horn*, and *Bazzelle*, in contrast with *Stallings*, the petitioner received a discharge of debt without having disclosed the civil claim, thereby denying creditors access to the proceeds of any potential settlement. *See* 811 F.3d at 1032; 812 F.3d at 1182; 2016 WL 6832642, at *1. Here, in contrast, Mr. Caldwell has not received any discharge. He continues to make monthly payments pursuant to his bankruptcy plan. He continues to be subject to monitoring by the bankruptcy trustee, who could direct Mr. Caldwell to modify his plan based on developments in this case if appropriate. *See Francis v. Ark. Blue Cross & Blue Shield*, 2007 WL 1965393, at *3 (E.D. Ark. July 2, 2007) ("The bankruptcy court has now been advised of this lawsuit, albeit after the fact. Further, in the event of a recovery, the bankruptcy trustee will have the

option to distribute any recovery in excess of the statutory exemption to Plaintiff's creditors (assuming they file a claim)."); *Ginardi v. Frontier Gas Servs., LLC*, 2012 WL 136269, at *3 (E.D. Ark. Jan. 18, 2012) ("[Plaintiffs'] delay in disclosing does not put Defendant at an unfair advantage. Furthermore, the bankruptcy court is now advised of this case and can modify the Chapter 13 plan as it sees fit. Therefore, . . . the doctrine of judicial estoppel is not appropriate in this case."). The trustee did not require Mr. Caldwell to modify his bankruptcy plan after he disclosed this litigation in his amended Schedule A/B in June 2018, indicating that Mr. Caldwell's monthly payments would not have been affected by earlier disclosure of this suit. In fact, even Defendants acknowledge that "if the debtor discloses the claim during the bankruptcy, the trustee will acquire the power and right to determine, in the first instance, how to attempt to turn the claim into cash that can then be used to pay creditors." (Doc. 152, p. 16). That is exactly what has happened here, and the Court cannot find any evidence that Mr. Caldwell received an unfair advantage from the delay in amending his Schedule A/B such that justice requires he be estopped from pursuing this claim. It has been disclosed during the pendency of the bankruptcy, and the trustee may now take any measures he believes are necessary to provide compensation to Mr. Caldwell's creditors.

### B. Opt-In Plaintiffs

#### 1. Waiver

Defendants identify forty-eight Opt-In Plaintiffs whose bankruptcy proceedings overlapped with their involvement in this litigation and against whom Defendants assert that judicial estoppel is also appropriate. Plaintiffs respond that while Defendants raised estoppel as an affirmative defense against *Named* Plaintiffs' claims, they did not raise it

9

in reference to *Opt-In* Plaintiffs and have therefore waived judicial estoppel as an affirmative defense.[1]

Failure to plead an affirmative defense generally means that a defendant has waived that defense. However, the Eighth Circuit has held that this is not a hard and fast rule and that the "Rule 8(c) pleading requirement is intended to give the opposing party both notice of the affirmative defense and the opportunity to rebut it." *First Union Nat'l Bank v. Pictet Overseas Trust Corp.*, 477 F.3d 616, 622 (8th Cir. 2007). Here, though Defendants did not explicitly raise the affirmative defense of estoppel with regard to the claims of Opt-In Plaintiffs in the Amended Answer, they did raise this defense in the Motion for Judgment on the Pleadings filed in May 2018. (Doc. 57). Plaintiffs did not raise the issue of waiver at that time but responded on the merits of the motion and requested time to respond more substantively. (Doc. 68, pp.16–19). In its ruling, the Court dismissed Defendants' motion without prejudice, allowing them to raise the argument again later. Plaintiffs therefore do not face unfair surprise, inadequate notice, or prejudice now that Defendants raise the same argument at the summary judgment phase. Defendants' failure to explicitly plead the affirmative defense of estoppel against the Opt-In Plaintiffs is not fatal.

### 2. Judicial Estoppel

The bankruptcy proceedings of the Plaintiffs identified in Defendants' motion appear to be in various postures: some are active, some have been dismissed, and some

---

[1] The relevant paragraph of the Amended Answer reads, "Named Plaintiffs' claims are barred in whole or in part by the doctrines of release, waiver, deduction, setoff, and estoppel." (Doc. 141, p. 25). Other affirmative defenses are raised as to "Plaintiffs' claims" or "putative Plaintiffs." *See, e.g., id.* at p. 23.

discharged; additionally, some Plaintiffs filed for bankruptcy before opting in to this lawsuit, and some filed after.[2] Judicial estoppel is appropriately applied to Plaintiffs who had debt discharged by the bankruptcy court without having disclosed their participation in this litigation. The Eighth Circuit's holdings in *Bob Evans* and *Van Horn* make clear that having debt discharged by the bankruptcy court without disclosing a cause of action, even if the cause of action accrued after the bankruptcy petition was filed, is the acceptance of an inconsistent position and an unfair advantage to the plaintiff. *See* 811 F.3d at 1033–34; 812 F.3d at 1183. If the claim had been disclosed, "the bankruptcy trustee could have moved the bankruptcy court to order [the plaintiff] to make the proceeds from any potential settlement available to his unsecured creditors" to whom the plaintiff's liability was ultimately discharged. 812 F.3d at 1183 (internal quotation marks omitted).

Opt-In Plaintiffs who filed for bankruptcy *before* opting into this lawsuit and have active cases are still able to amend their bankruptcy filings to disclose their participation in this litigation. Unless and until their cases are discharged, they have not yet had an inconsistent position accepted by a court and received an unfair advantage from their failure to disclose. Therefore, the doctrine of judicial estoppel is not appropriately applied to any Opt-In Plaintiff who filed bankruptcy before joining this suit and whose proceeding remains open to submit an amended Schedule A/B or Schedule B, unless there is other evidence of unfair advantage to the Plaintiff or intent to mislead the bankruptcy court.

Where a Plaintiff filed for bankruptcy *after* opting into the litigation, she was required to disclose her participation at the time she filed for bankruptcy. If she failed to

---

[2] Since, as discussed above, the Court will take judicial notice of public records, including bankruptcy filings, Plaintiffs' objection to the material Defendants offer in support of their Motion is moot.

11

comply with this requirement, she took an inconsistent position. Again, however, this Court declines to exercise its discretion to hold that, given a bankruptcy petitioner's ability to amend her filings, something short of a discharge constitutes "acceptance" of her position by the bankruptcy court for the purposes of estoppel. Without evidence of intent to mislead the bankruptcy court or unfair advantage, the Court will not find a Plaintiff estopped who has not had her bankruptcy discharged, even if her bankruptcy was filed after she opted into this litigation.

Finally, Plaintiffs who have had their bankruptcies dismissed without a discharge of debt also are not subject to judicial estoppel. Even if a Plaintiff never disclosed her participation in this suit, if her bankruptcy was dismissed, the court never adopted any position taken by the Plaintiff and she never received any benefit from the bankruptcy proceeding that would constitute an unfair advantage. *See Stallings*, 447 F.3d at 1049.

Based on this discussion of when judicial estoppel is and is not appropriate, the parties are directed to examine the relevant bankruptcy filings and determine the Plaintiffs to whom the doctrine of judicial estoppel is applicable. The parties should then file joint supplemental briefing indicating which Opt-In Plaintiffs they agree should be estopped. To the extent that the parties cannot discern or agree whether judicial estoppel is applicable to a particular Opt-In Plaintiff based on the Court's discussion above, the parties are directed to separately brief the issues and file the applicable records so that the Court may rule. Any briefing the parties wish to file on this matter is due no later than January 10, 2020.

## IV. CONCLUSION

Therefore, Defendants' Motion for Summary Judgment (Doc. 151) is **GRANTED IN PART AND DENIED IN PART**.

**IT IS SO ORDERED** on this 31st day of December, 2019.

/s/ Timothy L. Brooks
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE