# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF ARKANSAS

| | |
|---|---|
| **DAVID BROWNE, et al.,** | |
| **Plaintiffs,** | |
| **vs.** | |
| **P.A.M. TRANSPORT, INC, et al.** | **Case No. 5:16-cv-05366-TLB** |
| **Defendants.** | |

## PLAINTIFFS' OMNIBUS MOTION IN LIMINE

# TABLE OF CONTENTS

1.  Defendant should not be permitted to enter into evidence or rely on any document in defense that it did not produce in discovery unless it is solely for impeachment............... 1

2.  References that Drivers Intentionally or Negligently mis-logged their time in violation of PAM's alleged practices. .................................................................................................. 3

3.  References that any driver violated the DOT regulations, federal regulations, or federal law in relation to how any driver logged his or her time.......................................................... 4

4.  Introducing into evidence or showing to any witness or the jury a copy of the FMCSA Regulations and Handbook. ............................................................................................... 5

5.  References regarding "personal" activities pursued while inside a truck's sleeper berth. . 6

6.  References that it is the drivers' responsibility that PAM failed to maintain accurate records of the hours drivers worked. ............................................................................................ 9

7.  Opinions of Dr. Thompson that Challenge the Sufficiency of the Log Data as a Basis for Challenging Dr. Speakman's Calculations. ..................................................................... 10

8.  Limiting Thompson's Log Audit Analysis to the Audits Disclosed in his September 13, 2019 Report...................................................................................................................... 11

9.  Reference to any Plaintiff not Participating in Discovery, and reference to this Court's Order to Show Cause sanctioning certain Plaintiffs. ....................................................... 12

10. Reference that any Plaintiff did not disclose this action in bankruptcy or may be subject to an order to show cause or judicial estoppel. .................................................................... 13

11. References to the annual salary earned by Drivers and the weekly amounts earned by Drivers in weeks for which Plaintiffs are not seeking damages should be excluded. ...... 14

12. References to any driver's decision and motivation for opting out. ................................ 16

13. References to any driver's decision and motivation for not opting in. ............................ 16

14. References regarding PAM's passenger program, the number of drivers who allegedly participated, and any specific driver who allegedly participated.................................... 17

15. References regarding any non-disclosed audits and extended audits allegedly performed by any lay witness. .............................................................................................................. 18

16. Evidence or Argument that is Contrary to Testimony Provided in Defendant's Binding Designee Depositions...................................................................................................... 18

17. References that Drivers were not available for dispatch when driver status table shows drivers as available.......................................................................................................... 19

18.   References to Legal Authority Issued by the Arkansas or U.S. Dept. of Labor or Other Legal Authority. ................................................................................................... 22

19.   References to the Criminal Record of any Plaintiff, including Convictions, Indictments, Complaints, or Arrests. .................................................................................. 25

20.   References to the Involvement of any Plaintiff in a prior civil lawsuit, including any bankruptcy. ............................................................................................................. 26

21.   Performance or Disciplinary Actions Concerning Any Drivers & Drivers' Job Performance ............................................................................................................. 27

22.   References that a Class-Wide Verdict Requires a Finding that "all" Class Members were Injured or that the Jury determine all drivers are similarly situated. ............................... 27

23.   References to Non-Wage Benefits Such as Health Insurance, 401(k) contributions, life insurance, workers' compensation insurance, and tuition reimbursement. ..................... 29

24.   References to Liquidated Damages, Prejudgment Interest, Attorney's fees, and costs. .... 30

25.   References that Drivers Agreed to not be Paid for non-driving time. ............................. 31

26.   Exclusion of Evidence that Drivers Agreed to PAM's Pay Policies ............................... 32

27.   References regarding PAM's late payments and allegations that the late payments are the premise of the lawsuit or the fault of the driver. ............................................................... 32

28.   Precluding or Limiting Testimony from Phillip, Garrison, Johnson, and Piazza. ............ 33

29.   References to the Pay or Employment Practices of Other Trucking Companies ............. 35

30.   References to "Industry Practice" or "Industry Custom" ............................................... 35

31.   References that Drivers or Counsel are From Out of Town ............................................ 36

32.   References Regarding any Alleged Profitability or Lack Thereof of Defendant's Operations and/or Defendant's Training Program ........................................................... 36

33.   References Regarding Defendant's On-Boarding and Hiring Costs Associated with Hiring a Driver ................................................................................................................ 37

34.   References regarding experience drivers gain at PAM ................................................... 37

35.   References Regarding the "Impact" of a Verdict on PAM, shareholders of PAM, employees of PAM, or the transportation industry. ......................................................... 37

36.   References to Settlement Offers or Offers of Judgment ................................................. 38

*37.*    References that Class Counsel were Counsel in Prior FLSA Class Action Lawsuits, Against Trucking Companies, Including *Estes et al. v. PAM Transport* ...................................... 38

38.    References that Class Actions are bad for business, bad for Defedant's business, bad for the economy, or bad public policy. ................................................................................... 39

39.    References Regarding the Negative Impact of Lawsuits Generally, Attorney-Driven Lawsuits, Class-Action Lawsuits, or Other Lawsuits Filed by Plaintiffs' Counsel on Behalf of Plaintiffs' or Other Clients ........................................................................................... 39

40.    References that Plaintiffs' Counsel is responsible for the lawsuit. .................................. 40

41.    References Regarding Whether PAM is a "Bad" or "Good" Company or Whether PAM's Drivers Enjoy Their Jobs ................................................................................................. 40

42.    References to the *Estes v. PAM Transport* lawsuit, other than the allegations made in it, when it was filed, and when it resolved. ......................................................................... 40

43.    The Court should preclude Defendant from introducing "cherry-picked" Interrogatory Responses unless Plaintiff is permitted to introduce the Interrogatory Responses of the entire Discovery Sample selected by Defendant. ............................................................ 41

1.      **Defendant should not be permitted to enter into evidence or rely on any document in defense that it did not produce in discovery unless it is solely for impeachment.**

Though fact discovery ended last summer, and Defendant's Rule 26 disclosures were due long before then, Defendant has placed on its exhibit list numerous exhibits which have never been disclosed nor produced.  This gamesmanship in discovery has been noted several times by the Court, and it appears again in significant number in Defendant's exhibit list.

Fed. R. Civ. P. 26(a)(1)(ii), a party must provide "a copy—or a description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment."  Where such documents are not properly disclosed, they may not be utilized at trial.  Fed. R. Civ. P. 37(c)(1).

Furthermore, because Defendant's exhibit list contains certain descriptions which are vague, Plaintiffs are not yet certain if they have identified below each proposed exhibit that violates this rule.  Importantly, even as of today, less than 30 days before trial, Defendant still has not provided copies of any of the following documents it seeks to rely upon at trial:

1. Photographs of PAM facilities (Defendant Exhibit 41);
2. Photographs of PAM yards (Defendant Exhibit 42);
3. List of PAM yard (Defendant's Exhibit 43);
4. Photographs of PAM tractors (internal and external) (Defendant's Exhibit 44);
5. Photographs of [undefined] secure facilities (Defendant's Exhibit 45);
6. Photographs of [undefined] truck stops (Defendant's Exhibit 46);
7. Photographs of [undefined] truck stops with nearby [undefined] casinos (Defendant's Exhibit 47);
8. Photographs of [undefined] casinos with parking for tractor trailers (Defendant's Exhibit 48);
9. YouTube video of "California Girls" by the Class A Queens [referenced in stricken Mixon declaration but never produced] (Defendant's Exhibit 49);
10. Writings, publications, lectures, interviews, and presentations of Dr. Steve Viscelli (Defendant's Exhibit 62);
11. Reports and deposition transcript testimony of Dr. Viscelli in other cases (Defendant's Exhibit 63); and
12. Snapshots of Dr. Viscelli's website and LinkedIn Page (Defendant's Exhibit 64).

Additionally, Plaintiffs are concerned that Defendants' Exhibits 36-39 referring to "Qualcomm Records", "Fuel Records", "Log Records and documents relevant to duty status", and "Location Histories" may be documents not previously produced. While Defendants have provided data extractions of certain data which *might* be what is referenced here, Plaintiffs note that Defendant has listed as Exhibit 4 "data provided to Plaintiffs electronically," and so Plaintiffs are unclear if Exhibits 36-39 are referencing data produced in discovery or some other document.

Likewise, "Use of the Qualcomm/Electronic On Board Recorder" (Defendant's Exhibit 56) is unclear if it is referring to documents produced in discovery to train drivers or if it is something else. To the extent the documents were not previously produced, Plaintiffs object.

Plaintiffs would be severely prejudiced if at this late hour such documents were permitted into evidence.

Plaintiffs have had no ability to take discovery or inquire into any of the alleged photographs Defendant seeks to introduce (Defendant's Exhibits 41-48). Nor have Plaintiffs been able to consider such evidence and determine if they too should provide photographs of truck stops, customer sites, etc. In other words, had Defendants produced such evidence before, Plaintiffs would have inquired into it, learned when and where such photographs were allegedly taken, determined if such photographs were relevant or important, and may have also offered counter-evidence. The timing of Defendant's disclosure and the failure of Defendant to produce such documents within the deadline set by the Court would clearly prejudice Plaintiffs.

Similarly, Defendant references a YouTube video which was never produced by Defendant (Defendant's Exhibit 49). Though Mixon's stricken declaration does make mention of the video, that declaration does not provide timely disclosures because (1) it was filed with the Court in November of 2019, long past the deadline for disclosures; and (2) it was stricken by the Court.

Yet again, had Defendant timely disclosed such video, Plaintiffs may have offered evidence to rebut the video or mitigate against it, something that Defendant's intentional withholding of evidence precludes. Additionally, even if it were timely disclosed, the video cannot be authenticated: the drivers that are allegedly in the video are not trial witnesses nor did Defendant seek the deposition of such drivers during discovery.

Defendant's Exhibits 62-64 seek to place into evidence different documents allegedly authored by Dr. Viscelli. Defendant has not produced or disclosed any of the documents stated, and thus should be precluded from utilizing such documents at trial.

Thus, pursuant to Fed. R. Civ. P. 37(c)(1), Plaintiffs request the Court strike Defendant's Exhibits 36-39, 41-49, 56, and 62-64 and further preclude Defendant from relying on any document in support of its defense that it did not disclose pursuant to Fed. R. Civ. P. 26.

**2.     References that Drivers Intentionally or Negligently mis-logged their time in violation of PAM's alleged practices.**

Plaintiffs seek the Court enter an order precluding Defendant from arguing, offering evidence, or eliciting testimony to allege, suggest, or establish that drivers intentionally or negligently mis-logged their time. This Court has already held that the duty to maintain accurate time records was the sole responsibility of Defendant. *See* Summary Judgment Opinion at 12, citing 29 U.S.C. § 211(c) (ECF Doc. 216). The Court found that it was undisputed that PAM's records were never designed "to serve as a record of the hours worked for the purposes of compensability." *Id.* at 15. Thus, the Court has determined that while the driver logs are imperfect, PAM has failed to present evidence that could lead any reasonable juror to find that such records are too unreliable to permit a reasonable assessment of worktime. *Id.* at 13-14.

Because PAM may not challenge the reliability of its own logs, and because it is undisputed that the records were not designed to record compensable work time, any evidence that a driver

mis-logged his time is a red herring designed to fault Plaintiffs and the Class for Defendant's failure to maintain accurate time records.

Thus, the Court should grant Plaintiffs' Motion because such information is inadmissible pursuant to Fed. R. Evid. 401-403. Specifically, such evidence is not relevant, more prejudicial than probative, and confuses the issues for trial.

**3.**     **References that any driver violated the DOT regulations, federal regulations, or federal law in relation to how any driver logged his or her time.**

Plaintiffs seek the Court enter an order precluding Defendant from arguing, offering evidence, or eliciting testimony to allege, suggest, or establish that drivers violated federal laws or federal regulations in how they logged their time.

The Court has already determined the circumstances under which a driver is entitled to compensation under the FLSA and the AMWA are not controlled by the DOT regulations. Rather, DOT regulations and definitions have "little, if any, bearing on the matter at hand. They are a different set of regulations from the DOL regulations under discussion, promulgated pursuant to different statutes, and concerned with different policy aims." October 19, 2018 Opinion and Order at 5 (ECF Doc. 82). The Court further determined that the phrase "on duty," as utilized by DOT, does not mean the same as "on duty" as utilized by the DOL and found in 29 C.F.R. § 785.21 and 785.22. *Id.* at 5-6. The Court referenced the FMCSA's own statements demonstrating that, where a driver logs his time in accordance with DOT regulations, "[t]he driver may lose pay because the driver recorded time based upon the current FMCSA regulations and guidance rather than using the WHD regulations and guidance for duty time." *Id.* at 6-7.

In its summary judgment order, the Court likewise determined that the reasons "there is not a more accurate record of compensable time" is because the records were "not intended to

serve as a record of hours worked for the purposes of compensability." Summary Judgment Opinion at 12.

Based on such findings and holdings, that a driver may or may not have violated the FMCSA regulations has no bearing on whether PAM's policies violated the law. Through PAM's proposed designations, PAM has sought to introduce testimony and evidence similar to the following example found in Ms. Acreman's deposition:

> **Q.    Did you know it was against the law to intentionally mislog?**
> A.    I know that now, but at the time I -- since I wasn't actually getting on the road and driving, no, I did not know that was a violation.
> **Q.    So you didn't know that was a crime?**
> A.    No.
> **Q.    But you do now?**
> A.    I don't do that now.
> **Q.    And you know now it's against the law?**
> A.    Yes.

Because PAM may not challenge the reliability of its own logs, and because it is undisputed that the records were not designed to record compensable work time, any evidence that a driver violated  DOT regulations and/or federal law by mis-logging his or her time is a red herring designed to fault Plaintiffs and the Class for Defendant's failure to maintain accurate time records.

Thus, the Court should preclude Defendant from arguing, offering evidence, or eliciting testimony to allege, suggest, or establish such evidence at trial pursuant to Fed. R. Evid. 401-403. Specifically, such evidence is not relevant, more prejudicial than probative, and confuses the issues for trial.

**4.    <u>Introducing into evidence or showing to any witness or the jury a copy of the FMCSA Regulations and Handbook.</u>**

For the same reason that the Court should enter an order precluding Defendant from arguing, offering evidence, or eliciting testimony to allege, suggest, or establish that any driver allegedly violated the FMCSA regulations, the Court should similarly prohibit Defendant from

introducing into evidence or showing to any witness any FMCSA regulation or the FMCSA Carrier Safety Book (providing DOT and FMCSA laws and regulations). Defendant seeks to introduce such documents into evidence per its exhibits 50 and 51.

To the extent the definitions of such regulations are necessary for the jury to deliberate, it is the Court's role to instruct the jury on the law, not Defendant or its counsel. The Court can consider any request from Defendant to provide such instructions at trial, and Plaintiffs reserve their right to object to such instruction if appropriate.

Because the FMCSA regulations were not designed to track compensable hours worked, any mis-logging of such time is not the reason that PAM does not have accurate hourly records of its employees nor the reason it failed to pay minimum wage. Accordingly, PAM should not be permitted to utilize inapplicable regulations and laws to discredit the drivers and pass blame to the drivers for PAM's failure to maintain accurate records of hours worked.

Thus, the Court should preclude Defendant from introducing such evidence at trial pursuant to Fed. R. Evid. 401-403. Specifically, such evidence is not relevant, more prejudicial than probative, and confuses the issues for trial.

**5.** **References regarding "personal" activities pursued while inside a truck's sleeper berth.**

Plaintiffs seek the Court enter an order precluding Defendant from arguing, offering evidence, or eliciting testimony to allege, suggest, or establish that drivers engaged in "personal" activities pursued while inside a truck's sleeper berth.

Under federal and state law, "under certain conditions an employee is considered to be working even though some of his time is spent sleeper or in certain other activities. 29 C.F.R. § 785.20. "This is so because, as the United States Supreme Court has recognized, an employer may hire an employee simply to wait for some period of time." October 19, 2018 Opinion and Order

at 4, citing *Skidmore v. Swift & Co.,* 323 U.S. 134, 136-37 (1944) (ECF Doc. 82); *see also Armour & Co. v. Wantock,* 323 U.S. 126, 133 (1944) ([A]n employer "may hire a man to do nothing, or do nothing but wait for something to happen.")

In *Armour,* the Court held that firefighters required to stay on the employer's premises after their active-duty shifts in order to respond to alarms were working during the entire time, despite the fact that they spent their post-shift hours "sleeping, eating, playing cards, listening to the radio or otherwise amusing themselves." *Id.* at 128. That the "employer and employee cooperated to make the confinement and idleness incident to it more tolerable" did not diminish the fact that the confinement primarily benefited the employer and was compensable. *Id.* at 134.

In *Skidmore,* the substantive issue was the same as *Armour* and the decision was released in tandem with that opinion. *Skidmore v. Swift,* 323 U.S. 134, 136 (1944). The Supreme Court held in *Skidmore* that nothing precludes waiting time from also being working time, and that for employees confined to the employer's premises for 24 hours, but off-duty for twelve, eating and sleeping time should be excluded from hours worked, but that the balance of the time was compensable because "**there is nothing in the record to suggest that, even though pleasurably spent, it was spent in the ways the men would have chosen had they been free to do so.**" 323 U.S. at 139.

Because cooperation between employee and employer "to make the confinement and idleness incident to it more tolerable" is not material to whether such time constitutes work under the FLSA, that drivers engaged in limited personal activities, such as using their phone, listening to music, watching a video, or similar, while confined in a truck's sleeper berth, is not relevant to the compensability analysis.   Indeed, as *Skidmore* makes clear, such time is compensable even if it were "pleasurably spent."  323 U.S. at 139.

While the restrictions and responsibilities placed on drivers are disputed and for the jury, that drivers could utilize cell phones, browse the internet, listen to music, or the like *while confined in the sleeper berth* is neither disputed nor relevant to the jury's inquiry.

The Court denied summary judgment to Plaintiffs regarding the compensability of such time *not* because a driver might use his cell phone or listen to music but because, according to PAM's designee "if a driver parks the vehicle in a safe area such as a truck stop, that's a typical example, they are relieved of responsibility for that vehicle so long as it's safely parked."  The Court also found relevant that the designee testified that drivers might be able to install an application on their phone which would permit them to leave the truck.  Summary Judgment Opinion at 10-11 (ECF Doc. 216).  Nothing in the Court's opinion suggests that engaging in limited personal activities while inside PAM's truck or while waiting at a customer site or truck stop alters whether such time is compensable.

Indeed, the only court to directly address the relevance of such issues thus far found such evidence so irrelevant to the dispute that it prohibited *discovery* on such issues, though discovery is far broader than what is admissible at trial.  *See Petrone v. Werner Enterprises, Inc., 8:11CV401,* 2014 WL 1309690, at *2 (D. Neb. Mar. 31, 2014) (Granting protective order regarding discovery taken regarding personal activities the drivers engaged in while in a sleeper berth holding "under the federal standard [29 C.F.R. § 785.22], no discovery into the individual plaintiffs' activities during sleeper berth time would be relevant here.")

Thus, such information should not be admitted pursuant to Fed. R. Evid. 401-403, specifically, such evidence is irrelevant, more prejudicial than probative, and would likely result in issue confusion for the jury.

6.     __References that it is the drivers' responsibility that PAM failed to maintain accurate records of the hours drivers worked.__

Plaintiffs seek the Court enter an order precluding Defendant from arguing, offering evidence, or eliciting testimony to allege, suggest, or establish that it is the drivers' responsibility or fault that PAM failed to maintain accurate records of the working hours of its drivers.

This Court has already held that the duty to maintain accurate time records was the sole responsibility of Defendant. *See* Summary Judgment Opinion at 12, citing 29 U.S.C. § 211(c) (ECF Doc. 216); *see also Kuebel v. Black & Decker Inc.,* 643 F.3d 352, 363 (2d Cir. 2011) ("[I]t is important to recognize that an employer's duty under the FLSA to maintain accurate records of its employees' hours is non-delegable.").

The Court found that it was undisputed that PAM's records were never designed "to serve as a record of the hours worked for the purposes of compensability." *Id.* at 15. Thus, it is undisputed that PAM never requested the drivers keep a record of their work time, and accordingly, that the records PAM maintains are imprecise is the sole responsibility of PAM.

Thus, evidence or argument that drivers are partially or fully responsible for PAM's failure to maintain accurate records of the hours worked by its employees should not be admitted pursuant to Fed. R. Evid. 401-403, specifically, such evidence is irrelevant, more prejudicial than probative, and would likely result in issue confusion for the jury. *See Hart v. RCI Hospitality Holdings, Inc.* 90 F.Supp.3d 250, 267 (S.D.N.Y. 2015) (granting motion in limine precluding "the defense from arguing, in connection with the issue of the calculation of minimum-wage damages, that the dancers in the class were to blame for the gaps in [employer's] records, in particular, the frequent lack of log-out times").

7. **Opinions of Dr. Thompson that Challenge the Sufficiency of the Log Data as a Basis for Challenging Dr. Speakman's Calculations.**

Plaintiffs seek the Court enter an order precluding Defendant from arguing, offering evidence, or eliciting testimony to allege, suggest, or establish that Defendant's log data is insufficient to rely upon in establishing damages, including precluding Defendant from eliciting such testimony from Dr. Thompson.[1]

Dr. Thompson admits that, other than his analysis on the extent drivers send messages while logging time inside the truck's sleeper berth, his opinions are offered "to comment on [Dr. Speakman's] methodology and assumptions." Thompson Report at 1 (ECF Doc. No. 172-4).

Thompson's report states that he intends to challenge Dr. Speakman's damages estimates by arguing that Dr. Speakman's calculations on damages are flawed because "all of Dr. Speakman's estimates of compensable work time rely on the Driver Log Data." According to Thompson "the use of the Driver Log Data, without an individualized review, to determine compensable work time is fundamentally flawed, rendering all of Dr. Speakman's estimates uninformative and unreliable." Thompson Report at 4.

This Court has since held that the duty to maintain accurate time records was the sole responsibility of Defendant. *See* Summary Judgment Opinion at 12, citing 29 U.S.C. § 211(c) (ECF Doc. 216). The Court found that it was undisputed that PAM's records were never designed "to serve as a record of the hours worked for the purposes of compensability." *Id.* at 15. Thus, the Court has determined that while the driver logs are imperfect, PAM has failed to present evidence that could lead any reasonable juror to find that such records are too unreliable to permit a reasonable assessment of worktime on a class-wide basis. *Id.* at 13-14.

---

[1] Plaintiffs are not making an untimely *Daubert* challenge as Plaintiffs' challenges to certain testimony/opinions of Dr. Thompson are based not on challenges to Thompson's expertise, methodology, or conclusions, but instead based on Fed. R. Evid. 401-403 pertaining to relevance.

Because PAM may not challenge the reliability of its own logs, and because it may not escape a damages award by arguing that Plaintiffs cannot rely on PAM's (imperfect) records, Dr. Thompson's criticisms which challenge Dr. Speakman for relying on PAM's logs must be precluded.

Thus, the Court should preclude Defendant from introducing such evidence at trial pursuant to Fed. R. Evid. 401-403.   Specifically, such evidence is not relevant, more prejudicial than probative, and confuses the issues for trial.

8.   **Limiting Thompson's Log Audit Analysis to the Audits Disclosed in his September 13, 2019 Report.**

Plaintiffs seek an Order precluding Defendant from eliciting testimony from Dr. Thompson other than the opinions and examples provided in his report, and in particular, any driver log audits that were not previously disclosed.

It is beyond question that a party seeking to admit expert testimony must provide a report providing, *inter alia*: " a complete statement of all opinions the witness will express and the basis and reasons for them [and] the facts or data considered by the witness in forming them." Fed. R. Civ. P. 26(a)(2)(B).   In Thompson's Report, Thompson provides the result of his audits he performed on the driver log data.   Thompson admits that his report only provides two log audits where he believes data sources combined with the log data show the log data may be incorrect. Thompson Dep. at 74:15-74:17 (ECF Doc. 172-5).   Thompson further admitted that the example provided in his report was "the **only** instance where I actually did anything that would approach [determining if PAM complied with minimum wage]." *Id*. at 123:9-123:16 (emphasis added).

Based upon Defendant's rejected strategy of attempting to offer into evidence undisclosed audits allegedly performed by Mixon, Plaintiffs are concerned that Defendant may attempt to have Thompson offer such testimony instead.   While Thompson may be offered as an expert, his

11

opinions, as well as the basis and reasons for them, must be limited to those offered in his report. As he only disclosed two specific driver log audits[2] in his report, and as he *admits* that he performed no other audits, he must not be permitted to testify at trial regarding any audits not previously disclosed.

9.    **Reference to any Plaintiff not Participating in Discovery, and reference to this Court's Order to Show Cause sanctioning certain Plaintiffs.**

Plaintiffs seek the Court enter an order precluding Defendant from arguing, offering evidence, or eliciting testimony to allege, suggest, or establish that certain opt-in plaintiffs did not participate in discovery and/or were sanctioned for non-participation in discovery. Furthermore, Defendant should not be permitted to argue that too few Plaintiffs participated in discovery.

During oral argument regarding its request that the Court sanction certain plaintiffs for non-participation in discovery, the Court asked Defendant whether the fact that some opt-in plaintiffs did not participate in discovery or show for their deposition "prejudiced [PAM] in some tangible way." Defendant responded that it could not identify any prejudice, conceding in response that: "I can't tell you what we didn't learn because we don't know what we didn't learn from those witnesses." January 17, 2020 Transcript at 92:10-93:3. The Court stated on the record that it "does not find and has not heard/has not read how PAM has been prejudiced in any material sense… The Court just cannot understand how they have been materially prejudiced." *Id.* at 107:6-107:12.

Under such circumstances, allowing Defendant to reference that any plaintiff did not participate in discovery or that any plaintiff was sanctioned for not complying with discovery

---

[2] For reasons provided in the previous motion in limine, Thompson should not be permitted to testify regarding either of the two cited audits as the audits are utilized solely to persuade a jury that Speakman should not have utilized Defendant's driver log data for his damages estimates.

invites the jury to speculate as to motivation and prejudice, something that this Court has determined Defendant has not shown.

Thus, the introduction of any information alluding that too few drivers participated in discovery, that any plaintiff did not participate in discovery, or that any plaintiff was sanctioned for non-participation in discovery should be precluded.  *See Rasberry v. Columbia County, Arkansas*, 385 F. Supp. 3d 792, 798 (W.D. Ark. 2019) (excluding "any reference or suggestion as to the reason [plaintiffs] failed to call a given person to testify or any reference or suggestion that would call for speculation as to why a person was not called to testify where "such commentary would be irrelevant, unduly prejudicial, and potentially mislead and confuse the jury").

**10.** **Reference that any Plaintiff did not disclose this action in bankruptcy or may be subject to an order to show cause or judicial estoppel.**

Plaintiffs seek the Court enter an order precluding Defendant from arguing, offering evidence, or eliciting testimony to allege, suggest, or establish that certain opt-in plaintiffs were found by this Court to not have disclosed this action in bankruptcy and therefore have been judicially estopped from recovering.

The only relevance to such action is that the very few drivers subject to such order will not be permitted to recover damages in this action.  Speakman's calculations include such damages, but Plaintiffs understand that the Court will amend the verdict after the jury to remove damages sought for the few individuals at issue.[3]

Accordingly, the introduction of any argument or evidence that any Plaintiff (who cannot recover in this action pursuant to the Court's summary judgment order) failed to disclose this

---

[3] Plaintiffs' presumption is based upon the same rationale provided for allowing the jury to return a verdict for the sanctioned Plaintiffs, and then, post-verdict, the Court will reduce the judgment to reflect the amount of the sanction. If the Court and/or Defendant objects to this procedure, Plaintiffs can have Dr. Speakman further modify his damages calculations to remove such individuals.

action in his bankruptcy is fully irrelevant. Thus, the Court should preclude Defendant from introducing such information at trial pursuant to Fed. R. Evid. 401-403. Specifically, such information is not relevant, more prejudicial than probative, and confuses the issues for trial.

**11.** **References to the annual salary earned by Drivers and the weekly amounts earned by Drivers in weeks for which Plaintiffs are not seeking damages should be excluded.**

Plaintiffs seek the Court enter an order precluding Defendant from arguing, offering evidence, or eliciting testimony to allege, suggest, or establish (1) the total annual earnings of any or all drivers in the class; and (2) the compensation earned by any driver in the class on a workweek during which Plaintiffs seek not damages and do not assert a violation of minimum wage law. Such information is not relevant to any claim or defense, and evidence concerning such amounts could prejudice the jury into not following FLSA and the AMWA's mandate that minimum wage is earned and owed on a week-by-week basis.

Minimum wage violations under both FLSA and the AMWA are calculated on a workweek-by-workweek basis. *See, e.g. Hensley v. MacMillan Bloedel Containers, Inc.,* 786 F.2d 353, 357 (8th Cir. 1986) (describing the workweek standard under FLSA). In other words, an employer cannot—under either the FLSA or the AMWA—satisfy a minimum wage obligation owed in one week by money earned in a subsequent week. Under Fed. R. Evid. 401 and 402, evidence that does not tend to make a fact of consequence more or less probable is not admissible. Moreover, even relevant evidence must be more prejudicial than probative to be admitted. Fed. R. Evid. 403. Courts have excluded evidence related to wages and salaries when such information does not inform whether or not the employer has violated the overtime or minimum wage requirements. *See, e.g., McFeeley v. Jackson St. Ent., LLC*, 825 F.3d 235, 245–46 (4th Cir. 2016) (evidence of total earnings properly excluded when those earnings had no bearing on specific wage and hour violations); *Demirovic v. Ortega*, 254 F. Supp. 3d 386, 389–90 (E.D.N.Y. 2017) (amount

14

of tips irrelevant to minimum wage owed for tip credit violation and therefore excluded), *aff'd*, 771 Fed. Appx. 111 (2d Cir. 2019) (unpublished); *Moulton v. W.W.I., Inc.*, 1:18-CV-67-ALB, 2019 WL 3558032, at *4 (M.D. Ala. Aug. 5, 2019) (holding that amount of tip money received when tip credit was violated and tips could not be used in calculating minimum wage owed was irrelevant and should be excluded); *Schumann v. Collier Anesthesia, P.A.,* No. 2:12-CV-347-FTM-29CM, 2017 WL 1391398, at *2 (M.D. Fla. Apr. 12, 2017) (excluding evidence regarding post-training wages where claim was limited to training time).

The total amount of money earned by class members on an annual basis has no relevance as to whether Defendant failed to pay the minimum wage for particular individual weeks. But a juror who learns of the total annual income of a truck driver may be tempted to believe that the class member in question was paid a sufficient amount of money when calculated on an annual basis and fail to comply with the law. Likewise, a juror hearing about the total amount of money earned in weeks in which no minimum wage shortfall is alleged may similarly improperly believe that such wages can be used to offset the minimum wage shortfalls in other weeks.[4]

Plaintiffs' expert has calculated minimum wage damages on a driver-by-driver, week-by-week basis, and such calculations have been provided to Defendant, thereby precluding any need whatsoever for Defendant to make reference to the total amount of compensation provided in weeks where no damages or violations are asserted. Accordingly, because this information is not relevant, any probative value is substantially outweighed by the danger that it would confuse the

---

[4] Plaintiffs understand the Court will determine what effect, if any, payments received in a subsequent pay period for work performed in a specific prior pay period has on the minimum wage damages. Importantly, Dr. Speakman has provided a week-by-week, driver-by-driver spreadsheet that shows both what the driver was paid and also any additional amounts received for such period but paid in a later pay period. Plaintiffs do not object to Defendant introducing evidence of such late payments for a given week *provided* that damages are asserted on the week in question. But that is very different than attempting to use payments made for work performed during a workweek where no damages are asserted.

issue and unduly prejudice Plaintiffs, the Court should bar Defendant from introducing or making reference to these amounts pursuant to Fed. R. Evid. 402 and Fed. R. Evid. 403.

12. <u>**References to any driver's decision and motivation for opting out.**</u>

Plaintiffs seek the Court enter an order precluding Defendant from arguing, offering evidence, or eliciting testimony regarding the decision of any driver who opted out of the litigation. No driver who opted out was deposed or is listed on any witness list, and nothing is known regarding why such driver may or may not have opted out.  No damages or claims are made on behalf of any opt-out driver.

In such circumstance, it is wholly irrelevant as to any motivation such driver may or may not have had in his or her decision to opt out of the litigation, and referencing such individuals invites the jury to speculate as to motivation.

Thus, the Court should preclude Defendant from making any reference to the number of drivers who opted out of the class action or the motivation for such decision.

13. <u>**References to any driver's decision and motivation for not opting in.**</u>

Plaintiffs seek the Court enter an order precluding Defendant from arguing, offering evidence, or eliciting testimony regarding the decision of any driver to not opt-in to the FLSA action.  Similarly, the opt-in rate is irrelevant.  Even if such decision and motivation was not open to speculation, it is irrelevant. A driver cannot agree to be paid less than minimum wage, and even if some drivers have accepted PAM's payment system and/or have chosen not to assert a legal claim against PAM, such facts do not change any of the material facts before the jury: how much PAM paid drivers and how much those drivers worked.

Thus, such argument and evidence should be excluded pursuant to Fed. R. Evid. 401-403.

14.   **References regarding PAM's passenger program, the number of drivers who allegedly participated, and any specific driver who allegedly participated.**

Plaintiffs seek the Court enter an order precluding Defendant from arguing, offering evidence, or eliciting testimony regarding PAM's passenger program.  Such evidence should be excluded consistent with the discovery sanction already issued by the Court, and because such evidence is not relevant, and even if it were, such relevance is substantially outweighed by the danger that such evidence would be unduly prejudicial and confuse the issues for the jury.

While there are generic references to its Passenger Program in the Company Handbook which PAM produced in discovery, the Handbook states that specific authorizations and forms must be obtained from the company and executed prior to any driver being permitted to participate in the alleged program. Because Defendant did not produce such forms during discovery, it failed to produce necessary documents relating to this defense to the extent it sought to rely on its alleged Passenger Policy as a defense to any claim in this lawsuit.

In its summary judgment order, the Court struck from Mixon's declaration "the paragraph and spreadsheet addressing PAM's Passenger Program."  The Court explained that "[t]o the extent that PAM now wishes to offer those documents to support their contention that drivers are not on duty the entire time they are on a tour… the data had to be disclosed in compliance with Rule 26(a)(1)(ii)… [t]herefore, any reference to PAM's Passenger Program is also stricken." Summary Judgment Opinion at 7 (ECF Doc. 217)

Additionally, because such evidence is lacking, any reference to the alleged Program is not relevant (because no evidence exists that class members participated in the program).  Because this information is not relevant, any probative value is substantially outweighed by the danger that it would confuse the issues for the jury, unduly prejudice Plaintiffs, and result in the jury reaching a determination based on speculation.  The Court should thus bar Defendant from introducing or

making reference to the Passenger Program, the number of drivers who allegedly participated in the Program, or any specific driver who allegedly participated in the program, pursuant to Fed. R. Evid. 402 and Fed. R. Evid. 403.

15. **References regarding any non-disclosed audits and extended audits allegedly performed by any lay witness.**

Plaintiffs seek the Court enter an order precluding Defendant from arguing, offering evidence, or eliciting testimony based upon any driver log audit which were not produced in discovery.  Additionally, Plaintiffs seek the Court preclude Defendant from offering into evidence, eliciting testimony, or making any argument based upon "information as to what physically existed at [the] GPS coordinates [provided in the position history table] while parked, for example, at home or at a casino." *See* Order on Motion to Strike at 4-5 (ECF Doc. 216) (striking such information from Mixon's declaration because such audit "is based on the application of 'methods' to 'data,' exactly the kind of testimony that is guided by Rule 702").

Plaintiffs note that as to a specific ruling, Plaintiffs do not seek to prevent Thompson from testifying regarding any audit he disclosed and which relied upon GPS data, though Plaintiffs note that they have sought separately to limit Thompson's testimony for reasons provided *supra*.

16. **Evidence or Argument that is Contrary to Testimony Provided in Defendant's Binding Designee Depositions.**

Plaintiffs seek the Court enter an order precluding Defendant from arguing, offering evidence, or eliciting testimony that is contrary to testimony provided by its designees in sworn deposition testimony.

Like a response to an admission, a party is bound by facts admitted in a sworn deposition. *Cadle Co. II v. Gasbusters Prod. I L.P.,* 441 Fed. Appx. 310, 313 (6th Cir. 2011) ("admissions made during a deposition, absent exceptional circumstances, have been held to be binding on the parties as a judicial admission and **cannot be challenged in the trial court** or on appeal"). "The

Rule 30(b)(6) deposition . . . serves a unique function: it is a sworn corporate admission that is binding on the corporation." *United States ex rel. Health Dimensions Rehab., Inc. v. Rehabcare Group, Inc.*, 2013 U.S. Dist. LEXIS 114479 (E.D. Mo. Aug. 14, 2013).

Thus, because Defendant may not factually dispute the binding testimony of its designees, any introduction of facts or argument that is contrary to such binding testimony would be irrelevant and would be in danger of confusing the issues or causing undue prejudice to Plaintiffs.

**17.**   **References that Drivers were not available for dispatch when driver status table shows drivers as available.**

Plaintiffs seek the Court enter an order precluding Defendant from arguing, offering evidence, or eliciting testimony to allege, suggest, or establish that drivers were not available for dispatch when the driver status table shows the driver was available.  The basis for this request is that PAM's designee testified that PAM's PTA ("Projected Time of Availability") records would have provided, with more precision when a driver was available for dispatch.  However, PAM chose not to preserve those records and instead only backed up drivers' availability statuses once per day, at midnight.  Because Defendant failed to preserve the PTA records and because, under *Mt. Clemens,* Defendant cannot argue it should prevail because its own data may be somewhat imprecise, Defendant should not be able to introduce evidence or argument meant to discredit the driver status table at trial.   Any other holding would significantly prejudice Plaintiffs for Defendant's recordkeeping violations and its failure to fully preserve the PTA records.

Dustin Mixon, testifying PAM's PTA records would have provided the dates and times drivers were available for dispatch.

PAM stores PTA information in its l_drivers table, which was produced in the litigation. However, PAM continued to overwrite the PTA status of each driver throughout the litigation and

did not preserve such information. Mixon, again testifying as PAM's designee, testified as follows:

> Q   …**PTA is where you would go to figure out if the driver is or is not available to accept a dispatch?**
> A   Commonly, yes, sir.
> Q   **I mean, that's the best source of the information?**
> A   The PTA?
> Q   **Yes.**
> A   Yes.

Mixon May 29, 2019 at 10:21-11:4 (ECF Doc. 185-4).

> Q   **If we're less concerned about home time, though, I suppose, and more concerned about when drivers are not available for dispatch, we would just look at when the PTA is not current?**
> A   When we're looking to plan a truck, we would look at their PTA. That's the first thing we would look at.
> Q   **Let me -- let me ask it better. If what we want to know is when the driver is available to take a load, the PTA would have to be past the current time?**
> A   It would be that time because PTA, projected time availability, means he'll be ready to go. He's telling us he'll be ready to go…
> …
> Q   **Okay. And so when the PTA, in other words, is behind the current time, it means the driver is ready and available for dispatch?**
> A   Yes, sir, that's correct.

Mixon May 30, 2019 at 32:2-33:9 (ECF Doc. 185-5).

> Q   **P.A.M. didn't back up the PTA times that updated throughout the day for each driver?**
> A   **No, sir, we did not.**
> Q   **And the PTA times I think is what you described earlier as being sort of the best source of information we would have to determine when a driver is available for dispatch?**
> A   It would be one of two sources.
> Q   **What would be the other source?**
> A   Their status at the time.
> Q   **Whether it's an A or a D or something else, like an FMLA?**
> A   Yes, sir, correct.
> Q   **And that's the -- that's from the driver status table, I believe?**
> A   I believe so, yes, sir.
> Q   **Okay. And so if we don't have good PTA data, the next best source is the driver status table?**
> A   **Typically, yes, sir.**

*Id.* at 36:2-36:20; *see also id.* at 47:19-48:22 (emphasis added).

PAM's counsel, in the context of objecting to a question as to whether PAM properly preserved data, stated on the record to Judge Wiedemann that "the PTA of one of 1,700 drivers changes in literally seconds, so what P.A.M. has done is they backed up at midnight once a day." *Id.* at 34:22-34:25. Mixon testified that PAM's preservation efforts in relation to this action, as it relates to this issue, were limited to backing up the electronic records once per day. *Id.* at 65:1-65:15.

There can be no doubt that PAM had a duty to preserve the PTA electronic records showing when drivers were on-call. *See Compass Bank v. Morris Cerullo World Evangelism,* 104 F. Supp. 3d 1040, 1052 (S.D. Cal. 2015) ("The failure to preserve electronic or other records, once the duty to do so has been triggered, raises the issue of spoliation of evidence and its consequences."); *Claredi Corp. v. SeeBeyond Tech. Corp.*, 4-04-CV-01304 RWS, 2010 WL 11579710, at *2 (E.D. Mo. Mar. 8, 2010), *report and recommendation adopted in part,* 4:04 CV 1304 RWS, 2010 WL 11579799 (E.D. Mo. Mar. 31, 2010) ("By now, it should be abundantly clear that the duty to preserve means what it says and that a failure to preserve records—paper or electronic—and to search in the right places for those records, will inevitably result in the spoliation of evidence.")

Rather than preserving the most precise data showing when a driver is available, PAM instead only backed up the PTA data once per day. By deleting more precise information, they have deprived Plaintiffs of the ability to demonstrate with precision when drivers were on call and ready for dispatch. Because the driver status table (which provides the PTA status as of midnight each day) is the most precise and reliable source of information showing when drivers were available for dispatch (as a consequence of PAM's deletion of more precise data), PAM should

21

not be permitted to argue or provide evidence disputing that drivers were available when the driver status table shows a driver as available.

To be clear, such request is entirely appropriate under *Mt. Clemens* and is the least severe sanction that would be appropriate for spoliation.  Plaintiffs here do not seek, for example, an inference that any time period other than midnight Plaintiffs were on-call.  Considering that Defendant deleted all records except those recorded at midnight, Plaintiffs would be well justified to request the Court provided an adverse inference instruction that the deletion of such records creates a presumption that Plaintiffs were on-call at all time except when the records explicitly show they are not, and only for the moment the record so show (i.e. midnight).  Here, Plaintiffs simply seek the Court preclude Defendant from being advantaged by its own failure to have preserve precise records.

Thus, the Court should grant this request.

18.    **References to Legal Authority Issued by the Arkansas or U.S. Dept. of Labor or Other Legal Authority.**

Plaintiffs seek the Court enter an order precluding Defendant from arguing, offering evidence, or eliciting testimony regarding any DOL regulation, legal opinions issued by the Dept. of Labor (Defendants' Proposed Exhibits 51-53), unidentified legal opinions and orders issued in *Petrone* (Defendants' Proposed "may call" exhibit 11), as well as any other legal authority. Plaintiffs further seek the Court preclude Defendant from introducing into evidence or making any argument or eliciting testimony based upon such legal authority, or based upon any other legal authority, unless such arguments are based on the Court's jury instructions.

It is well beyond dispute that it is the Court's sole province to instruct the jury on the law. Defendant wishes to sidestep the Court and invite the jury to question this Court's legal holdings and instructions.  As just one example, Defendant seeks to introduce the July 2019 U.S. DOL

22

Letter which (1) all three federal courts which have considered it have rejected; (2) this Court has rejected; and (3) explicitly states that this Court's decision is incorrect.  Similarly, Defendant wishes to introduce opinions issued by other judges in other cases, presumably to argue to the jury that its construction on the law should be considered. Finally, Defendant seeks to introduce DOL regulations, presumably so it can argue a different interpretation of the law than adopted by this Court.

The jury's factual findings must be based only on the law as determined by the Court, not the law as advocated by legal counsel.

Defendant cannot show that such evidence or argument should be permitted to defend itself against willfulness.  *If* such legal authorities are viewed not as legal authorities but factual evidence in support of Defendant's willfulness defense, then it was required to produce such documents *in discovery* and in response to its Rule 26 disclosures obligations, which it failed to do.    Thus, Defendant may not now rely on such authorities as factual evidence.

Similarly, PAM did not disclose such authority as a basis for its compensation determinations in its designee deposition. Plaintiff took a designee deposition of PAM and explicitly requested PAM to identify what legal authority PAM relied upon in reaching its determinations on compensable time.

With respect to its decision not to compensate drivers for hours logged "off duty" or "sleeper berth," PAM stated: (1) it relied upon FMCSA regulations stating that such time was "off duty time"; (2) it did not consider whether such time was compensable because it paid drivers (other than trainees) per mile without regard to hours worked; and (3) it did not research or rely upon any authority to show that it was appropriate to rely on FMCSA regulations to determine hours worked.  PAM further admitted it was unaware of any legal authority which permitted it to

deduct from hours worked time an employee took a bathroom break or other short rest break of 20 minutes or less. Stewart Dep. December 2017 at 45:17-51:9.

With respect to its decision to not true-up non-trainee drivers to provide payment at least at minimum wage levels each workweek, Defendant *admitted* it was aware that it was required to make such payments, agreed it did not, and provided no legal authority contradicting the only authority it admitted to being aware of which requires such payments.

> Q …My question is sort of that decision not to true up those drivers, **has P.A.M. done any research or has it done anything to determine if that complies with federal and state minimum wage law?**  That's the question.
> A   **I don't know**.
> Q   But you're the witness who's here to testify about these things, so P.A.M.'s answer is it can't think of anything?
> *MR. JONES:  Object to form.*
> A   Did you hear Bobby?
> Q   (BY MR. SWIDLER)  I did, and he's letting you answer.
> *MR. JONES:  You can still answer.*
> A   Okay.  I guess I would answer it that **I know from my experience with dealing with this situation that the Department of Labor's standing is that you have to pay minimum wage for a week true up period**, that's my understanding.
> Q   But P.A.M. isn't doing that?
> A   Excuse me?
> Q   Okay.  Your understanding is the DOL would say you have to pay minimum wage each week?
> A   Yes, I would agree.
> Q   But there's weeks P.A.M. is not doing that?
> A   That's correct.
> Q   And you don't know of any legal authority that P.A.M. has that says we can do that or anything P.A.M. has done to determine that they can do that?
> A   **I do not.**

*Id.* at 43:13-44:16 (emphasis added).

In such circumstance, Defendant cannot contend that the legal authorities Defendant seeks to introduce to the jury have any bearing on Defendant's willfulness.  As Defendant did not consider such authorities when it set its policies, nor rely on such authority when it paid its drivers, such authority is wholly irrelevant to its willfulness.

24

Additionally, the legal authority Defendant seeks to introduce, with the exception of the DOL regulations themselves, are too recent to support a willfulness defense as its decision not to compensate drivers for the duties at issue *predate* the 2019 US DOL Letter, amd *predate* the *Petrone* Decisions.[5]  Lastly, the Arkansas Dept. of Labor letter cannot be relevant on any issue as willfulness is immaterial to the Arkansas state law claims.

Thus, Plaintiffs' motion should be granted because such evidence/argument is not relevant, and there is substantial danger of confusing the issues to the jury and causing undue prejudice to Plaintiffs.

**19.** **References to the Criminal Record of any Plaintiff, including Convictions, Indictments, Complaints, or Arrests.**

Plaintiffs seek the Court enter an order precluding Defendant from arguing, offering evidence, or eliciting testimony to allege, suggest, or establish the existence of any Plaintiff's prior criminal record.  Such references are improper as Defendant has not given Plaintiffs reasonable written notice of its intent to utilize any such information at trial and would be more prejudicial than probative.  Other than criminal convictions, which should not be admitted for reasons stated below, evidence of criminal accusations, indictments, complaints, or arrests are not admissible under Fed. R. Evid. 609.

The admissibility of evidence concerning prior criminal convictions is governed by Fed. R. Evid. 609, subject to the restrictions contained in Fed. R. Evid. 403.   Per Fed. R. Evid. 609, such evidence may be admitted in a civil case if it is punishable by death or imprisonment for more than one year, provided that the evidence otherwise meets the requirements of Fed. R. Evid. 403. Likewise, evidence concerning a conviction that is older than 10 years is admissible **only if**: 1) its

---

[5] The first *Petrone* decision, holding that sleeper berth time was compensable as a matter of law, was issued in 2015. Following the case being reassigned to Judge Smith Camp, that decision was modified in 2017.  Both decisions post-date the compensation decisions at issue here, which occurred prior to the start of the class period in 2013.

probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect; **and** 2) the proponent gives an adverse party reasonable written notice of the intent to use it so that the party has a fair opportunity to contest its use.

Here, the potential that the admission of evidence of a Plaintiff's prior criminal conviction will create undue prejudice far outweighs any potential probative effect of putting forth such evidence such that Plaintiffs' criminal convictions are inadmissible as far as Fed. R. Evid. 403 is concerned.  Because Defendant has not provided Plaintiffs reasonable written notice of its intent to utilize such evidence Defendant may not present such evidence concerning *any* conviction that is older than ten years.  Fed. R. Evid. 609.

Accordingly, Plaintiffs respectfully request that any evidence concerning Plaintiffs prior criminal convictions be deemed inadmissible per Fed. R. Evid. 609 given its prejudicial value under Fed. R. Evid. 403.

**20.    References to the Involvement of any Plaintiff in a prior civil lawsuit, including any bankruptcy.**

Plaintiffs seek the Court enter an order precluding Defendant from arguing, offering evidence, or eliciting testimony concerning other civil lawsuits or bankruptcies that Plaintiffs may have been a part of.

Such information should be deemed inadmissible as it is not relevant to the central issues of the present matter and because such information would be unfairly prejudicial as it serves to mislead and/or confuse the jury such that the potential for prejudicial effect substantially outweighs any probative value it may contain. *See Raspberry v. Columbia County, Arkansas*, 385 F. Supp. 3d 792, 794 (W.D. Ark. Apr. 4, 2019).

26

Accordingly, Plaintiffs respectfully request that, per Fed. R. Evid. 401-403, Defendant be precluded from making any argument or presenting any evidence that any Plaintiff was involved in any other civil action.

### 21.    Performance or Disciplinary Actions Concerning Any Drivers & Drivers' Job Performance

Plaintiffs seek the Court enter an order precluding Defendant from arguing, offering evidence, or eliciting testimony concerning: 1) Plaintiffs' disciplinary actions while working for Defendants; 2) Plaintiffs' job performance while working for Defendants; or 3) whether Plaintiffs' job performance negatively impacted their pay.  Such evidence is inadmissible as the FLSA requires Defendants to pay a minimum wage regardless of the individual's job performance. *Chavez v. Monets*, 2015 WL 3604226, at *3 (W.D. Ark. June 5, 2015) (an individual may not waive their right to minimum wage compensation due to his or her job performance); Fed. R. Evid. 401.  Such evidence is further inadmissible as any probative value will be far outweighed by the threat of undue prejudice.  Fed. R. Evid. 403.

Accordingly, Plaintiffs respectfully request that this Court enter an order that, per Fed. R. Evid. 401-403, Defendant may not present any suggestion, allegations, evidence, and arguments concerning: 1) Plaintiffs' disciplinary actions while working for Defendants; 2) Plaintiffs' job performance while working for Defendants; or 3) whether Plaintiffs' job performance negatively impacted their pay.

### 22.    References that a Class-Wide Verdict Requires a Finding that "all" Class Members were Injured or that the Jury determine all drivers are similarly situated.

Plaintiffs seek the Court enter an order precluding Defendant from arguing, offering evidence, or eliciting testimony to allege, suggest, or establish that in order to prevail, Plaintiffs must prove that all class members were injured or are similarly situated.

Importantly, class members are generally not "parties" to the litigation.  *See Day v. Persels & Associates, LLC*,  729 F.3d 1309, 1315 (11ᵗʰ Cir. 2013) (citing authorities).  Rather, "class actions are a form of representative litigation.  One or more class representatives litigate on behalf of those class members, and those class members are bound by the outcome of the representative's litigation." *Id.*  It is for the Court, and not the jury, to determine if class adjudication is appropriate based on the requirement of Rule 23.  This Court has determined it is.  Any argument by Defendant that attempts to deny the class of a verdict because of alleged differences between class members inherently seeks the jury to nullify the Court's class certification order.

In order to prevail at trial, Plaintiffs need not individually show that each individual was harmed, but may instead present representative evidence on behalf of the class.  *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1049-51 (2016).  In *Tyson*, the defendant sought to have the plaintiffs' representative evidence concerning hours worked stricken because of the lack of a mechanism by which the parties could identify and exclude individuals who had no damages.  *Id.* at 1049.  The *Tyson* court found that issue to be prematurely raised, as it was more appropriate for review once the case returned to the District Court for disbursement of an award.  *Id.*

Moreover, as has been made clear on a number of occasions, Plaintiffs' expert witnesses' damage calculations specifically exclude any weeks wherein an individual does not have damages, such as when a driver is barred by the applicable statute of limitations. As such, the danger cited by the *Tyson* defendants that class members who were not harmed may yet be compensated does not exist here.  *Tyson*, 136 S. Ct. 1036, 1050.  As such, information concerning the possibility that not all class members have damages or that not all class members accrued damages in each workweek is irrelevant and inadmissible.  Fed. R. Evid. 401.  Such evidence can only serve to

mislead and/or confuse the jury such that its probative value is far outweighed by the potential for undue prejudice.  Fed. R. Evid. 403.

Accordingly, Plaintiffs respectfully request that Defendant be precluded from putting forth or attempting to elicit statements that a class verdict should be denied because of differences between class members and/or because some class members are uninjured.

**23.**   **References to Non-Wage Benefits Such as Health Insurance, 401(k) contributions, life insurance, workers' compensation insurance, and tuition reimbursement.**

Plaintiffs seek the Court enter an order precluding Defendant from arguing, offering evidence, or eliciting testimony concerning non-wage benefits given to Plaintiffs such as insurance benefits, retirement benefits, tuition reimbursement, vacation benefits or other benefits that are not considered compensations for the purpose of determining whether Plaintiffs were paid minimum wage.

Per 29 U.S.C. § 207(e), the "regular rate" (from which minimum wage liability is determined, *see* 29 U.S.C. § 206) excludes:

> "(2) payments made for occasional periods when no work is performed due to vacation, holiday, illness, failure of the employer to provide sufficient work, or other similar cause; reasonable payments for traveling expenses, or other expenses, incurred by an employee in which the furtherance of his employer's interests and properly reimbursable by the employer; and other similar payments to an employee which are not made as compensation or his hours of employment;
> …
> (4) contributions irrevocably made by an employer to a trustee or third person pursuant to a bona fide plan for providing old-age, retirement, life, accident, or health insurance or similar benefits to employees.

Additionally, assuming *arguendo* that any alleged non-wage benefit could have been argued to be an offset to minimum wage due, Defendant did not provide documents regarding the amounts of such non-wage benefits and thus would be precluded from utilizing such information nonetheless.  While there is limited testimony regarding the *availability* of certain benefits, no data was provided showing the precise or even estimated dollar value of such benefit.  Instead,

Defendant provided its electronic pay data to Plaintiffs, which consisted of a deduction table and an earnings table. Defendant stated the only item in the deductions file which constituted compensation was a negative deduction known as "per diem." Stewart Dep. May 29, 2019 at 70:7-70:13.[6] The remainder of the drivers' compensation is found in the earnings file, which does not provide the dollar amounts of any of the non-wage benefits Plaintiffs here seek to exclude. Stewart Dep. May 30, 2019 at 35:4-35:25.

Given that such non-wage benefits are not utilized in determining Defendants' minimum wage liability, and given that Defendant has not produced data showing the amount, if any, it paid for such benefits, such information is inadmissible because it is not relevant to the issue of whether Plaintiffs were in fact paid minimum wage in a given workweek and thus serves only to confuse and/or mislead the jury such that its probative value is greatly outweighed by the danger that it would result in jury confusion or undue prejudice.

Accordingly, Plaintiffs respectfully request that per Fed. R. Evid. 401-403 Defendant not be permitted to present any suggestions, allegations, evidence, and arguments concerning non-wage benefits provided to Plaintiffs.

**24.** **References to Liquidated Damages, Prejudgment Interest, Attorney's fees, and costs.**

Plaintiffs seek the Court enter an order precluding Defendant from arguing, offering evidence, or eliciting testimony that in any way references the possibility of an award of liquidated damages, prejudgment interest, attorney's fees, and costs. Such issues are for the Court and not the jury and accordingly any introduction of such evidence or argument is irrelevant and has a high danger of causing undue prejudice or jury confusion. *Raspberry*, 385 F. Supp. 792, 802.

---

[6] Plaintiffs do not seek to prohibit Defendant from introducing evidence that it provided per diem payments to drivers.

**25.** __References that Drivers Agreed to not be Paid for non-driving time.__

Plaintiffs seek the Court enter an order precluding Defendant from arguing, offering evidence, or eliciting testimony to allege, suggest, or establish that drivers agreed not to be paid for non-driving time, including time the driver is inside Defendant's truck in the sleeper berth.

It is well established that FLSA rights are statutory and cannot be waived. *Copeland v. ABB, Inc.*, 521 F.3d 1010, 1014 (8th Cir. 2008) (citing *Barrentine v. Arkansas–Best Freight Sys.,* 450 U.S. 728, 740 (1981); *Reich v. Stewart,* 121 F.3d 400, 407 (8th Cir.1997)). Thus, whether any plaintiff driver agreed to be paid for time spent in the sleeper berth is irrelevant and should be excluded pursuant to Rule 402 ("Irrelevant evidence is not admissible").

However, even if a driver's agreement to be paid for non-driving time, including time spent in the sleeper berth was relevant, such an agreement should be excluded pursuant to Rule 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury . . . ."). Here, even if such driver's agreement was relevant, the probative value of same would be substantially outweighed by the danger of unfair prejudice, confusion of the issues, and misleading the jury, as it would be highly foreseeable that the jury could mistakenly conclude that the drivers waived their minimum wage rights.

Such evidence also should be excluded pursuant to Rule 402 and/or 403, because Plaintiffs do not seek to invoke a "no express or implied agreement" argument as would otherwise be permissible under 29 C.F.R. § 785.22 (" . . . Where no expressed or implied agreement to the contrary is present, the 8 hours of sleeping time and lunch periods constitute hours worked. . . .").

31

26.     **Exclusion of Evidence that Drivers Agreed to PAM's Pay Policies.**

Plaintiffs seek the Court enter an order precluding Defendant from arguing, offering evidence, or eliciting testimony to allege, suggest, or establish that drivers agreed to be paid in accordance with PAM's pay policies.

It is well established that FLSA rights are statutory and cannot be waived. *Copeland v. ABB, Inc.*, 521 F.3d 1010, 1014 (8th Cir. 2008) (*citing Barrentine v. Arkansas–Best Freight Sys.,* 450 U.S. 728, 740 (1981); *Reich v. Stewart,* 121 F.3d 400, 407 (8th Cir.1997)). Thus, whether any driver agreed to be paid in accordance with PAM's pay policies is irrelevant and should be excluded pursuant to Rule 402 ("Irrelevant evidence is not admissible").

Moreover, even if any such driver agreement was relevant in this trial, same should be excluded pursuant to Rule 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury . . . ."). This is so because the probative value of same would be substantially outweighed by the danger of unfair prejudice, confusion of the issues, and misleading the jury.

27.     **References regarding PAM's late payments and allegations that the late payments are the premise of the lawsuit or the fault of the driver.**

Plaintiffs seek the Court enter an order precluding Defendant from arguing, offering evidence, or eliciting testimony to allege, suggest, or establish that the premise of this lawsuit is the timing of PAM's wage payments to Plaintiffs or that the timing of the payment of any drivers' wages was the fault of the driver

The Court has directed each party to file supplemental briefing addressing the issue of the regular pay day from which minimum wage violations should be calculated. (Doc. 219). Such

supplemental briefing is due January 30, 2020. Plaintiffs file this motion in limine at this time to comply with the Court's scheduling directives.

Plaintiffs will not utilize this brief to argue their position which they will take on January 30.

The Parties will of course comply with the Court's order regarding how damages are to be computed.  But whether late payments can be utilized to offset any liability of Defendant will be determined by the Court.  Dr. Speakman's calculations provide the amount of any late payment as well as the adjusted weekly payments, per driver, if late payments were included in the pay.

In such circumstance, it will not be relevant as to *why* a driver received a late payment; the legal consequence of paying late will be decided by the Court and damages will be mechanical once such determination is reached.  Eliciting testimony from drivers or management designed to blame drivers for PAM's decision to pay a driver in this fashion should be prohibited.

Thus, the reason minimum wage was not paid to the driver on his next regular payday is irrelevant under Rule 402. Moreover, even if such evidence was relevant under Rule 402, the probative value of same would be substantially outweighed by the danger of unfair prejudice, confusion of the issues, and misleading the jury, as it would be highly foreseeable that the jury could mistakenly conclude that the drivers waived their minimum wage rights and/or are to blame for the violations.

## 28.    Precluding or Limiting Testimony from Phillip, Garrison, Johnson, and Piazza.

Plaintiffs seek the Court enter an order precluding Defendant from calling Phillip, Garrison, Johnson, and Piazza.[7]

---

[7] Defendant agreed to withdraw a fifth undisclosed witness, Rick Pierson, from its witness list.

Defendant's witness list contains the names of five individuals who were not deposed and who do not appear on Defendant's Rule 26 disclosures: Rick Pierson, James Phillip, Brad Garrison, Kim Johnson, and Travis Piazza.

Defendant's witness list from May of 2019 contained these individuals as well as other undisclosed witness: Dustin Mixon, Fred Meeks, Amy Frazier, Paul Petit, and Mario Asensio. Plaintiffs' counsel requested information regarding the undisclosed witnesses, and Defendant responded by emailing Plaintiffs' counsel that it would not call Mr. Pierson, and further that it would amend its disclosures with respect to Mixon, Meeks, Frazier, Petit, and Asensio. Email (ECF Doc. 212-2).

Defendant ultimately decided not to rely upon Petit, and the parties therefore agreed not to take his deposition. The other witnesses who Defendant added to its disclosures were deposed. But Defendant did not amend its disclosures with respect to James Phillip, Brad Garrison, Kim Johnson, and Travis Piazza, and so Plaintiffs rightfully presumed that such witnesses would not be called at trial. Plaintiffs accordingly did not take their depositions.

Plaintiffs followed up on this issue after Defendant filed its witness list last week which again listed such individuals. Defendant asserts that it disclosed the aforementioned witnesses because their names are included in an interrogatory response in its supplemental interrogatories served in March of 2019.

Specifically, Defendant provided in a response to an interrogatory that Phillips, Garrison, and Piazza (along with several other employees) "provided instruction at the conclusion of the Driver Development Program." With respect to Johnson, Defendant stated that she "was currently employed in the Payroll Department and process[es] and issue[s] payments to drivers."

34

Considering Defendant failed to amend their Rule 26 disclosures to add such individuals, even after Plaintiffs explicitly informed Defendant it had not disclosed them and made such request so Plaintiffs could determine who to depose, Defendant should not now be permitted to utilize such witnesses at trial. Provided the Court determines that their disclosure in interrogatories was sufficient to permit them to testify, the Court should limit their testimony to the very narrow subject matter Defendant stated they were aware of. Specifically, Phillips, Garrison, and Piazza have information regarding instruction provided to drivers after the Driver Development Program, and Johnson has information regarding how payroll is processed and issued.

**29.**     **References to the Pay or Employment Practices of Other Trucking Companies**

Plaintiffs seek the Court enter an order precluding Defendant from arguing, offering evidence, or eliciting testimony concerning the pay or employment practices of other trucking companies. Such evidence is inadmissible as it is not relevant to the issue of whether Defendant violated the law and thus serves only to confuse or mislead the jury such that its probative value is far outweighed by the potential for undue prejudice. Fed. R. Evid. 401-403; *see also Hellmers v. Town of Vestal, N.Y.*, 969 F. Supp. 837, 848 (N.D.N.Y. 1997) ("Employer ignorance of the law is insufficient to establish good faith," and "[a]dherence to industry practice, when such practice violates the FLSA, is likewise insufficient.")

**30.**     **References to "Industry Practice" or "Industry Custom"**

Plaintiffs seek the Court enter an order precluding Defendant from arguing, offering evidence, or eliciting testimony concerning the "industry practice" or "industry custom." Such evidence is inadmissible as it is not relevant to the issue of whether Defendant violated the law and thus serves only to confuse the jury such that its probative effect is far outweighed by the potential for undue prejudice. Fed. R. Evid. 401-403; *Quantum Corporate Funding v. De Simone*,

2006 WL 6871842 (D. N.J. Oct. 24, 2006) (precluding the parties from putting forth evidence of deviation from industry practice).

**31.      References that Drivers or Counsel are From Out of Town**

Plaintiffs seek the Court enter an order precluding Defendant from arguing, offering evidence, or eliciting testimony concerning the fact that Plaintiffs' counsel or any of Plaintiffs do not reside in Arkansas.  Such information is irrelevant for the purpose of proving or disproving any fact of consequence in this action and should be excluded as Plaintiffs or their counsels' states of residence have no probative value with respect to whether Defendant violated the law.  Fed. R. Evid. 401-403; *see also Green v. Logan Roadhouse, Inc.*, 2015 WL 200977, at *2 (S.D. Miss. Jan. 14, 2015) (citing *Learmonth v. Sears, Roebuck & Co.,* 631 F.3d 724, 732-33 (5th Cir. 2011) (arguments which appeal to geographical location are intended to prejudice the jury against an out-of-state party).

**32.      References Regarding any Alleged Profitability or Lack Thereof of Defendant's Operations and/or Defendant's Training Program**

Plaintiffs seek the Court enter an order precluding Defendant from arguing, offering evidence, or eliciting testimony concerning: 1) the alleged profitability or lack thereof of Defendant's Operations; or 2) the alleged profitability or lack thereof of Defendant's Training program.  Such information is irrelevant for the purpose of proving or disproving any fact of consequence in this action and should be excluded as the profitability of Defendant's operations or Defendant's Training Program has no probative value with respect to whether Defendant violated the law.  Fed. R. Evid. 401-403; *See Ross v. Erie Insurance Property and Casualty Company*, 2019 WL 5196381, at *3 (N.D. W.V. Oct. 15, 2019).

33.     **References Regarding Defendant's On-Boarding and Hiring Costs Associated with Hiring a Driver**

Plaintiffs seek the Court enter an order precluding Defendant from arguing, offering evidence, or eliciting testimony concerning Defendant's on-boarding and hiring costs associated with hiring a driver.  Such information is irrelevant for the purpose of proving or disproving any fact of consequence in this action and should be excluded as the fact that Defendant incurred costs in hiring Plaintiffs has no probative value with respect to whether Defendant violated the law.  Fed. R. Evid. 401-403; *see also Arriaga v. Florida Pacific Farms, L.L.C.,* 305 F.3d 1228, 1236 (11th Cir. Sept. 11, 2002) (hiring costs are the costs of an employer and cannot constitute remuneration for employment under the FLSA); 29 C.F.R. § 531.36(b).

34.     **References regarding experience drivers gain at PAM.**

Plaintiffs seek the Court enter an order precluding Defendant from arguing, offering evidence, or eliciting testimony concerning any alleged benefit other than wages that Defendant allegedly provided to Plaintiffs for working for Defendant, including references that Defendant helps new drivers gain experience.  Such information is irrelevant for the purpose of proving or disproving any fact of consequence in this action and should be excluded as the alleged existence of such non-wage benefits does not bear upon the issue of whether Defendant violated the law. Fed. R. Evid. 401-403.

35.     **References Regarding the "Impact" of a Verdict on PAM, shareholders of PAM, employees of PAM, the transportation industry, or the local, state, or national economy.**

Plaintiffs seek the Court enter an order precluding Defendant from arguing, offering evidence, or eliciting testimony to allege, suggest, or establish that the "impact" of any verdict award on the financial solvency of PAM, the health of PAM, shareholders of PAM, employees of PAM, or the "impact" of such verdict on other trucking companies or the trucking industry.

Similarly, the Court should preclude Defendant form making reference to how any verdict might "impact" the local, state, or national economy.  Plaintiffs note that during oral argument directed at Your Honor, Defendant's counsel stated the PAM was "faced with potentially annihilating damages which threaten the livelihoods of 700 employees at Tontitown…" and stated that class waivers were appropriate given that "one out of 12 employees in the State of Arkansas are employed in the transportation industry."  Transcript of January 17, 2020 Hearing at 22:19-23:3.  Such statements are fully irrelevant and clearly designed to influence the jury verdict based on emotional appeal that has no bearing on any relevant issue in the case.

Such reference is fully irrelevant to the issues to be tried and additionally is intentionally designed to cause undue prejudice to Plaintiffs by seeking the jury reach a verdict based on an emotional appeal rather than the law.

Thus, the Court should enter an order precluding Defendant from making any such reference.

**36.**    **References to Settlement Offers or Offers of Judgment**

Plaintiffs seek the Court enter an order precluding Defendant from arguing, offering evidence, or eliciting testimony concerning settlement offers, statements made in the course of settlement negotiations or offers of judgment.  Such information is inadmissible under Fed. R. Evid. 408 (concerning compromise offers and negotiations) and Fed. R. Civ. P. 68 (concerning offers of judgment).

*37.*    **References that Class Counsel were Counsel in Prior FLSA Class Action Lawsuits, Against Trucking Companies, Including *Estes et al. v. PAM Transport***

Plaintiffs seek the Court enter an order precluding Defendant from arguing, offering evidence, or eliciting testimony concerning: 1) class counsel's involvement in other class action

lawsuits; or 2) class counsel's involvement in any class action lawsuits against trucking companies, including prior lawsuits against Defendant.

Defendant has made clear that absent such order, it will make such argument in court. During oral argument, Defendant's counsel argued to this Court that PAM's predicament was caused not by PAM's failure to comply with basic wage and hour law of its workforce, but instead cause by "two class actions *__filed by Mr. Swidler's firm__* and then there's yet a third class action…" Transcript of January 17, 2020 Hearing at 22:16-22:18 (emphasis added).

Such evidence is irrelevant and, if admitted, would likely mislead the jury such that its probative value is far outweighed by the potential for undue prejudice. Fed. R. Evid. 401-403; *Raspberry*, 385 F. Supp. 3d 792, 799-801.

## 38. <u>References that Class Actions are bad for business, bad for Defedant's business, bad for the economy, or bad public policy.</u>

Plaintiffs seek the Court enter an order precluding Defendant from arguing, offering evidence, or eliciting testimony concerning: 1) the class actions are bad for business; 2) that class actions are bad for Defendant's business; 3) the class-action lawsuits hurt the economy or businesses in general; or 4) class actions are bad public policy. Such evidence is irrelevant and, if admitted, would likely mislead the jury such that its probative value is far outweighed by the potential for undue prejudice. Fed. R. Evid. 401-403; *Raspberry*, 385 F. Supp. 3d 792, 799-801.

## 39. <u>References Regarding the Negative Impact of Lawsuits Generally, Attorney-Driven Lawsuits, Class-Action Lawsuits, or Other Lawsuits Filed by Plaintiffs' Counsel on Behalf of Plaintiffs' or Other Clients</u>

Plaintiffs seek the Court enter an order precluding Defendant from arguing, offering evidence, or eliciting testimony concerning: 1) the negative impact of lawsuits generally; 2) the impact or existence of attorney-driven lawsuits; 3) the impact of class-action lawsuits; or the impact of other lawsuits filed by Plaintiffs' counsel on behalf of Plaintiffs or other clients.

Such evidence is irrelevant and, if admitted, would likely mislead the jury such that its probative value is far outweighed by the potential for undue prejudice.  Fed. R. Evid. 401-403; *Raspberry*, 385 F. Supp. 3d 792, 799-801.

**40.**    **References that Plaintiffs' Counsel is responsible for the lawsuit.**

Plaintiffs seek the Court enter an order precluding Defendant from arguing, offering evidence, or eliciting testimony to allege, suggest, or establish that Plaintiffs' counsel are responsible for the instant lawsuit.  Such information is wholly irrelevant to the issues in this matter and can only serve to waste time, mislead the jury and unfairly prejudice Plaintiffs such that any probative value is substantially outweighed by the potential for prejudicial effect, making such information inadmissible under Fed. R. Evid. 403.

Thus, in accordance if Fed. R. Evid. 401, 402, and 403, Plaintiffs respectfully request that Defendant be precluded from putting forth the contention that Plaintiffs' counsel are responsible for the instant lawsuit.

**41.**    **References Regarding Whether PAM is a "Bad" or "Good" Company or Whether PAM's Drivers Enjoy Their Jobs**

Plaintiffs seek the Court enter an order precluding Defendant from arguing, offering evidence, or eliciting testimony to allege, suggest, or establish that concerning whether Defendant is a "good" or "bad" company or whether Defendant's employees enjoyed their jobs.  Any such evidence should be excluded as irrelevant as it does not bear upon the issue of whether Defendant violated the law with regards to its employment of Plaintiffs.

**42.**    **References to the *Estes v. PAM Transport* lawsuit, other than the allegations made in it, when it was filed, and when it resolved.**

Plaintiffs seek the Court enter an order precluding Defendant from arguing, offering evidence, or eliciting testimony concerning the *Estes v. PAM Transport Lawsuit* other than when it was filed, what the allegations were, and when it resolved.

40

Defendant seeks to introduce unspecified pleadings and orders from the *Estes* lawsuit, as well as the settlement agreement entered into in that case.  Though the *Estes* lawsuit has some relevance in demonstrating Defendant's willfulness, Defendant seeks to introduce information well beyond what is relevant to the instant dispute.

First, Defendant should not be permitted to elicit testimony or offer any suggestion that Plaintiffs' counsel was counsel in the *Estes* lawsuit.  Similarly, the amount of the settlement and the terms of the settlement are not relevant to Defendant's willfulness.  The only relevant issue from *Estes* is that PAM was aware of the allegations which Plaintiffs make here from, at the latest, the moment the *Estes* lawsuit was filed.

Thus, the Court should enter an order that all that may be elicited is that PAM was sued for minimum wage on a collective/class-wide basis before, that PAM and the drivers settled, and that following that lawsuit this action was filed.  No other information is relevant to PAM's willfulness.

Any other reference to the lawsuit, counsel of the lawsuit, or the amount and terms of the settlement are irrelevant and, if admitted, would likely mislead the jury such that its probative value is far outweighed by the potential for undue prejudice.  Fed. R. Evid. 401-403; *Raspberry*, 385 F. Supp. 3d 792, 799-801.

**43.**   **The Court should preclude Defendant from introducing "cherry-picked" Interrogatory Responses unless Plaintiff is permitted to introduce the Interrogatory Responses of the entire Discovery Sample selected by Defendant.**

Plaintiffs also seek a ruling from the Court that Defendant be precluded from introducing cherry-picked Interrogatory Responses from the sample of Opt-In Plaintiffs it selected to respond to Interrogatories, unless Plaintiffs are permitted to introduce and admit the remaining Interrogatory Responses from the answering opt-ins. The Court should grant this relief because allowing Defendant to cherry-pick interrogatory responses when Plaintiffs are not permitted to

rely on other interrogatory responses will allow Defendant to paint a false picture of the policies and practices of drivers at PAM based on extreme anecdotal evidence.

During discovery, Defendants served written discovery requests on a sample of Opt-In Plaintiffs it selected.  If Defendant is permitted to distort the sample by cherry-picking certain opt-in plaintiffs' responses while not introducing the answers provided by all responding opt-in plaintiffs, there is a significant risk that the jury may make factual conclusions about the policies and practices at issue on the basis of immaterial and non-representative anecdotal evidence.

Fed. R. Evid. 106 provides: "[i]f a party introduces all or part of a writing. . . an adverse party may require the introduction, at that time, of any other part — or any other writing. . . — that in fairness ought to be considered at the same time." The total number of Opt-In Plaintiffs who responded to Interrogatories is small, but, in general, when all Interrogatories are considered together, a jury can identify the points of commonalities which can be extrapolated to the entire class, even if the sample was not chosen in a scientific manner. However, if Defendant is permitted to introduce the response of only one or two drivers only, perhaps to highlight a particular idiosyncratic response contained in such Interrogatories, the risk of an improper extrapolation based on unique and idiosyncratic evidence is significant. And, of course, whether Defendant is responsible for paying for time logged as sleeper berth or off-duty time while the Drivers are over-the-road on multi-day tours of duty will not be based on individual and unique anecdotes, but rather on the common policies, practices, and experiences of all drivers.

For example, while not particularly relevant to the dispute, Defendant sought plaintiffs to identify the typical amount of time he or she had to wait in line to fuel.  Consider if one of the opt-in plaintiffs stated he never waited in line, while all of the remaining responding opt-ins answered this interrogatory by identifying that they always had to wait more than 1 hour. If only the

Defendant is allowed to introduce interrogatories, Defendant will be able to create a false narrative that the extreme exception is actually the rule. If all the Interrogatories can be introduced, then both parties will be able to show that within the small sample of opt-in plaintiffs responding to Interrogatories, certain answers were common to the sample, while other answers were idiosyncratic. In other words, by allowing the jury to see the entire sample, the jury will be able to assign the appropriate weight to the interrogatory responses.

In contrast, allowing the introduction of extreme anecdotal evidence without the appropriate context, as Fed. R. Evid. 106 requires, would be far more prejudicial than probative and would leave the jury with a false sense of what the representative discovery uncovered, and accordingly, would require the exclusion of these Interrogatories under Fed. R. Evid. 403. *Phx. Assocs. III v. Stone*, 60 F.3d 95, 102 (2d Cir. 1995) ("The common-law doctrine of completeness, on which Rule 106 is based, likewise requires that a full document or set of documents be introduced: '[W]hen one party has made use of a portion of a document, such that misunderstanding or distortion can be averted only through presentation of another portion, the material required for completeness is ipso facto relevant and therefore admissible.'") (quoting *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 172 (1988)); *United States v. Coughlin*, 821 F.Supp.2d 8, 30 (D.D.C. 2011) ("regardless of whether this evidence is inadmissible hearsay or not, he can introduce it under the rule of completeness"); United States v. Sutton, 801 F.2d 1346, 1368 (D.D.C. 1986); *see also United States v. Green*, 694 F.Supp. 107, 110 (E.D. Pa. 1988) ("the Rule [of completeness] permits the introduction of evidence that is otherwise inadmissible under other Federal Rules"). But because Plaintiffs believe the prejudice of a jury improperly basing class-wide conclusion on extreme anecdotal evidence will be alleviated if all Interrogatories are introduced, the appropriate remedy is not exclusion under Fed. R. Evid. 403, but inclusion of the

43

additional Interrogatories under Rule 106. And Defendant will not be prejudiced by this relief, because Defendant selected the opt-in plaintiffs on whom it served Interrogatories according to its own criteria.

Accordingly, the Court should preclude Defendant from introducing interrogatory responses from select Opt-In Plaintiffs unless Plaintiffs are permitted to introduce the remaining interrogatory responses from the remaining answering opt-in plaintiffs.

Respectfully Submitted,

*/s Justin L. Swidler*
Justin L. Swidler, Esq.
Richard S. Swartz, Esq.
Travis Martindale-Jarvis, Esq.
Joshua S. Boyette, Esq.
Swartz Swidler, LLC
1101 N. Kings Highway Ste 402
Cherry Hill, NJ 08034
Phone: 856-685-7420

Date:   January 27, 2020