IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

DAVID BROWNE, ANTONIO
CALDWELL, and LUCRETIA HALL,
on behalf of themselves and
others similarly situated                                                    PLAINTIFFS

V.                                    CASE NO. 5:16-CV-5366

P.A.M. TRANSPORT, INC., et al.                                            DEFENDANTS

### SUPPLEMENTAL OPINION AND ORDER

On January 17, 2020, the Court granted Plaintiffs summary judgment on their claims for minimum wage for all time logged as "driving" and "on duty not driving" and rest breaks of twenty minutes of less under both the federal Fair Labor Standards Act ("FLSA") and the Arkansas Minimum Wage Act ("AMWA"). (Doc. 216). The Court also held that "violations of [the FLSA and the AMWA] are measured from the regular pay day on which an employer fails to pay at least minimum wage for every hour worked during the corresponding pay period." *Id.* at 19. The Court observed that "[n]either the FLSA nor the AMWA require a specific frequency of pay, so an employer is free to set his own regular pay day intervals." *Id.* Finding that the issue was not adequately briefed, on January 22, 2020, the Court directed the parties to file supplemental briefing on "the issue of when PAM's 'regular pay day' falls for the purposes of calculating damages on the minimum wage claims." (Doc. 219, p. 2). The Parties were instructed to rely only on the summary judgment record and not to provide any supplemental testimony. Plaintiffs and Defendants each filed a Supplemental Brief at Docs. 245 and 244 respectively.

1

As the Court noted in its Order of January 17, it is undisputed that workweeks for P.A.M. Transport, Inc. ("PAM") begin at 12:01 am on Saturday and run until midnight on Friday and that payroll is issued on Thursday. Plaintiffs argue that PAM violated state and federal minimum wage laws when it failed to pay drivers for all hours worked between Saturday and Friday on the following Thursday. In creating his damages calculations, Plaintiffs' expert, Dr. Robert Speakman, included damages for all the weeks in which minimum wage was not paid to a driver on the Thursday immediately following the week in which the hours were worked. However, Dr. Speakman also noted that there were circumstances in which drivers were paid for those hours on a subsequent Thursday, which he termed "Late Payments Made after Payday for Sub-Minimum Wage Weeks" ("Late Payments"). For example, where a driver began a load during one workweek and completed it during the following workweek, what Dr. Speakman terms a "cross-week load," the entire load was paid on the Thursday after the week in which the load was completed and the driver's paperwork submitted. Dr. Speakman's calculation of Late Payments also includes instances where amounts that had been deducted by PAM from drivers' pay to be placed in an escrow account were returned to a driver following her separation from the company.

Defendants argue that any damages for unpaid wages owed to drivers should be reduced by the amount of these Late Payments. Wages that were paid on subsequent Thursdays, Defendants assert, cannot be considered *unpaid* wages for which drivers must be compensated, and awarding drivers damages for an amount they have already been paid would be to award them double damages. Plaintiffs respond that Defendants should not receive "credit" for these Late Payments because they were just that, late

2

payments. Plaintiffs assert that if the employer is permitted to pay employees on a "sliding scale system where pay is never actually due until a certain task is completed," it would undermine completely the purpose and function of the minimum wage laws. (Doc. 245, p. 5). Employers could choose to pay employees at any time and an employee would never know when a violation had occurred and the statute of limitations for seeking redress began to accrue.

The Court agrees that a sliding scale system is not appropriate and an employer must have "objective calendar-based pay periods," *id.*, as Plaintiffs put it, so that an employee knows when her wages are owed and when her cause of action accrues under the minimum wage laws. PAM's Payroll Procedure, as described in its Driver Manual, the contents of which are not disputed, reads in relevant part as follows:

> Driver payroll will be issued each Thursday. . . . Over-the-road drivers will be paid on loads for which signed bills of lading have been scanned by Monday at 10:00 a.m. Central time and were emptied during the pay week (Friday at midnight through Friday at midnight, Central time).

(Doc. 162-2, p. 26). From this, the Court can conclude that PAM's "regular pay day" is defined as the Thursday after the load is emptied and the driver uploads the required paperwork.

The Court does not believe that it is permissible for PAM to withhold the minimum wage from drivers while it is awaiting paperwork. PAM needs the bills of lading not to calculate the hours worked by the driver and the wages she is owed but rather for its own business purposes—to ensure PAM is paid by the customer. PAM is making a business decision to withhold minimum wages solely to compel compliance with administrative needs. The Court understands that PAM itself may not be paid by the customer without the bills of lading and having drivers upload them is therefore important to PAM's

3

business. PAM is free to discipline drivers who fail to provide the bills of lading by, for example, reprimanding or even terminating them, but it may not withhold the minimum wage for hours worked as a form of discipline.[1] It is undisputed that PAM had the ability to track the position of its trucks using the Qualcomm Electronic On Board Recording system. (Docs. 161 & 168, ¶ 30). Therefore, PAM did not need the drivers' paperwork in order to calculate the wages owed. This requirement served only to shift the business risk from the company to the individual driver.

Eliminating the paperwork requirement as impermissible still leaves PAM's policy of paying on the Thursday of the week after the load is emptied. The Court sees no reason that PAM cannot set its pay periods and regular pay day in this way. The FLSA and AMWA permit PAM to set its own regular pay days, and the policy laid out in the Driver Manual establishes that PAM's policy was to pay drivers on the Thursday after the load was completed rather than the Thursday of the week after the miles were driven. This is an "objective, calendar-based pay period" that allows a driver to know when wages are due to her pursuant to the company's policy and when a cause of action to enforce a minimum wage violation accrues. In *Biggs v. Wilson*, the Ninth Circuit cautioned that "[u]nless there is a due date after which minimum wages become unpaid, imposing liability for both unpaid minimum wages and liquidated damages would be meaningless." 1 F.3d 1537, 1539 (9th Cir. 1993). In its Order of January 17, this Court agreed that "[t]he only logical point that wages become 'unpaid' is when they are not paid at the time work

---

[1] To the extent that PAM argues that drivers have agreed to this policy by signing their Drivers Manuals and accepting employment with PAM, the Court notes that the minimum wage requirements of the FLSA cannot be waived. *See Copeland v. ABB, Inc.*, 521 F.3d 1010, 1014 (8th Cir. 2008).

4

has been done, the minimum wage is due, and wages are ordinarily paid—on payday." *Id.* The Court's holding now satisfies these concerns. PAM's "regular pay day" can be considered the Thursday after a load is completed—a clearly defined and objectively knowable date for the employee to determine if her employer has violated the minimum wage laws.

Just because PAM chose to pay drivers each week in deference to drivers' preferences does not mean PAM was required to pay drivers for all hours worked in the previous week, so long as they were paid pursuant to a clearly defined policy. Such a ruling does not run afoul of any authority cited by the parties or of which the Court is aware. The FLSA implementing regulations require that each workweek stand alone for the purposes of calculating overtime compensation, forbidding the averaging of hours across weeks, 29 C.F.R. § 778.104, but that raises no concern here because truck drivers are exempt from the overtime requirements of the FLSA. PAM must pay each driver minimum wage for every hour worked during each workweek, but it is permitted to do so pursuant to a regular policy of paying drivers on the Thursday following the week in which the load was emptied rather than the Thursday after the hours are worked.[2]

The Court therefore requires revised calculations separating out the amounts that were lumped into the Late Payment category in Dr. Speakman's initial report to enable the Court to enter judgment on the amount of damages owed on this claim. Since the Court concludes that PAM's "regular pay day" is the Thursday after a load is emptied,

---

[2] This also sets the date for calculating the statute of limitations for Plaintiffs' minimum wage claims. If a Plaintiff is not paid minimum wage for the hours worked under a load on the Thursday of the week after that load is completed, her cause of action under the FLSA and the AMWA begins to accrue on that Thursday.

Plaintiffs' damages on their claim for minimum wage for all time logged as "driving" and "on duty not driving" and rest breaks of twenty minutes of less under the FLSA and the AMWA do not include payments for cross-week loads made on the Thursday of the week after the load was completed. This amount will be credited against Dr. Speakman's calculation of the minimum wage damages in Column 1.[3] However, PAM *is* liable for damages for weeks when a driver was not paid pursuant to this policy, for example because she had not uploaded a bill of lading. Wages that were paid *after* the Thursday of the week after a load was completed should be separated out and will *not* be credited against the Column 1 damages owed to Plaintiffs.[4]

Since the Court denied Plaintiffs' motion for summary judgment on their claim that Defendants' violations were willful, the Court will include only two years of FLSA claims at this time. Should the jury be presented with the issue of willfulness and make an affirmative finding, the Plaintiffs will be entitled to a third year of damages under the FLSA on this claim. Plaintiffs also seek liquidated damages equal to the amount of damages. The Eighth Circuit instructs that "[a]n award of liquidated damages under § 216(b) is mandatory unless the employer can show good faith and reasonable grounds for believing that it was not in violation of the FLSA." *Braswell v. City of El Dorado*, 187 F.3d

---

[3] The Court does not perceive the calculation of Column 1 to be disputed. Plaintiffs will be permitted to update the amount before the final award.

[4] The issue of whether the escrow payments were validly deducted from drivers' paychecks was not presented to the Court at summary judgment. Therefore, the Court's ruling does not resolve whether those deductions were permissible and if not, whether PAM would be entitled to an offset for the amount that was returned to drivers after separation from PAM. The amount that was returned to drivers once they no longer worked for PAM should be separated out from the Late Payment category for the purposes of the calculating the damages on the minimum wage claim.

954, 957 (8th Cir. 1999).[5] Once a violation of the wage-and-hour laws is established, the district court is tasked with determining whether liquidated damages are to be awarded and in what amount. *See, e.g., Chao v. Barbeque Ventures, LLC*, 547 F.3d 938, 940, 943 (8th Cir. 2008). Since liquidated damages are an issue for the judge and not the jury, the Court will defer a final ruling on these damages until after trial.

The Parties are requested to file a joint supplement reflecting the revised calculations, separating out the Late Payments as described by the Court above, no later than **February 13, 2020.** To the extent that making these revisions is not feasible in the time allotted, or if the Parties agree with the Court's assessment that this is purely a matter of arithmetic and not an issue subject to dispute, the Parties may confer and alert the Court to a more appropriate deadline, including postponement until after trial.

Finally, seeing no dispute on the calculation of damages on Plaintiffs' separate wage advance claims under Ark. Code Ann. § 11-4-402(a), the Court will enter judgment in the amount of $1,995,063, for the period of December 6, 2013 through May 31, 2019. Plaintiffs will be permitted to provide updated calculations before the final amount is awarded.

**IT IS SO ORDERED** on this 6th day of February, 2020.

TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE

---

[5] The applicable version of the AMWA's liquidated damages provision, Ark. Code Ann. § 11-4-218(a), is materially identical to the FLSA and is applied in according to the same standard. *See Fochtman v. DARP, Inc.*, 2019 WL 4740510, at *12 n.17 (W.D. Ark. Sept. 27, 2019).