## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF ARKANSAS
## FAYETTEVILLE DIVISION

| | |
|---|---|
| **DAVID BROWNE, LUCRETIA HALL, and ANTONIO CALDWELL,** *on behalf of themselves and all those similarly situated,* | |
| **Plaintiffs,** | **Case No. 5:16-CV-5366** |
| **vs.** | **CERTIFIED CLASS ACTION** |
| **P.A.M. TRANSPORT, INC.** | |
| **Defendant.** | |

## SETTLEMENT AND RELEASE AGREEMENT

This Settlement and Release Agreement (the "Agreement") is entered into by and between Plaintiffs David Browne, Lucretia Hall, and Antonio Caldwell, and all members of the Certified Class (collectively "Plaintiffs") and Defendant P.A.M. Transport, Inc. ("Defendant," and together with the Named Plaintiffs, the "Parties").

## RECITALS

**WHEREAS**, Plaintiffs have filed a Complaint against Defendant asserting Defendant violated the Fair Labor Standard Act ("FLSA"), the Arkansas Minimum Wage Act ("AMWA") and other state laws by failing to pay minimum wage for all hours worked, making unlawful deductions from Plaintiffs' pay, and collecting unlawful interest rates on employee advances (the "Litigation"); and

**WHEREAS,** on January 25, 2019, the Court certified the Litigation as a Class Action pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3) and then entered its Order granting final certification to this action as a collective action under the FLSA;

**WHEREAS**, on January 17, 2020, the Court entered its Order and Opinion granting partial summary judgment to Plaintiffs as to their claims for violations of Arkansas Minimum Wage Act, the FLSA, and the Arkansas Wage Payment Law;

**WHEREAS**, on February 6, 2020, the Court entered its Supplemental Opinion and Order determining the appropriate calculation of the damages for the Defendant's violation of FLSA and AMWA found in its January 17, 2020 Order;

**WHEREAS,** on February 14, 2020, the Parties reached a settlement and executed a "Joint Memorandum of Proposed Settlement," containing all material terms of the settlement, and which was submitted to with the Court;

**WHEREAS,** the Parties stipulate and agree that, for settlement purposes only, the requisites for establishing collective action certification under the FLSA pursuant to 29 U.S.C. Sec. 216(b), and class certification pursuant to Fed. R. Civ. P. 23 (a) and 23(b)(3) are met;

**WHEREAS,** the purpose of this Agreement is to settle fully and finally all claims as set forth in Section 4 of this Agreement, for all individuals employed as over-the-road truck drivers by PAM Transport, Inc. from December 9, 2013 through December 31, 2019 and who have not filed a notice to opt-out of the Litigation or the Settlement; this Release does not cover any claim for any period of time where such individual worked for PAM in any capacity other than an over-the-road truck driver or was designated by PAM as an independent contractor;

**WHEREAS,** Defendant denies all of the allegations made by Plaintiffs in the Litigation and denies that it is liable or owes damages to anyone with respect to the alleged facts or causes of action asserted in the Litigation. Nonetheless, without admitting or conceding any liability or damages whatsoever, Defendant agrees to settle the Litigation on the terms and conditions set forth in this Agreement, to avoid the burden, expense, and uncertainty of continuing the Litigation; and

**WHEREAS,** Class Counsel analyzed and evaluated the merits of the claims made against Defendant in the Litigation, conducted interviews with class and collective members, obtained and reviewed documents relating to Defendant's compensation policies and practices, analyzed payroll data, messaging data, Qualcomm data, and HOS log data, took and defended more than 50 depositions, retained experts, engaged in significant motion practice, partially prevailed at summary judgment, obtained class certification, and maintained class certification through trial, and based upon their analysis and evaluation of a number of factors, and recognizing the substantial risks of litigation, including the possibility that the Litigation, if not settled now, might result in a recovery less favorable than the settlement, that any potential recovery would not occur for several years, that Defendant would certainly appeal any adverse decision, and that Defendant's ability to pay a judgment significantly higher than the amount obtained in settlement was challenged, Plaintiffs' Counsel are satisfied that the terms and conditions of this Agreement are fair, reasonable, and adequate and that this Agreement is in the best interests of the Plaintiffs and the class and collective.

NOW, THEREFORE, in consideration of the mutual covenants and promises set forth in this Agreement, as well as the good and valuable consideration provided for herein, the Parties agree to a full and complete settlement of the Litigation on the following terms and conditions.

## 1.   DEFINITIONS

The defined terms set forth in this Agreement have the meanings ascribed to them below.

**1.1**   "Over-the-Road Truck Driver" means those persons employed by Defendant as an Over-the-Road Truck Driver in the United States, as that term was commonly used by Defendant. The terms includes only individuals assigned to a truck containing a sleeper berth, who

regularly were required to spend nights away from home in the truck, and who were designated as "employees" by Defendant.

1.2     "Class Counsel" or "Plaintiffs' Counsel" means Swartz Swidler, LLC and Robert D. Soloff, P.A.

1.3     "Court" means the United States District Court for the Western District of Arkansas.

1.4     "Defendant" or "PAM" means PAM Transport, Inc.

1.5     "Defendant's Counsel" means Dickinson Wright PLLC and Conner & Winters, LLP.

1.6     "Eligible Settlement Class Member" means any person who worked as an Over-the-Road Truck Driver for Defendant from December 9, 2013 to December 31, 2019.

1.7     "Eligible Work Week" means any and all weeks during which an Eligible Settlement Class Member performed any compensable work for Defendant as an Over-the-Road Truck Driver, but excludes all workweeks where the Eligible Settlement Class Member worked for PAM exclusively in a position that PAM designated as a non-employee/independent contractor position, regardless of whether PAM's designation is ever challenged.

1.8     "Employer Payroll Taxes" means the employer's share of all taxes and withholdings it is required to make arising out of or based upon the payment of employment/wage compensation in this Litigation, including FICA, FUTA, and SUTA obligations.

1.9     "Fairness Hearing" means the hearing on the Motion for Judgment and Final Approval.

1.10    "Gross Settlement Amount" means Sixteen Million, Five-Hundred Thousand Dollars ($16,500,000.00), which is the total amount that Defendant has agreed to pay to fully resolve and settle this Litigation, including any claim for attorney's fees and costs approved by the Court; any and all amounts to be paid to Eligible Settlement Class Members; the cost of settlement administration; any Court-approved Service Awards; and the Reserve Fund.  PAM will not be required to pay any more than the Gross Settlement Amount, except for the Employer Payroll Taxes.

1.11    "Last Known Address" or "Last Known Addresses" means the most recently recorded personal mailing address for an Eligible Settlement Class Member as shown in PAM's records, unless a more recent address has been provided to Class Counsel by the Eligible Settlement Class Member.

1.12    "Last Known E-mail Address" or "Last Known E-mail Addresses" means the most recently recorded e-mail address as shown in PAM's records, unless a more recent address has been provided to Class Counsel by the Eligible Settlement Class Member.

1.13    "Last Known Telephone Number" or "Last Known Telephone Numbers" means the most recently recorded personal mobile or home telephone number for an Eligible Settlement

Class Member as shown in PAM's records, unless a more recent address has been provided to Class Counsel by the Eligible Settlement Class Member.

1.14 "Litigation" or the "Lawsuit" or the "Action" mean the lawsuit styled *Browne, et. al. v. P.A.M. Transport. Inc.*, filed in the United States District Court for the Western District of Arkansas, Case No. 5:16-cv-5337. "Complaint" means the most current Amended Individual, Class, and Collective Action Complaint filed on the Docket in the Litigation.

1.15 "Named Plaintiffs" means David Browne, Lucretia Hall, and Antonio Caldwell.

1.16 "Net Settlement Fund" means the remainder of the Gross Settlement Amount after deductions, payments, or allocations for: (a) the Settlement Administrator's fees and costs; (b) Court-approved attorney's fees and costs for Plaintiffs' Counsel; (c) Court-approved Service Awards; and (d) the Reserve Fund.

1.17 "Order Granting Final Approval" or "Approval Order" means an Order to be approved and entered by the Court, which gives final approval to the Settlement and this Agreement, and enters final judgment, in a form substantially similar to the Proposed Approval Order and Judgment Approving Settlement.

1.18 "Order Granting Preliminary Approval" means the Order entered by the Court preliminarily approving, *inter alia*, a settlement class, the terms and conditions of this Agreement, the manner and timing of providing notice to the Class, and the time period for opt-outs and objections.

1.19 "Parties" collectively means the Named Plaintiffs and Defendant.

1.20 "Qualified Settlement Fund" or "QSF" means the account established by the Settlement Administrator from the Gross Settlement Amount paid by Defendant. The QSF will be controlled by the Settlement Administrator subject to the terms of this Agreement and the Court's Order(s). Interest, if any, earned on any monies in the QSF will become part of the Net Settlement Fund.

1.21 "Releasees" means PAM and each and all of its parents, subsidiaries, predecessors, successors, officers, and agents.

1.22 "Reserve Fund" means a fund in the amount of Fifty Thousand Dollars ($50,000) allocated from the Gross Settlement Amount, that the Settlement Administrator may use, with approval from the Parties (which will not be unreasonably withheld), to make payments to Eligible Class Members who dispute their allocation amounts.

1.23 "Settlement" means the settlement between the Parties embodied and contained in this Agreement.

1.24 "Settlement Administrator" means the Settlement Administrator to be selected by Plaintiffs and approved by PAM.

1.25    "Settlement Agreement" or "Agreement" means this agreement and the exhibits hereto, which the Parties understand and agree set forth all material terms and conditions of the Settlement between them, and which is subject to Court approval.

1.26    "Settlement Check" means the check issued to Eligible Settlement Class Members for their proportionate share of the Net Settlement Fund calculated in accordance with this Agreement.

1.27    "Settlement Hearing" means a hearing set by the Court for the purpose of finally (a) determining the fairness, adequacy and reasonableness of the Agreement; and (b) entering Judgment.

1.28    "Settlement Notice" means the document entitled Notice of Settlement, to be approved by the Court in a form substantially similar to the Notice attached hereto as Exhibit A.

## 2.    APPROVAL AND NOTICE TO ELIGIBLE SETTLEMENT CLASS MEMBERS

2.1    Binding Agreement.  This Agreement is a binding agreement, pending approval of the Court, and contains all material agreed-upon terms for the Parties to seek a full and final settlement of the Litigation.

2.2    Duties of the Settlement Administrator.  The Settlement Administrator will be responsible for establishing a QSF account; allocating funds from the Gross Settlement Amount for the Reserve Fund; preparing and mailing the Settlement Notices to Eligible Settlement Class Members; preparing and mailing Settlement Checks; distributing approved Service Awards and attorney's fees and costs; calculating and paying all appropriate taxes and complying with all applicable tax reporting obligations, including preparing and filing all applicable tax forms; and preparing a declaration describing all duties performed and claims administration statistics.

2.3    The Parties will have equal access to the Settlement Administrator and all information related to the administration of the Settlement.  The Settlement Administrator shall provide such information to counsel for either Party upon request.  The Settlement Administrator will provide regular reports to counsel for the Parties regarding the status of the mailing of the Notices to Eligible Settlement Class Members, the claims administration process, and distribution of the Settlement Checks.

2.4    PAM agrees to cooperate with the Settlement Administrator, provide accurate information, to the extent reasonably available, necessary to calculate the Settlement Checks, and assist the Settlement Administrator in locating Eligible Settlement Class Members.  The Parties agree that it is their mutual goal to maximize the percentage of Eligible Class Members who cash their Settlement Checks.

2.5    On February 17, 2020, Plaintiffs will submit to the Court a Motion for an Order Preliminarily Approving the Class Action Settlement and the Proposed Notice of Settlement of the Class Action Lawsuit and Fairness Hearing (the "Motion for Preliminary Approval").

**2.6     Class Notice.**

    **2.6.1**   Within fifteen (15) calendar days of the date of the Order Granting Preliminary Approval, PAM shall give the Settlement Administrator and Plaintiffs' Counsel a list, in electronic form, of the names, Last Known Addresses, Last Known E-mail Addresses, and Social Security numbers, and Eligible Work Weeks for each Eligible Settlement Class Member ("Class List").

    **2.6.2**   Within fifteen (15) calendar days after receiving the information described in Section 2.6.1, the Claims Administrator shall mail, via First Class United States mail, postage prepaid, and email, the Notice of Proposed Settlement of Class Action Lawsuit and Fairness Hearing in the draft form attached as Exhibit A, to all Eligible Class Members using each individual's last known address and email as recorded in PAM's records. The Claims Administrator shall take all reasonable steps to obtain the correct address of any Class Members for whom the notice is returned by the post office as undeliverable and shall attempt re-mailings as described below. The Claims Administrator shall notify Class Counsel and Defendant's Counsel of any mail sent to Class Members that is returned as undeliverable after the first mailing as well as any such mail returned as undeliverable after any subsequent mailing(s).

**2.7     Class Member Opt-Out.**

    **2.7.1**   Any Eligible Settlement Class Member may request exclusion from the Class by "opting out." Additionally, any Eligible Class Member who signed a consent form to opt-in to the collective action filed pursuant to the FLSA may withdraw their consent to participate in the collective action. Class Members who choose to do so must mail a written, signed statement to the Claims Administrator that he or she is opting out of the monetary portion of the Settlement ("Opt-Out Statement"). To be effective, such Opt-Out Statements must be sent via First Class United States Mail and postmarked by a date certain to be specified on the Notice of Proposed Class Action Lawsuit and Fairness Hearing, which will be sixty (60) calendar days after the Claims Administrator mails the Notice. The 60-day period will begin to run from the first mailing. The end of the "Opt-Out Period" shall be the first business day following the sixty (60) calendar-day period after the mailing. The Claims Administrator shall, within five (5) calendar days of completing the mailing, notify Class Counsel and Defendant's Counsel in writing by email the precise date of the end of the Opt-Out Period.

    **2.7.2**   The Claims Administrator shall stamp the postmark date on the original of each Opt-Out Statement that it receives and shall serve copies of each Statement on Class Counsel and PAM's Counsel not later than three (3) calendar days after receipt thereof. The Claims Administrator also shall, within three (3) calendar days of the end of the Opt-Out Period, file with the Clerk of Court, stamped copies of any Opt-Out Statements. The Claims Administrator shall, within 24 hours of the end of the Opt-Out Period, send a final list of all Opt-Out Statements

to Class Counsel and Defendant's Counsel by both email and overnight delivery. The Claims Administrator shall retain the stamped originals of all Opt-Out Statements and originals of all envelopes accompanying Opt-Out Statements in its files until such time as the Claims Administrator is relieved of its duties and responsibilities under this Agreement.

**2.8    Objections to Settlement.**

2.8.1    Eligible Settlement Class Members who wish to present objections to the proposed settlement at the Fairness Hearing must first do so in writing. To be considered, such statement must be sent to the Claims Administrator via First-Class United States mail, or e-mail, and be received by the Claims Administrator by a date certain, to be specified on the Notice of Proposed Class Action Lawsuit and Fairness Hearing, which shall be the final date of the Opt-Out Period. The Claims Administrator shall stamp the date received on the original and send copies of each objection to Class Counsel and Defendant's Counsel by email and overnight delivery not later than three (3) calendar days after receipt thereof. The Claims Administrator shall also file the date-stamped originals of any and all objections with the Clerk of Court within three (3) calendar days after the end of the Opt-Out Period.

2.8.2    An objector also has the right to appear at the Fairness Hearing either in person or through counsel hired by the objector. An objector who wishes to appear at the Fairness Hearing must state his or her intention to do so at the time he/she submits his/her written objections. An objector may withdraw his/her objections at any time. Any Class Member who has submitted an Opt-Out Form may not submit objections to the settlement.

2.8.3    The Parties may file with the Court written responses to any filed objections not later than fourteen (14) calendar days before the Fairness Hearing.

**2.9    Entry of Order**.  At the Fairness Hearing, the Parties will request that the Court, among other things, (a) enter an Order in accordance with this Agreement; (b) approve the settlement and Agreement as final, fair, reasonable, adequate, and binding on all Class Members who have not timely opted out; and (c) enter a stipulated judgment in accordance with this Order.

**2.10**    By June 30, 2020, Plaintiffs' Counsel shall file a Motion for Order Granting Final Approval of the Class and Collective Action Settlement, along with all attorney's fees, costs, service payments, and all related relief.

**2.11**    Settlement Checks will be mailed, via First Class United States mail, postage prepaid, to Eligible Settlement Class Members by the Settlement Administrator no later than thirty (35) calendar days after the Order Granting Final Approval is entered unless an appeal of the Order Granting Final Approval is filed by an opt-in Plaintiff or Class Member. If there is an appeal of the Approval Order, Settlement Checks shall not be sent until all

appeals are decided and the case is returned to the district court and the district court enters an Order that the Settlement Checks should be sent.

2.12   Settlement Checks issued pursuant to this Agreement shall expire one-hundred twenty (120) calendar days after they are postmarked.  If a Settlement Check has not been cashed by any Eligible Settlement Class Member within thirty-five (35) calendar days after it is postmarked, the Settlement Administrator shall send an email to the Eligible Settlement Class Member inquiring whether they received the Settlement Check and reminding them of the expiration of the check.   Eligible Settlement Class Members may request a check be reissued for any reason.  Where a reissue is requested, the Settlement Administrator shall verify that the check was not cashed, and once verified, shall stop payment on the original check and reissue the Eligible Class Member a replacement check.  In no event shall an Eligible Settlement Class Member be issued a replacement check until any prior check sent to them has been cancelled. Eligible Class Members may request multiple check reissues if necessary, but the Settlement Administrator shall inform the Parties if any individual's requests are deemed excessive.  The Parties will confer and seek guidance from the Court if necessary.  Eligible Class Members may request reissues for expired checks provided that money remains in the Settlement Fund and has not yet been donated *cy pres.*

2.13   Following the expiration of the Settlement Checks, the Settlement Administrator shall provide the Parties with a list of the names and contact information for all Eligible Settlement Class Members who have not signed and cashed a Settlement Check.  The Settlement Administrator shall take reasonable steps, including sending an email or first-class mail (where email is not available), advising the Eligible Settlement Class Member that they have uncashed funds due to them in the Settlement, and that if they do not respond, such moneys will be donated to the St. Christopher's Fund.

2.14   The Settlement Administrator shall take all reasonable steps to obtain the correct address of Eligible Settlement Class Members for whom the Settlement Notice is returned by the United States Postal Service as undeliverable and shall make all reasonable attempts to ensure that the Settlement Notice and Settlement Check are successfully delivered.  The Settlement Administrator will notify Plaintiffs' Counsel and Defendant's Counsel of any mailing sent to any Eligible Settlement Class Member that is returned as undeliverable. To the extent any such mailing is returned as undeliverable, that Eligible Settlement Class Member shall be permitted the greater of the balance of the remaining Acceptance Period or thirty (30) calendar days from any re-mailing of the Settlement Notice to sign and cash their Settlement Check.  The Settlement Administrator shall issue a stop-payment order on all returned checks.

2.15   If within thirty (30) calendar days after the close of the Acceptance Period an Eligible Settlement Class Member reports a lost or destroyed check, and informs the Settlement Administrator that she or he did not receive a check or otherwise requests reissuance of her or his Settlement Check, the Settlement Administrator may approve the reissuance of a Settlement Check to such Eligible Settlement Class Members on a case-by-case basis for good cause shown.  Reissuance to a given Eligible Settlement Class Member will not require reissuance to any other Eligible Settlement Class Member.

2.16   Plaintiffs' Counsel and Defendant's Counsel have the right to make inquiries and receive any information from the Settlement Administrator related to the claims' administration process. The Settlement Administrator will periodically update Plaintiffs' Counsel and Defendant's Counsel regarding returned mailings for which it is unable to obtain corrected addresses.

2.17   Retention/Filing of Copies of Settlement Checks. The Settlement Administrator shall on a weekly basis compile and transmit to Defendant's Counsel and Plaintiffs' Counsel statistics on the number of individuals who have signed and cashed Settlement Checks.

2.18   Effect of Court Failure to Approve Settlement. In the event that the Court fails to approve the Settlement and/or this Agreement, either or both Parties may seek reconsideration or appellate review of the decision denying approval of the Settlement or Agreement. In the event reconsideration and/or appellate review is denied, or a mutually agreed-upon settlement modification is not approved, and the Parties decide to forego further negotiation of a settlement, the Litigation will proceed as if no settlement had been attempted. In that event, nothing in the Settlement or Agreement may be used by or against any Party under Rule 408 of the Federal Rules of Evidence.

## 3.   SETTLEMENT TERMS

### 3.1   Settlement Payments.

(A)   PAM agrees to pay a gross amount of Sixteen Million, Five Hundred Thousand Dollars ($16,500,000.00), which shall fully resolve and satisfy any and all amounts to be paid to Eligible Settlement Class Members, any Court-approved Service Awards as more fully set forth herein, the Reserve Fund, the Settlement Administrator's fees and costs and any claim for attorney's fees and costs. PAM will not be required to pay more than this amount under the terms of this Agreement, with the exception of Employer Payroll Taxes.

(B)   Within ten (10) calendar days of the Order Granting Final Approval, PAM shall deposit the Gross Settlement Amount into the QSF.

(C)   Any portion of the Net Settlement Fund that is unclaimed by Eligible Settlement Class Members who do not timely sign and cash their Settlement Check, or that otherwise remains in the QSF or under the control of the Settlement Administrator upon the final accounting of the settlement funds, shall be donated to the St. Christopher's Fund, a 501(c)(1) Organization which benefits truck drivers who are in financial distress. The St. Christopher's Fund is located at: St. Christopher Fund, P.O. Box 30763, Knoxville, TN 37930.

(D)   The final accounting and donations shall occur one year after the last settlement check is mailed.

**3.2**     **Settlement Amounts Payable as Attorney's Fees and Costs.**

(A)     In their Motion for Order Granting Final Approval, Plaintiffs' Counsel shall ask, consistent with the Court-approved Class Notice provided to class members and collective action members in February of 2019, the Court to approve payment of 33 1/3%, totaling $5,500,000 of the Gross Settlement Amount as an award of attorney's fees.  In addition, Plaintiffs' Counsel shall seek reimbursement of reasonable actual case-related costs and expenses from the Gross Settlement Amount.  Plaintiffs' counsel will submit an accounting of all costs in which it seeks to be reimbursed, and agrees it will not seek reimbursement for costs exceeding $600,000. These amounts shall constitute full satisfaction of any claim for attorney's fees or costs, and Plaintiffs agree that they shall not seek, nor be entitled to, any additional attorney's fees or costs under any theory or from any source, incurred in relation to this case.

(B)     The Settlement Fund shall pay the Settlement Administrator all reasonable costs in administrating the Settlement.

**3.3**     **Service Awards to Certain Plaintiffs.**

(A)     In their Approval Motion, Named Plaintiffs will apply to the Court to receive $50,000 each from the Gross Settlement Amount for the services they rendered to the Collective and the Class. Each individual opt-in plaintiff (who is not a Named Plaintiff), and who was deposed, will seek a service payment of $1,000, unless the individual agreed to and was expecting to travel to Arkansas to testify live at the trial.  Each opt-in Plaintiff who agreed to travel to Arkansas to testify live at the trial will seek a service payment of $2,500.  The individuals requesting service payments (other than the Named Plaintiffs) are as follows:

   a.  Opt-in Plaintiffs who Gave Deposition and Who Were Not Expected to Travel to Arkansas for Trial (requesting $1,000 service payments) (totaling $31,000 in service payments):

      1.  Acerman, Melody
      2.  Appelt, Lee
      3.  Beck, Trent
      4.  Bochart, Monte
      5.  Campbell, Clara
      6.  Estate of Robert Chapman
      7.  Eischens, Bradley
      8.  Escobedo, James
      9.  Foster, Dale
      10. Freeman, Kelly
      11. Galvan, Remigio
      12. Gonzalez, Daniel
      13. Hamden, Mustafa
      14. Harding, Kenneth

    15. Johnson, Jamal
    16. Jones, Brian Marc
    17. Keller, Jean
    18. Lark Jr., Robert
    19. Lee, Eli
    20. Mackey, Clifton
    21. Magallon, Sergio
    22. Marquez, Efrain
    23. McCrea, Johnny
    24. Miller, Otto
    25. Ogle, Joe
    26. Oxley, Shannon
    27. Palmer, Billy
    28. Pleasant, Larry
    29. Ricotta, Nicholas
    30. Trame, Tony
    31. Upholster, Christopher

b. Opt-in Plaintiffs who Agreed to Testify Live at Trial (requesting $2,500 service payment) (totaling: $17,500):

    1. Dewitt, Aaron
    2. Garcia, Martin
    3. Hampton, Adrian
    4. Jones, Stanford
    5. Rosado, Francisco
    6. Sutton, Frankie
    7. Wiseman, James

## 3.4 Distribution of Payments.

(A) The payments from the Gross Settlement Amount to Plaintiffs' Counsel for any Court-approved attorney's fees and costs will be wired to Plaintiffs' Counsel by the Settlement Administrator thirty-five (35) calendar days after the Order Granting Final Approval is entered. However, if there is an appeal of the Approval Order by any person, no payments under this Section shall be made until all appeals are decided and the case is returned to the district court and the district court enters an Order that the payments under this Section should be made.

(B) The Settlement Checks will be mailed to Eligible Settlement Class Members by the Settlement Administrator along with the Settlement Notices in accordance with Section 2.11. However, if there is an appeal of the Order Granting Final Approval by any person, no payments under this Section shall be made until all appeals are decided and the case is returned to the district court and the district court enters an Order that the payments under this Section should be made.

(C)    Service Awards, allocated from the Gross Settlement Amount, shall be paid to the individuals awarded such awards from the QSF by the Settlement Administrator within thirty-five (35) calendar days after the Order Granting Final Approval is entered.  However, if there is an appeal of the Order Granting Final Approval by any person, no payments under this Section shall be made until all appeals are decided and the case is returned to the district court and the district court enters an Order that the payments under this Section should be made.

(D)    The allocation to Eligible Settlement Class Members for their Settlement Checks will be made from the Net Settlement Fund.  The estimated proportionate share of the Net Settlement Fund for each Eligible Settlement Class Member will be determined by the Settlement Administrator pursuant to the following formula:

    (1)    Each Eligible Settlement Class Member shall be provided $150 **plus** a pro-rated amount based on the number of weeks employed as an over-the-road truck driver by PAM during the Class Period, not including any week where the Eligible Class Member was classified as an "independent contractor" by PAM.

(E)    To effectuate the terms of the Settlement and to correct for mathematical or factual errors in the allocation to Eligible Settlement Class Members, the Settlement Administrator will also allocate Fifty Thousand ($50,000) from the Gross Settlement Amount to create a Reserve Fund, which the Settlement Administrator may use, with approval from the Parties, to make payments to Eligible Class Members who dispute their allocation amounts, to individuals who were not identified as Class Members but have a good faith claim for participation, or for any other reasonable purpose necessary to effectuate the Settlement.  Any unclaimed funds from the Reserve Fund remaining after one year following the mailing of the settlement checks will be donated to the St. Christopher's Fund, a 501(c)(3) charity which benefits financially distressed truck drivers.

(F)    Tax Characterization of Payments.

    (1)    For tax purposes, 35% of the payment to an Eligible Settlement Class Member pursuant to this Section 3.4 shall be treated as back wages and 65% of such payment shall be treated as interest, any applicable penalties, liquidated damages, damages for usury and escrow deductions, and other non-wage relief.

(2) Payments treated as back wages shall be made net of all applicable employment taxes, including, without limitation, federal, state and local income tax withholding and the employee share of the FICA tax, and shall be reported to the Internal Revenue Service ("IRS") and the payee under the payee's name and Social Security number on an IRS Form W-2.  Payments treated as interest, any applicable penalties, liquidated damages, damages for usury and escrow deductions, and other non-wage relief shall be made without withholding and shall be reported to the IRS and the payee, to the extent required by law, under the payee's name and Social Security number on an IRS Form 1099.  The Settlement Administrator shall be responsible for determining the appropriate number of exemptions to be used in calculating payroll tax and withholding, deciding the appropriate tax rate, issuing the Settlement Checks and Service Awards and issuing IRS Forms W-2 and Form 1099.  Payments of attorney's fees and costs pursuant to Section 3.2 shall be made without withholding, and be reported to the IRS and to each payee under the payee's name and taxpayer identification number, which each such payee shall provide for this purpose, on an IRS Form 1099.  Any Service Award pursuant to Section 3.3 shall be deemed non-wage compensation in its entirety.

(3) The employee portion of all applicable income and payroll taxes will be the sole responsibility of the individual Eligible Settlement Class Member receiving a Settlement Check or Service Award.  PAM makes no representations, and it is understood and agreed that PAM has made no representations, as to the taxability of any portions of the settlement payments to any Eligible Settlement Class Members, the payment of any costs or award of attorney's fees, or any payments to the Named Plaintiffs.  The Settlement Notices will advise Eligible Settlement Class Members to seek their own tax advice prior to acting in response to that Settlement Notice.  Neither Plaintiffs' Counsel nor Defendant's Counsel intend anything contained herein to constitute legal advice regarding the taxability of any amount paid hereunder, nor will it be relied upon as such.

**3.5     Non-Monetary Settlement Terms.**

As part of the settlement of this Litigation, PAM agrees to cease charging $10 service fees for wage advances.  PAM further agrees to stop withholding wages on payday due to late paperwork by Over-the-Road Truck Drivers.

**4.     RELEASE OF CLAIMS**

**4.1**     All Eligible Settlement Class Members who did not opt-out upon the Court's Order Entering Final Approval will waive, release, and forever discharge ALL claims he or she has or may have from December 9, 2013 through December 31, 2019 against PAM, its predecessors, successors, employees and agents, whether such claim is known or unknown, that assert failure to pay wages due under the FLSA, the Arkansas Minimum Wage Act, or similar state or federal law, that accrued while the Eligible Settlement Class Member worked for PAM as an Over-the-Road Truck Driver, including any claims for

non-payment or improper payment of minimum wages or unlawful wage deductions under any federal, state, or local law, or common law, including but not limited to claims under the FLSA, wage and hour laws of Arkansas, and all other state and local wage and hour laws, also including claims for liquidated damages, attorney fees, costs and expenses, and including but not limited to claims under 29 C.F.R. 785.21, 785.22, and any and all other federal or state regulations issued pursuant to the FLSA and/or AMWA. This release does not cover any workweek of any Eligible Settlement Class Member where the Eligible Settlement Class Member was designated by PAM (regardless of whether that designation is legally challenged and/or found to be erroneous) as an "independent contractor" or other similar status whereby PAM designated the driver to be a non-employee under the FLSA.

## 5.     VOIDING THE AGREEMENT

5.1     If the Court rejects the Settlement and/or this Agreement, fails to approve and enter the Order Granting Final Approval in the form submitted by the Parties, or fails to enter a Final Judgment, this Agreement shall be void *ab initio* and PAM shall have no obligations to make any payments under the Settlement or this Agreement.

5.2     In the event that the Agreement is not approved by the Court or if there is no Order Granting Final Approval, and the basis for that denial demonstrates that terms provided in the "Joint Memorandum of Proposed Settlement" cannot be approved, the Parties shall resume the Litigation at that time as if no Agreement had been entered. In such event, the terms and provisions of the Agreement, and the approval of any settlement class for purposes of implementing this Settlement, shall have no further force and effect with respect to the Parties and shall not be used in this Litigation or in any other proceeding for any purpose, and any judgment or order entered by the Court in accordance with the terms of the Agreement (including without limitation any order certifying the case or any part of the case as a class or collective action for settlement purposes) shall be treated as vacated *nunc pro tunc*.

## 6.     PARTIES' AUTHORITY

6.1     The signatories hereto hereby represent that they are fully authorized to enter into this Agreement and to bind the Parties hereto to the terms and conditions hereof.

## 7.     MUTUAL COOPERATION

7.1     The Parties agree to reasonably cooperate with each other and to take all steps necessary and appropriate to obtain the Court's approval of this Agreement and all of its terms and to effectuate the terms of this Agreement, including but not limited to, execution of such documents and to take such other action as may reasonably be necessary to implement the terms of this Agreement. The Parties to this Agreement shall use their commercially reasonable efforts, including all efforts contemplated by this Agreement and any other efforts that may become necessary by order of the Court, or otherwise, to effectuate this Agreement and the terms set forth herein. As soon as practicable after execution of this

Agreement, Plaintiffs' Counsel shall, with the assistance and cooperation of PAM and its counsel, take all necessary steps to secure the Court's approval of this Agreement.

**8.    NOTICES**

**8.1**    Unless otherwise specifically provided herein, all notices, demands or other communications given hereunder shall be in writing and shall be deemed to have been duly given as of the third business day after mailing by United States registered or certified mail, return receipt requested, addressed as follows:
To Plaintiffs and/or Settlement Class:

Justin L. Swidler, Esq.
Swartz Swidler, LLC
1101 Kings Highway N, Ste. 402
Cherry Hill, New Jersey 08034
Telephone:  (856) 685-7420
Email: jswidler@swartz-legal.com

and

Robert D. Soloff, Esq.
Robert D. Soloff, P.A.
7805 SW 6th Court
Plantation, Florida 33324
Telephone: (954) 472-0002
Email:  robert@solofflaw.com

To Defendant:
M. Reid Estes, Jr., Esq.
Martin D. Holmes, Esq.
K. Scott Hamilton, Esq.
Dickinson Wright PLLC
424 Church Street
Ste. 800
Nashville, TN 37219
Email: MDHolmes@dickinson-wright.com

and

Kerri Kobbeman, Esq.
Amber Prince, Esq.
Conner & Winters, LLP
4375 N Vantage Drive
Fayetteville, AR 72703
Email: KKobbeman@cwlaw.com

**9.    NO ADMISSION OF LIABILITY**

**9.1**    PAM denies all of the allegations made by Plaintiffs in the action and denies that it is liable or owes damages to anyone with respect to the alleged facts or causes of action which were asserted or could have been asserted in the Litigation.  Nonetheless, without admitting or conceding any liability or damages whatsoever, PAM agrees to settle the Action to avoid the burden, expense, and uncertainty of continuing the Litigation.

**10.    INTERPRETATION AND ENFORCEMENT/MISCELLANEOUS TERMS**

**10.1**    <u>Further Acts</u>.  Each Party, upon the request of any other Party, agrees to perform such further acts and to execute and deliver such other documents as are reasonably necessary to carry out the provisions of this Agreement.

**10.2**    <u>No Assignment</u>.  Plaintiffs' Counsel and Plaintiffs represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in the Litigation, or any related action, and any attempt to do so shall be of no force or effect.

**10.3**    <u>Entire Agreement</u>.  This Agreement constitutes the entire agreement between the Parties with regard to the subject matter contained herein, and all prior and contemporaneous negotiations and understandings between the Parties shall be deemed merged into this Agreement.

**10.4**    <u>Binding Effect</u>.  This Agreement shall be binding upon the Parties and, with respect to Plaintiffs, their spouses, children, representatives, heirs, administrators, executors, beneficiaries, conservators, attorneys and assigns.

**10.5**    <u>Arms' Length Transaction; Materiality of Terms</u>.  The Parties have negotiated all the terms and conditions of this Agreement at arms' length.  All terms and conditions of this Agreement in the exact form set forth in this Agreement are material to this Agreement and have been relied upon by the Parties in entering into this Agreement, unless otherwise expressly stated.

**10.6**    <u>Captions</u>.  The captions or headings of the Sections and paragraphs of this Agreement have been inserted for convenience of reference only and shall have no effect upon the construction or interpretation of any part of this Agreement.

**10.7**    <u>Construction</u>.  The determination of the terms and conditions of this Agreement has been by mutual agreement of the Parties.  Each Party participated jointly in the drafting of this Agreement, and therefore the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any party by virtue of draftsmanship.

**10.8**    <u>Governing Law</u>.  This Agreement shall in all respects be interpreted, enforced and governed by and under the laws of the State of Arkansas, without regard to choice of law principles, except to the extent that the law of the United States governs any matter set forth herein, in which case such federal law shall govern.

**10.9**   Continuing Jurisdiction.  The Court shall retain jurisdiction over the interpretation and implementation of this Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of this Agreement and of the Settlement contemplated thereby.

**10.10**   Waivers, etc. to Be in Writing.  No waiver, modification or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties, and then only to the extent set forth in such written waiver, modification or amendment with any required Court approval.  Any failure by any Party to insist upon the strict performance by the other Party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such Party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

**10.11**   Notice.  The Settlement Notice will advise all Eligible Settlement Class Members of the binding nature of the release and that by not opting out of the settlement, they are bound by the release provisions in this Agreement.

**10.12**   Counterparts.  The Parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if all Parties had signed the same original instrument.

**10.13**   Facsimile, Electronic and Email Signatures.  Any party may execute this Agreement by causing its counsel to sign on the designated signature block below and transmitting that signature page via facsimile, email or other electronic means to counsel for the other party.  Any signature made and transmitted by facsimile or email for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile or email.

**10.14**   Signatories.  This Agreement is valid and binding if signed by PAM's authorized representative and any one of the Named Plaintiffs.

**[*The remainder of this page is intentionally blank*]**

**WE AGREE TO THESE TERMS.**

**P.A.M. Transport, Inc.**

By: _Allen West_

Its: _CFO_

Date: _2-16-20_

**DICKINSON WRIGHT, PLLC:**

_Martin D. Holmes_
Counsel for Defendant, signed with Authority from PAM

Date: _2 - 16 - 2020_

**FOR THE PLAINTIFFS AND THE CERTIFIED CLASS:**

By: _____
David Browne, Named Plaintiff

Date: _____

By: _____
Antonio Caldwell, Named Plaintiff

Date: _____

By: _____
Lucretia Hall, Named Plaintiff

Date: _____

-18-

**WE AGREE TO THESE TERMS.**

**P.A.M. Transport, Inc.**

By: _____

Its: _____

Date: _____

**DICKINSON WRIGHT, PLLC:**

_____

Counsel for Defendant, signed with Authority from PAM

Date: _____

**FOR THE PLAINTIFFS AND THE CERTIFIED CLASS:**

By:  *David Browne*
     David Browne (Feb 16, 2020)
     David Browne, Named Plaintiff

Date:  Feb 16, 2020

By:  *[signature]*
     Dorthy Caldwell (Feb 16, 2020)
     Antonio Caldwell, Named Plaintiff

Date:  Feb 16, 2020

By:  *[signature]*
     Lucretia Jane Hall (Feb 16, 2020)
     Lucretia Hall, Named Plaintiff

Date:  Feb 16, 2020

-18-

**SWARTZ SWIDLER, LLC,** *CLASS COUNSEL*

_Justin Swidler_
Justin Swidler (Feb 16, 2020)
_____

Justin Swidler, Certified Class Counsel

Date: Feb 16, 2020
_____

-19-

# Exhibit A

UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF ARKANSAS

# As a current or former over-the-road driver for P.A.M. Transport, Inc. you are eligible to get a payment from a class action settlement.

*A federal court authorized this notice.  This is not a solicitation from a lawyer.*

- The settlement will provide $16,500,000 to resolve all claims that: (1) P.A.M. Transport, Inc. ("PAM") failed to pay its over-the-road employee drivers at least minimum wage for all hours worked; (2) PAM made unlawful deductions from drivers' wages through the use of an "escrow" account; and (3) PAM charged usurious interest rates on employee advances.  The settlement resolves all claims during the Class Period of December 9, 2013 through December 31, 2019.

- In addition to the financial payment, PAM has agreed that it will no longer charge employees a $10 service fee for wage advances, and has agreed that it will no longer withhold compensation due to drivers who are late turning in paperwork.

- The court-appointed lawyers will ask the Court for up to 33 1/3% of the settlement amount as fees for investigating the case, litigating the case, and negotiating the settlement.

- The two sides disagree as to who would win, and how much could be won, if the case went to trial.

- **<u>Your legal rights will be affected whether you act or don't act.</u>**  Read this notice carefully.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT: | |
|---|---|
| **Do Nothing** | No action is required of you to remain in the case.  If the Court grants final approval of the settlement, you will get a payment. |
| **Exclude Yourself** | Get no payment.  This is the only option that allows you to ever be part of any other lawsuit against PAM for the legal claims in this case. |
| **Object** | Write to the Court about what you don't like in the settlement. |
| **Go to a Hearing** | Ask to speak in Court about the fairness of the settlement. |

- These rights and options – and the deadlines to exercise them – are explained in this notice.

- The Court in charge of this case still has to decide whether to approve the settlement.  Payments will be made if the Court approves the settlement and after any appeals are resolved.  Please be patient.

**QUESTIONS? CALL CLASS COUNSEL OR
VISIT [WWW.SWARTZ-LEGAL.COM](WWW.SWARTZ-LEGAL.COM)**

**THIS IS NOT AN ADVERTISEMENT.**

## TABLE OF CONTENTS – WHAT IS IN THIS NOTICE PACKAGE

**Why did I get this Notice Package?** ................................................................................................ 1

**What is this lawsuit about and why did it settle?** ........................................................................ 1

**What does the settlement provide and how much will I be paid?** ............................................ 2

**How can I receive my payment?** ........................................................................................................ 3

**What am I giving up as a class member?** ........................................................................................ 3

**How do I exclude myself (opt-out) from this settlement?** .......................................................... 3

**Final Approval of settlement at Fairness Hearing** ...................................................................... 4

**How do I object to the settlement?** .................................................................................................. 4

**Are there more details about the Settlement? Questions?** ........................................................ 4

**Do I have an attorney in this case?** .................................................................................................. 5

**THIS IS NOT AN ADVERTISEMENT.**

**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF ARKANSAS**
**FAYETTEVILLE DIVISION**

| | |
|---|---|
| DAVID BROWNE, *et al.* | Case No.: 5:16-cv-05366-TLB |
| Plaintiffs, | |
| | CERTIFIED CLASS ACTION |
| v. | |
| P.A.M. TRANSPORT, INC. | |
| Defendant. | |

**NOTICE OF CLASS AND COLLECTIVE ACTION SETTLEMENT**

*A Federal Court authorized this notice. This is not a solicitation from a lawyer.*

***PLEASE READ THIS NOTICE CAREFULLY.***

## 1.  Why did I get this notice package?

You are receiving this notice because records indicate that you worked as an over-the-road commercial truck driver for P.A.M. Transport, Inc. ("PAM") at some point between December 9, 2013 and December 31, 2019 ("Class Period").  The above-referenced lawsuit, *David Browne, et al. v. P.A.M. Transport, Inc.*, 16-cv-5366 (the "Lawsuit"), is pending in the United States District Court for the Western District of Arkansas in Fayetteville, Arkansas (the "Federal Court").  You are receiving this Notice because the Federal Court has ordered that it be mailed to you.

The Federal Court has preliminarily approved a settlement ("Settlement") of the Lawsuit.  The Settlement provides for certain current and former over-the-road truck drivers of PAM to receive a portion of a sixteen million, five-hundred thousand dollar ($16,500,000) fund ("Settlement Fund").  The Federal Court will conduct a hearing ("Fairness Hearing") to determine if the Settlement should be approved.

This Notice describes the Settlement and how you can obtain a money recovery from the Settlement.  This Notice also describes how you can exclude yourself from, or object to, the Settlement.

## 2.  What is this lawsuit about and why did it settle?

The Lawsuit alleges that PAM violated the federal Fair Labor Standards Act ("FLSA"), the Arkansas Minimum Wage Act ("AMWA"), the Arkansas Wage Payment Law, and various other laws by failing to pay its over-the-road drivers at least minimum wage for all hours worked.  Specifically, the Lawsuit contends that PAM paid less than minimum wage to drivers for certain non-driving activities, such as when a driver is on-call, performing security duties, or performing maintenance and inspections.  Plaintiffs also contend that PAM charged fees that equated to more than 10% APR on employee advances.  The Plaintiffs had prevailed at summary judgment on some of their claims, while the most valuable claims were scheduled for a jury trial to begin on

1

February 18, 2020.  The settlement was reached by the Parties on the last business day before the trial was to begin, on February 14, 2020.

PAM does not admit any liability or damages whatsoever. The Settlement, however, enables PAM and the over-the-road drivers to avoid the uncertainty, risks, and time involved in continued litigation.

The employees' attorneys, who are referred to as "Class Counsel," believe that the Settlement benefits the class members.  The Settlement provides a benefit to a large number of present and former over-the-road drivers, and enables the class members to avoid the risk that PAM could win the lawsuit, appeal, or become insolvent, in which case class members would recover nothing or be subject to a significant delay in payment.  The Settlement also enables class members to recover money without the delay of protracted litigation.

The Parties' attorneys negotiated the Settlement after more than three years of litigation that has enabled each side to understand the risks of proceeding with adversarial litigation.  The Settlement was entered into at the eve of a jury trial, following significant investigation, discovery, and motion practice. Class Counsel believes that the Settlement is fair and serves the best interests of the class members.  The Federal Judge overseeing the Lawsuit has "preliminarily approved" the Settlement as fair.  The Federal Judge will make the final decision regarding the fairness of the Settlement at the Fairness Hearing described in Section 7 below.

## 3. What does the Settlement provide and how much will I be paid?

Under the Settlement, PAM has agreed to pay a Settlement amount of sixteen million, five-hundred thousand dollar ($16,500,000) to resolve all claims asserted in the Lawsuit. Your "Individual Settlement Payment" will be calculated based upon the settlement formula stated in the settlement agreement on file with the Court.  The Settlement Agreement is also available on Class Counsel's website at www.pamlawsuit.com.  In short, the settlement provides a formula where each class member will receive a minimum of $150.00, plus as an additional amount which will be pro-rated based on the number of weeks each class member worked for PAM as an employee over-the-road driver during the Class Period.

After litigation and administrative costs, attorney's fees, and service payments are subtracted from the Settlement Fund, the remaining fund (the "Net Fund") will be distributed to all Class Members who do not opt out of the Settlement.  Class Members will receive a payment from the Settlement Fund.

Class Members will receive 35% of their settlement amount as wages which will be reported on an IRS Form W-2, subject to all ordinary payroll taxes and withholdings.  The remaining amount will constitute non-wage compensation, and is to provide compensation for unlawful wage advances, unlawful deductions, and liquidated damages. This portion will not be subject to withholdings, and will be reported on an IRS Form 1099.

At the Fairness Hearing, Class Counsel will apply to receive up to one-third of the Total Settlement (equivalent to $5,500,000) for the services they provided. Class Counsel will also seek to recover its out-of-pocket expenses incurred in the Lawsuit. This amount will be requested based on the substantial work Class Counsel performed in the Lawsuit and the risk Class Counsel took in bringing the Lawsuit.  Class Counsel has conducted extensive investigation in prosecuting the Lawsuit, including, but not limited to: filing the lawsuit, fronting all litigation costs, taking and defending more than 50 depositions, engaging in significant adversarial motion practice, including discovery, summary judgment, and class certification motions, retaining and hiring experts, reviewing and deconstructing millions of electronic datapoints found in GPS data, hours of service logs, and PAM's payroll, interviewing employees, propounding discovery, answering discovery, and preparing for a class-wide jury trial.

At the Fairness Hearing, the Named Plaintiffs in the action will request a service fee in the amount of $50,000 each, totaling $150,000. The Service Payments are requested because these individuals provided service to the Settlement Class by helping Class Counsel formulate claims and by assisting in bringing the Lawsuit forward.  These individuals challenged PAM despite the career risks in doing so.  Additionally, 7 opt-in plaintiff over-the-road drivers who agreed to travel out-of-state to testify live at the jury trial that was to occur the week of February 18, 2020 will request service payments of $2,500 each, totaling $17,500.  Finally, 31 opt-in Plaintiffs who attended depositions will request service payments of $1,000 each, totaling $31,000.  These payments are requested because the case could not have gone forward, and the results could not have been achieved, absent these drivers' participation in the Lawsuit.  The Service Payments are separate from, and in addition to, the portion of the Settlement Fund that they may receive as a member of the Settlement Class.  The Service Payments requested total: $198,500.

## 4. How can I receive my payment?

You do not need to take any further action to receive a payment.  If you move prior to receiving a check, you should contact the Claims Administrator at (xxx) xxx-xxxx to notify the Claims Administrator of your new address.  You may also provide change of address information via facsimile to (xxx) xxx-xxxx or by e-mail to somone@tpa.com

The parties anticipate that the settlement checks will be issued in the 3rd Quarter of 2020.

## 5.  What am I giving up as a Class member?

If the Federal Court grants final approval of the Settlement, the Federal Court will enter judgment consistent with the terms of the Settlement.

Upon the Court's Order Entering Final Approval you will waive, release, and forever discharge all claims you may have from December 9, 2013 through December 31, 2019 against PAM that assert failure to pay wages due under the FLSA, the Arkansas Minimum Wage Act, or similar state or federal law, that accrued while the you worked as an over-the-road truck driver at PAM, including any claims for non-payment or improper payment of minimum wages and unlawful wage deductions under federal or state law.

This release does not cover any workweek if you were designated by PAM (regardless of whether that designation is legally challenged and/or found to be erroneous) as an "independent contractor" or other similar status whereby PAM designated you to be a non-employee under the FLSA, such as if you worked for PAM as a Lease Purchase Driver or an Owner Operator.

## 6. How do I exclude myself (opt-out) from this Settlement?

You will release your legal claims, as described in Section 5 above, unless you affirmatively exclude yourself from the Settlement. If you exclude yourself, you will not release or waive any legal claims, and you will preserve your right to sue PAM on your own for alleged violations of the Released Claims.  If you exclude yourself from the Settlement, you will not receive money in this Settlement.

To exclude yourself from the Settlement, you must mail a written request to opt-out of the settlement to [TPA ADDRESS], or you may send your request via facsimile to (xxx) xxx-xxxx or by e-mail to somone@tpa.com.   Your request for exclusion must be postmarked or submitted on or before [60 days from mailing date] to be valid.  To be valid, the Request for Exclusion from Class Settlement form must be signed and dated by you, and must include the name of the case.  You should also provide your phone number on the request in case the Claims Administrator needs to contact you regarding same.

## 7. Final Approval of Settlement at Fairness Hearing

The Federal Judge presiding over this Lawsuit will conduct a Final Fairness Hearing at [TIME] on [date] in Courtroom 509 of the United States Courthouse, 35 East Mountain Street, Fayetteville, Arkansas 72701. At the Fairness Hearing, the Judge will decide whether the Settlement is sufficiently fair and reasonable to warrant final court approval. You are not required or expected to attend the Fairness Hearing. However, you are welcome to attend at your own expense. If you plan on attending, please contact Class Counsel so that the Court can be notified to ensure that there is enough space and time allotted for you.

## 8. How do I object to the Settlement?

If you believe the proposed Settlement is unfair or inadequate in any respect, you may object to the Settlement, either personally or through an attorney at your own expense, by filing a written objection with the Court and mailing a copy of your written objection to [TPA ADDRESS] or you may send your objection via facsimile to (xxx) xxx-xxxx or by e-mail to [TPA email address] In order to object to the Settlement, you must remain a class member and may not opt-out from the Settlement.

All objection(s) to any part of the Settlement must be signed by you or your counsel and set forth your address, telephone number, and the name of the Action: *David Browne, et al. v. PAM Transport, Inc.* (Case No. 5:16-cv-05366). All objections must be postmarked or submitted no later than [**60 Days from Mailing**]. If you submit a timely objection, you may appear, either personally or through an attorney, at your own expense, at the Final Approval Hearing discussed above. Your objection should clearly explain why you object to the proposed Settlement and must state whether you or someone on your behalf intends to appear at the Final Approval Hearing. If you object to the Settlement, Class Counsel will not represent you in your objection.

Any class member who does not object in the manner described above shall be deemed to have waived any objections, and shall forever be foreclosed from objecting to the fairness and adequacy of the proposed Settlement, the payment of attorneys' fees, service payments, and litigation costs, the claims process, and any and all other aspects of the Settlement.

Likewise, regardless of whether you file an objection, you will be deemed to have released all of the Released Claims against PAM and subject to the Release contained in the Settlement Agreement as explained in Section 5 above unless you properly request exclusion from the Settlement in accordance with Section 6 above. Please note that if you exclude yourself from the Settlement by following the procedures set forth in Section 6 above, you will not have standing to object to the Settlement, and the Court will not consider your objection at the Final Fairness Hearing.

## 10. Are there more details about the Settlement? Questions?

Yes. This Notice summarizes the most important aspects of the Settlement. You can get a copy of the written Settlement Agreement and obtain further information regarding the Lawsuit and the Settlement by calling Class Counsel or visiting www.pamlawsuit.com. Class Counsel's contact information is listed below. You will not be charged any money for communicating with Class Counsel.

## 11. Do I have an attorney in this case?

Swartz Swidler, LLC, and Robert D. Soloff, P.A., represent the interests of class members in the Lawsuit. Class Counsel will represent you in the Lawsuit and can answer questions for you regarding the Lawsuit and the Settlement. Class Counsel's contact information is below. You will not be charged any money for Class Counsel's representation of you; rather Class Counsel will be

paid out of the class-wide Settlement Fund. You also have the right to get your own attorney at your own expense in which case Class Counsel will not represent you in the Lawsuit or Settlement.  If you object to the Settlement, Class Counsel will not represent you in your objections.

| | |
|---|---|
| Justin L. Swidler, Esq. | Website: http://www.swartz-legal.com |
| Richard S. Swartz, Esq. | Phone: (856) 685-7420 |
| Swartz Swidler, LLC | Fax: (856) 685-7417 |
| 1101 Kings Hwy N., Ste. 402 | Toll Free: (877) 529-9501 |
| Cherry Hill, NJ 08034 | E-mail: jswidler@swartz-legal.com |

| | |
|---|---|
| Robert D. Soloff, Esq. | |
| Robert D. Soloff, P.A. | Phone: (954) 472-0002 |
| 7805 SW 6th Court | Fax: (954) 472-0052 |
| Plantation, FL 33324 | E-mail: Robert@solofflaw.com |

# PAM Transport Class Action Settlement Agreement

Final Audit Report                                                        2020-02-16

| | |
|---|---|
| Created: | 2020-02-16 |
| By: | Justin Swidler (jswidler@swartz-legal.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAYPHM3_c56MfvBONyiQtmNNy3eR2Tx9f0 |

## "PAM Transport Class Action Settlement Agreement" History

📄 Document created by Justin Swidler (jswidler@swartz-legal.com)
2020-02-16 - 4:51:42 PM GMT- IP address: 107.77.201.35

📧 Document emailed to Justin Swidler (jswidler@swartz-legal.com) for signature
2020-02-16 - 4:54:32 PM GMT

📧 Document emailed to Lucretia Jane Hall (halljane2@yahoo.com) for signature
2020-02-16 - 4:54:32 PM GMT

📧 Document emailed to David Browne (catwalkcinema@gmail.com) for signature
2020-02-16 - 4:54:32 PM GMT

📧 Document emailed to Dorthy Caldwell (d184all2c@yahoo.com) for signature
2020-02-16 - 4:54:32 PM GMT

✅ Document e-signed by Justin Swidler (jswidler@swartz-legal.com)
Signature Date: 2020-02-16 - 4:54:43 PM GMT - Time Source: server- IP address: 107.77.201.35

📄 Email viewed by Lucretia Jane Hall (halljane2@yahoo.com)
2020-02-16 - 4:55:41 PM GMT- IP address: 174.237.131.97

📄 Email viewed by David Browne (catwalkcinema@gmail.com)
2020-02-16 - 4:56:27 PM GMT- IP address: 66.249.84.219

✅ Document e-signed by Lucretia Jane Hall (halljane2@yahoo.com)
Signature Date: 2020-02-16 - 5:10:35 PM GMT - Time Source: server- IP address: 174.237.131.97

✅ Document e-signed by David Browne (catwalkcinema@gmail.com)
Signature Date: 2020-02-16 - 5:14:15 PM GMT - Time Source: server- IP address: 174.237.11.21

Email viewed by Dorthy Caldwell (d184all2c@yahoo.com)
2020-02-16 - 5:28:23 PM GMT- IP address: 67.195.51.156

Document e-signed by Dorthy Caldwell (d184all2c@yahoo.com)
Signature Date: 2020-02-16 - 5:40:48 PM GMT - Time Source: server- IP address: 107.77.200.116

Signed document emailed to Dorthy Caldwell (d184all2c@yahoo.com), Justin Swidler (jswidler@swartz-legal.com), David Browne (catwalkcinema@gmail.com), and Lucretia Jane Hall (halljane2@yahoo.com)
2020-02-16 - 5:40:48 PM GMT

Adobe Sign