IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

| | |
|---|---|
| DAVID BROWNE, ANTONIO CALDWELL, and LUCRETIA HALL, on behalf of themselves and others similarly situated | PLAINTIFFS |
| V.   CASE NO. 5:16-CV-5366 | |
| P.A.M. TRANSPORT, INC. | DEFENDANT |

**OPINION AND ORDER GRANTING FINAL APPROVAL
OF COLLECTIVE AND CLASS ACTION SETTLEMENT**

This litigation began nearly four years ago when the Named Plaintiffs filed their complaint alleging claims under the Fair Labor Standards Act ("FLSA") and the Arkansas Minimum Wage Act ("AMWA"), along with some other collateral claims. Over the course of the hard-fought litigation, the Court certified class and collective actions of over-the-road truck drivers employed by Defendant P.A.M. Transport, Inc. ("PAM"). Ultimately, the parties in this case reached a Settlement Agreement (the "Agreement") in February 2020, on the eve of trial. The Court gave preliminary approval to the Agreement and ordered that notice of the settlement be provided to all class members, more than sixteen thousand over-the-road truck drivers in all. *See* Doc. 282. Notice having gone out and the objection and opt-out periods having expired, Plaintiffs filed the instant unopposed Motion seeking final approval of the Agreement, accompanied by a Brief in Support (Docs. 297 & 298). On July 31, 2020, the Court held a hearing via telephone on the Motion for Final Approval and ruled from the bench that the Motion should be **GRANTED**. This written Order is intended to supplement the Court's oral rulings from the bench, but to the extent

that there is any discrepancy between this written Order and the rulings from the bench, this Order shall control.

In considering and ruling on Plaintiffs' Motion for Final Approval, the Court makes the following findings:

### I. Settlement of FLSA Collective Action

Before a court approves an FLSA settlement agreement, it must determine that "the litigation involves a bona fide dispute and that the proposed settlement is fair and equitable to all parties." *Boland v. Baue Funeral Home Co.*, 2015 WL 7300507, at *2 (E.D. Mo. Nov. 18, 2015) (citations omitted). "A settlement is bona fide if it reflects a reasonable compromise over issues actually in dispute, since employees may not waive their entitlement to minimum wage and overtime pay under [the] FLSA." *King v. Raineri Constr., LLC*, 2015 WL 631253, at *2 (E.D. Mo. Feb. 12, 2015) (citing *D.A. Schulte, Inc. v. Gangi*, 328 U.S. 108, 115 (1946)). If the court determines that there is a bona fide dispute, it must next determine that the agreement purporting to settle that agreement is fair and reasonable to all parties. Such a determination usually involves considering:

> the stage of the litigation and amount of discovery exchanged, the experience of counsel, the probability of plaintiffs' success on the merits, any 'overreaching' by the employer in the settlement negotiations, and whether the settlement was the product of arm's length negotiations between represented parties based on the merits of the case.

*Id*. (citing *Carrillo v. Dandan Inc.*, 51 F. Supp. 3d 124, 132-33 (D.D.C. 2014)).

As the Court stated from the bench during the final approval hearing, the Court finds that the Agreement is a fair, reasonable, and equitable settlement. The parties reached the settlement on the eve of trial after extensive discovery, dozens of depositions, expert reports, and a ruling on a motion for summary judgment. The Court is

confident that there is a bona fide dispute between the parties and that this settlement agreement is the product of arm's length negotiations based on the merits of the case.

## II. Settlement of Rule 23 Class Claims

The Plaintiffs also brought claims that were certified as class claims pursuant to Rule 23 of the Federal Rules of Civil Procedure. In the case of settlement, pursuant to Rule 23(e)(2), the Court is to analyze whether the settlement is "fair, reasonable, and adequate." The Eighth Circuit has specified four factors to consider in this analysis: (1) the merits of the plaintiff's case, weighed against the terms of the settlement; (2) the defendant's financial condition; (3) the complexity and expense of further litigation; and (4) the amount of opposition to the settlement. *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1150, 1152 (8th Cir.1999).

Here, the Court notes that this case was exceedingly complex, both with respect to the sheer number of data points to be considered in calculating damages and with regard to the novel legal issues raised in the case, for which there was no binding precedent in this Circuit. The Court also notes that PAM submitted an affidavit attesting to its precarious financial situation, which suggested that Plaintiffs likely would not have been able to secure any more relief than this Agreement awards them. Finally, the Court observes that though notice was sent to more than sixteen thousand class members, not a single objection was filed, and only two class members opted out of the settlement. For these and all the other reasons stated from the bench, the Court is confident that the settlement is fair, reasonable, and adequate.

### III. Attorney Fees

The settlement agreement provides for Plaintiffs' class counsel to seek one-third of the total settlement amount to cover the attorneys' fees in this matter, a total of $5,500,000. In considering the appropriate amount of attorney fees, courts in the Eighth Circuit have considered the factors laid out in *Johnson v. Ga. Highway Express, Inc.*: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the attorney's preclusion of other employment due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *See Allen v. Tobacco Superstore, Inc.*, 475 F.3d 931, 944 (8th Cir. 2007) (finding no abuse of discretion where the district court considered the *Johnson* factors in determining the final fee award) (citing 488 F.2d 714, 717–19 (5th Cir.1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87, 90 (1989)).[1]

The Court notes that not all of these factors will apply or need weigh in favor of the ultimate fee award. Nevertheless, the Court finds that here, all of the factors apply and all of them weigh in favor of a finding that a one-third contingency fee is appropriate in this

---

[1] As the Court noted from the bench, these factors overlap almost completely with the factors laid out by the Arkansas Supreme Court in *Chrisco v. Sun Industries, Inc.*, 800 S.W.2d 717, 718–19 (Ark. 1990) for assessing appropriate attorney fees under state law. The Eighth Circuit has recognized that these factors are appropriate for consideration in matters of Arkansas law. *See All-Ways Logistics, Inc. v. USA Truck, Inc.*, 583 F.3d 511, 520–21 (8th Cir. 2009).

case. For example, the case was extremely hard-fought. The litigation stretched over nearly four years and involved extensive motion practice, voluminous discovery, and numerous depositions. It presented novel questions of law. Plaintiffs' counsel proved themselves to be highly skilled and experienced in this particular area of litigation. They took the case on a contingent basis despite a significant risk that they might not prevail or might not be able to collect the judgment in full even if they did prevail. Plaintiffs' counsel also had considerable success on the merits of the case, prevailing in part on a motion for summary judgment before reaching a settlement on the Friday before the trial was to begin. Additionally, the Agreement negotiated by class counsel provides for injunctive relief requiring PAM to change some of its business practices in addition to providing financial compensation to class members.

The Court also exercised its discretion to use the lodestar method to cross-check the attorneys' fees awarded as a percentage of the common fund. As stated from the bench, the Court emphasizes its disagreement with Plaintiffs that $500 is a reasonable hourly rate for the work of the attorneys in this case given that the reasonable rate is determined based on the locality in which the matter is litigated. Nevertheless, even adjusting downward the reasonable hourly rate, resulting in a higher multiplier, the Court believes that the lodestar calculation supports the appropriateness of the one-third contingency fee in this case.

### IV.  Plaintiff Service Awards

Rule 23(e)(2)(D) requires that a settlement agreement treat class members "equitably relative to each other." It is common practice to bestow service awards on individual plaintiffs in recognition of particular contributions to the case. For example,

service payments are frequently made to named plaintiffs in recognition of the effort and risk taken on by the individuals who bring the case on behalf of similarly situated class members.

In this case, the Court finds that the Named Plaintiffs put themselves on the line to carry this case to its ultimate conclusion. The Named Plaintiffs faced two offers of judgment and nevertheless decided to persevere on behalf of the class, even taking on the potential risk of having to pay Defendant's legal costs if the Plaintiffs were not ultimately successful. The Named Plaintiffs invested a substantial amount of time over several years—they indicate that they spent approximately 400 hours helping counsel litigate this case on behalf of the class. The Court recognizes that the Named Plaintiffs are worthy of extraordinary recognition for their role in this litigation and will approve a service award of $40,000 to each of the three Named Plaintiffs. In declining to award the full $50,000 requested by Plaintiffs, the Court notes that the amount awarded represents approximately $100 per hour each Named Plaintiff spent on the case. It is the Court's position that this is appropriate compensation and that any more would constitute a windfall.

The Court finds that the proposed service awards of $1,000 to Plaintiffs who sat for deposition and $2,500 to Plaintiffs who were prepared to appear and testify at trial are also appropriate.

### V.  *Cy Pres* Award

The settlement agreement proposes that any unclaimed funds from the settlement be donated to the St. Christopher Truckers Development and Relief Fund. The Eighth Circuit acknowledges that "[i]n the class action context, it may be appropriate for a court

to use *cy pres* principles to distribute unclaimed funds." *Caligiuri v. Symantec Corp.* 855 F.3d 860, 866 (8th Cir. 2017) (quoting *In re Airline Ticket Comm'n Antitrust Litig.*, 307 F.3d 679, 682 (8th Cir. 2002)). However, "*cy pres* distribution to a third party of unclaimed settlement funds is permissible only when it is not feasible to make further distributions to class members . . . ." *In re BankAmerica Corp. Securities Litig.*, 775 F.3d 1060, 1064 (8th Cir. 2015) (internal quotation marks omitted). Further distributions are not required where "the amounts involved are too small to make individual distributions economically viable." *Id.* at 1065 (quoting Am. Law Inst., Principles of the Law of Aggregate Litigation § 3.07(a) (2010)). "In such a case, the unclaimed funds should be distributed for a purpose as near as possible to the legitimate objectives underlying the lawsuit, the interests of class members, and the interests of those similarly situated." *Caligiuri*, 855 F.3d at 866. The Eighth Circuit directs that "*cy pres* distributions simply must be for the next best use for indirect class benefit, and for uses consistent with the nature of the underlying action and with the judicial function." *Id.* at 867 (internal quotation marks omitted).

The Court believes that the St. Christopher Fund is an appropriate *cy pres* recipient in this case, as it provides support to truck drivers and their families who face financial struggles because of injury or illness. However, in light of the case law cited above, the Court concludes that a final decision regarding the distribution of the residual amount in the settlement fund is better made when the parties and the Court know exactly what that amount is. Therefore, the Court will direct the parties to update the Court one year after the final check is mailed, inform the Court how much is left in the settlement fund, and make a recommendation as to the best way to distribute the remaining funds—either

through a second round of checks to class members or as a *cy pres* award to the St. Christopher Fund.

Based on all the findings discussed above and stated on the record from the bench, the Court hereby:

1. **GRANTS** final approval of the Class and Collective Settlement filed with the Court at Doc. 279-1 (the "Settlement");

2. **ORDERS** Defendant to wire the entire Settlement Fund of $16,500,000 to the Claims Administrator within 10 days of the date of this Order pursuant to §3.1(B) of the Settlement;

3. **ORDERS** Defendant, pursuant to §3.5 of the Settlement, to cease charging $10 service fees for wage advances and to stop withholding wages on payday due to late paperwork;

4. **ORDERS** the Claims Administrator to distribute the Settlement Fund to all Class Members Consistent with the Settlement, subject to any modification directed by the Court;

5. **GRANTS** Class Counsel's requests for their reasonable attorneys' fees of $5,500,000, representing 33 1/3% of the Settlement Fund;

6. **GRANTS** Named Plaintiffs David Browne, Antonio Caldwell, and Lucretia Hall modified service payments of $40,000 each for the efforts and risks they took to benefit to the Class;

7. **GRANTS** Service Payments of $1,000 each to the Opt-in Plaintiffs who sat for deposition, whose identities are provided in §3.3(A)(a) of the Settlement.

8. **GRANTS** Service Payments of $2,500 each to the Opt-in Plaintiffs who

sat for deposition and who had made arrangements to travel to Arkansas to testify live at trial, whose identities are provided in §3.3(A)(b) of the Settlement;

9. **GRANTS** Class Counsel's request for reimbursement of their reasonable litigation costs of $600,000;

10. **GRANTS** the Claims Administrator its reasonable fees and costs incurred in providing notice of and administering the settlement to be paid from the Settlement Fund in accordance with the Settlement Agreement, not to exceed $124,500;[2]

11. **ORDERS** that the release provided in the Settlement is binding on all class members, except for the two individuals who opted out of the litigation, Kyle S. Bartels and William C. Morris, Jr.  *See* Ex D of Decl. of Steve Giannotti (Doc. 294, p. 24);

12. **ORDERS** that after one year of the final settlement check being issued, the parties submit to the Court information as to any unclaimed funds remaining in the Settlement Fund and the best allocation of those funds—either distribution among the class members or donation to the St. Christopher Truckers Relief Fund; and

13. **ORDERS** that it shall retain jurisdiction to enforce the terms of the settlement and directs the Parties to provide a status report to the Court in 90 days.

**IT IS SO ORDERED**, this 31st day of July, 2020.

TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE

---

[2] The Court notes that it stated this number to be $124,000 from the bench. As indicated in the Order appointing Angeion Group, LLC, the Claims Administrator may seek no more than $124,500 in compensation for its work. *See* Doc. 292.